**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| MADELEINE ROGOW and ADAM SORKIN, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> AMAZON.COM, INC., a Delaware corporation, <br><br> Defendant. | Case No. 2:26-cv-02702 <br><br> **CLASS ACTION COMPLAINT** <br><br><br> **JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT
011398-11/5086982 V1

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION .......................................................................................................1

II.     JURISDICTION AND VENUE..............................................................................4

III.    PARTIES ...................................................................................................................5

IV.     FACTUAL ALLEGATIONS..................................................................................8

        A.      Amazon Sells Seafood Products in Its Online Marketplace and
                Delivers These Products Directly to Consumers ......................................8

        B.      Amazon Controls and Creates Content for the Point-of-Sale
                Webpages ...................................................................................................10

        C.      The Greenwashed Seafood Products Sold on Amazon's Platform
                Have Been "Certified by the MSC".........................................................34

        D.      A Company's Environmental Stewardship Is a Material Attribute
                to Consumers .............................................................................................36

        E.      The Material Misrepresentations and Omissions Mislead and
                Deceive Reasonable Consumers................................................................39

        F.      The FTC's Green Guides and Amazon's Own Advertising
                Guidelines Instruct Advertisers on How to Avoid Deceptive
                Environmental-Themed Marketing Claims................................................60

                1.      The FTC monitors environmentally themed marketing and
                        publishes guidelines to help develop level the playing field
                        when it comes to environmental advertising. .........................................60

                2.      The Amazon Green Guides reflect many of the same
                        principles included in the FTC Green Guides.........................................62

        G.      Amazon devotes a massive amount of marketing resources to
                position itself as a leading environmental steward. ............................................67

                1.      Amazon touts its sustainability goals because it knows that
                        Amazon's commitment to environmental stewardship is
                        important to consumers..........................................................................67

        H.      Amazon created the "Climate Pledge" marketing campaign to
                amplify the message to consumers that Amazon is committed to
                sustainable practices and products. ...................................................................68

CLASS ACTION COMPLAINT – i
011398-11/5086982 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

I.     The Greenwashing Claims on Amazon's Point-of-Sale Webpages are Misleading to Consumers ...................................................71

J.     Amazon's misleading practices violate both the FTC Green Guides and Amazon's Green Guides. .................................................75

V.     TOLLING OF THE STATUTE OF LIMITATIONS ....................................................80

     A.     Discovery Rule Tolling ...........................................................................80

     B.     Estoppel ....................................................................................................81

VI.     CLASS ALLEGATIONS ............................................................................................81

VII.     CHOICE OF LAW ......................................................................................................84

VIII.     CLAIMS FOR RELIEF ..............................................................................................84

COUNT I VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT (WASH. REV. CODE ANN. § 19.86.010, *ET SEQ.*) AGAINST DEFENDANT ON BEHALF OF THE CLASS ...........................................84

COUNT II FRAUDULENT MISREPRESENTATION AND CONCEALMENT (BASED ON WASHINGTON LAW) ............................................................................87

PRAYER FOR RELIEF..............................................................................................................89

DEMAND FOR JURY TRIAL ....................................................................................................89

CLASS ACTION COMPLAINT – ii
011398-11/5086982 V1



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

Plaintiffs Madeleine Rogow and Adam Sorkin, through their undersigned counsel, on behalf of themselves and all others similarly situated, bring this Class Action Complaint against Defendant Amazon.com, Inc. ("Amazon" or "Defendant"). The following facts are alleged based upon personal knowledge, where applicable, information and belief, and the investigation of counsel.

## I.    INTRODUCTION

1.    Consumers increasingly care about the environmental impact of the products they purchase and are willing to pay a premium for products marketed as sustainable. This trend is especially true for seafood products, as concern for our planet and its oceans has transformed sustainability into a primary purchasing criterion. But in a world where more than 70% of industrial fishing vessels are not publicly tracked,[1] a country where more than 80% of our seafood is imported[2] and less than 1% is inspected for fraud,[3] and at a time when DNA testing has confirmed that seafood products on store shelves are frequently mislabeled and may contain fish other than what's on the label,[4] retailers have limited ability to independently verify basic information about the seafood products on their shelves, let alone consumers.

---

[1] Fernando S. Paolo et al., *Satellite mapping reveals extensive industrial activity at sea*, 625 Nature 85, 85 (2024) (finding that "72–76% of the world's industrial fishing vessels are not publicly tracked").

[2] Colleen Sullivan & Marla Valentine, *No Questions Asked: Nearly 60% of U.S. Seafood Imports Escape Scrutiny*, Oceana, 3 (Mar. 2023) ("In the United States, up to 85% of seafood is imported."); Sandy Aylesworth, *On the Hook: How the United States Enables Illegal, Unreported, and Unregulated Fishing*, Nat. Res. Def. Council, 9 (Jan. 2021) ("Over eighty percent of all seafood consumed in the United States is imported.").

[3] Aylesworth, *supra* n.2, at 10 (reporting that from 2004 to 2008, Customs and Border Protection "inspected only 1.0 to 2.4 percent of all seafood imports for compliance with customs fees and import paperwork, while the Food and Drug Administration (FDA) inspected roughly 2 percent of seafood imports for compliance with food safety regulations"); Kimberly Warner et al., *Oceana Study Reveals Seafood Fraud Nationwide*, Oceana, 4 (Feb. 2013) (noting that "more than 90 percent of the seafood consumed in the U.S. is imported, and less than 1 percent is inspected by the government specifically for fraud").

[4] Kimberly Warner et al., *Casting a Wider Net: More Action Needed to Stop Seafood Fraud in the United States*, Oceana, 1 (Mar. 2019) (finding "roughly one-third of samples tested were mislabeled" and, for species not covered by SIMP, 21% mislabeled following SIMP implementation); *see also* Warner et al., *supra* n.3. Following implementation of the Seafood Import Monitoring Program, Oceana testing of species not covered by the program still found 21% of samples mislabeled. *See* Emily Porterfield et al., *Fishing for Trouble: Loopholes Put Illegally Caught Seafood on Americans' Plates* Oceana, 21 (Feb. 2022).

CLASS ACTION COMPLAINT – 1
011398-11/5086982 V1

2.      Defendant Amazon.com, Inc. ("Amazon" or "Defendant") is, by its own account, the second largest grocer in the country.[5] Amazon has invested significant resources in courting shoppers who care about the environment. Amazon makes countless public representations about how, "sustainability isn't a separate initiative—it's core to how Amazon operates."[6] Consistent with that messaging, Amazon engages in a scheme to market numerous seafood products sold on its platform using environmental and ecological representations that products are "responsibly sourced," "traceable," and "MSC Certified Sustainable Seafood." Amazon knows that consumers rely on such claims when deciding which seafood products to purchase and that consumers often pay more for products they believe possess those attributes.

3.      This case concerns Amazon's scheme to use these unqualified, unsupported, and at times untrue environmental and ecological representations—the "Sustainability Claims"—to market the "Greenwashed Seafood Products."[7] The Sustainability Claims refer collectively to Amazon's point-of-sale representations that the Greenwashed Seafood Products are, among other things, "sustainable," "sustainably sourced," "responsibly sourced," "wild caught," "traceable," "MSC Certified Sustainable Seafood," and "dolphin safe." Through product-detail pages and point-of-sale disclosures that Amazon controls, Amazon communicates to reasonable consumers that the Greenwashed Seafood Products originate from environmentally responsible and ecologically sustainable fisheries and supply chains. Amazon reinforces that message through repeated references to sustainability certifications, responsible sourcing, traceability, and environmental stewardship. Taken together, the Sustainability Claims create the net impression that the Greenwashed Seafood Products are sourced in a manner that causes minimal harm to the planet and our oceans—an impression that is, at best, unsubstantiated and at worst, materially false.

---

[5] *See* Alex Halverson, *Amazon says it's the 2nd-largest grocer in the U.S.*, The Seattle Times (Apr. 30, 2026), https://www.seattletimes.com/business/amazon/amazon-says-its-the-2nd-largest-grocer-in-u-s/ (reporting Amazon's own public statement that it is the second-largest grocer in the United States).

[6] *Amazon CEO Andy Jassy shares 5 ways the company is committed to sustainability*, Amazon News (Sept. 26, 2024), https://www.aboutamazon.com/news/sustainability/amazon-ceo-andy-jassy-discussion-on-sustainability.

[7] Appendix A lists the brands and products that comprise the Products at issue in this case (the "Greenwashed Seafood Products").

CLASS ACTION COMPLAINT – 2
011398-11/5086982 V1

4.      Amazon's claims that the Greenwashed Seafood Products possess environmental and sustainability benefits are at worst false, and at best unsupported. Amazon does not disclose, for example, that traceability is limited by the reality that most fishing vessels are not publicly tracked.[8] And vessels operating near hotspots of Illegal, Unreported and Unregulated (IUU) fishing frequently disable their transponders to obscure where and how they are fishing.[9] Amazon also does not disclose that traceability is not synonymous with sustainability. A significant portion of all wild-caught seafood imports is harvested using IUU fishing methods and, thus, neither responsibly or sustainably sourced.[10]

5.      As part of its seafood marketing scheme, Amazon relies on the use of Marine Stewardship Council ("MSC") certification, which is similarly misleading. MSC operates a pay-for-play certification model in which fisheries pay the auditors responsible for assessing them, and MSC has relaxed its sustainability standards over time.[11] As a result, a MSC fishery can earn and retain its valuable certification while continuing to engage in fishing practices that kill endangered species and damage marine habitats, such as fish aggregating devices, bottom trawling or dredging methods.[12]

---

[8] Paolo et al., *supra* n.1, at 85 (finding that "72–76% of the world's industrial fishing vessels are not publicly tracked").

[9] Heather Welch et al., *Hot Spots of Unseen Fishing Vessels*, 8 Sci. Adv., eabq2109, 1 (Nov. 2, 2022) (documenting more than 55,000 suspected intentional AIS-disabling events concentrated near exclusive economic zone boundaries in regions of IUU concern).

[10] Aylesworth, *supra* n.2, at 6 ("[A]n estimated 20 to 32 percent of all wild-caught seafood imported into the United States is fished using illegal or unreported methods."); *see* Ganapathiraju Pramod et al., *Estimates of Illegal and Unreported Fish in Seafood Imports to the USA*, 48 Marine Policy 102 (Sept. 2014).

[11] *See MSC: The Blue Tick Deceiving Consumers*, Corporate Accountability Lab (Jan. 30, 2025), https://corpaccountabilitylab.org/calblog/2025/1/30/msc-the-blue-tick-deceiving-consumers (describing conflicts of interest arising because fisheries pay the certifiers that audit them); *see also Senate Inquiry into Greenwashing — MSC Submission*, Marine Stewardship Council (June 2023), available at https://www.msc.org/docs/default-source/aus-files/senate-inquiry-into-greenwashing---msc-submission---june-2023.pdf?sfvrsn=4c10fac5_4. For example, in 2020 the MSC certified an Atlantic Bluefin tuna fishery over the formal objection of the World Wildlife Fund, which noted the stock had not yet reached sustainable levels.

[12] Laurenne Schiller et al., *The Global Environmental Footprint of Drifting Fish Aggregating Devices*, 11 Sci. Adv., eads2902, 9 (May 7, 2025) (finding that MSC-certified drifting-FAD fisheries had an average of approximately 15 unresolved "open conditions" during their first assessment cycle, and that all such certified fisheries had open conditions under MSC Criterion 2, governing impacts on endangered, threatened, or protected species and on habitat; and that lost or abandoned dFADs have stranded across 104 maritime jurisdictions, damaging sensitive coastal habitats).

CLASS ACTION COMPLAINT – 3
011398-11/5086982 V1

6. The consequences of Amazon's greenwashing scheme and conduct are substantial. Consumers seeking to purchase sustainable seafood products rely on Amazon's sustainability representations in deciding to pay premium prices for such products and/or to buy the product in the first place. By communicating that Greenwashed Seafood Products are sustainable and environmentally and ecologically responsible, while omitting material information necessary to evaluate and understand the limits of those claims, Amazon deprives consumers of the ability to make informed purchasing decisions and causes them to pay a premium for products they otherwise would not have purchased, or for which they would have paid less.

7. Amazon's conduct is also inconsistent with the principles embodied in the Federal Trade Commission's ("FTC") Green Guides, which warn marketers against making unqualified environmental benefit claims and emphasize that environmental certifications and seals may communicate broad environmental benefits to consumers. The Green Guides further instruct that marketers must ensure environmental claims are not misleading and that material qualifications and limitations are clearly disclosed. Amazon's own environmental marketing policies likewise require environmental claims to be truthful, substantiated, and not misleading. Amazon nevertheless markets the Greenwashed Seafood Products using broad sustainability messaging without providing disclosures necessary to prevent consumer deception.

8. This action seeks damages and injunctive relief on behalf of consumers who purchased the Greenwashed Seafood Products.

## II.    JURISDICTION AND VENUE

9. This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

10. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events, deceptive conduct, and misrepresentations giving rise to Plaintiffs' claims occurred in this District. Amazon's headquarters are in this District and Amazon has marketed,

CLASS ACTION COMPLAINT – 4
011398-11/5086982 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

advertised, and made the Greenwashed Seafood Products available for sale within this District. Amazon's Conditions of Use provide that disputes between Amazon and its customers may be adjudicated in the state or Federal courts in King County, Washington.[13]

### III. PARTIES

11. Plaintiff Madeleine Rogow ("Plaintiff Rogow") is, and at all times relevant, has been a citizen and resident of California domiciled in Los Angeles, California, in Los Angeles County. Plaintiff Rogow purchased the Greenwashed Seafood Products from Amazon, including 365 by Whole Foods Market, Sockeye Salmon Fillet and 365 by Whole Foods Market, No Salt Albacore Tuna (can) between approximately December 2024 and June 2025. When Plaintiff Rogow purchased 365 by Whole Foods Market, Sockeye Salmon Fillet and 365 by Whole Foods Market, No Salt Albacore Tuna (can) via Amazon's marketplace, Amazon was the seller of the products. Had Amazon disclosed the truth, Plaintiff Rogow would have purchased an available, comparable, lower-priced seafood product that did not carry the misleading sustainability representations, such as Amazon Fresh Farmed Atlantic Salmon (frozen) or Starkist Selects No Salt Added Chunk White Albacore Tuna.

12. Prior to purchasing these products, Plaintiff Rogow viewed the information available on Amazon's Product Detail Pages for 365 by Whole Foods Market, Sockeye Salmon Fillet and 365 by Whole Foods Market, No Salt Albacore Tuna (can). Each of the Product Detail Pages included statements regarding the sustainability of the product and stated the Greenwashed Seafood Products were MSC certified, including the specific representations "MSC Certified Sustainable Seafood," and "wild caught." Plaintiff Rogow read and relied on these representations in deciding to purchase the Products.

13. Because of the Misrepresentations and Omissions, Plaintiff Rogow believed she was purchasing seafood products that were sustainable. During the time she purchased and used the Greenwashed Seafood Products, and due to the Misrepresentations, Omissions, and other deceptive conduct by Amazon, she was unaware the true sustainability of the Greenwashed

---

[13] *Amazon Conditions of Use*, Amazon.com (last updated May 30, 2025), https://www.amazon.com/gp/help/customer/display.html?nodeId=GLSBYFE9MGKKQXXM.

CLASS ACTION COMPLAINT – 5
011398-11/5086982 V1



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

Seafood Products was not as marketed or advertised. If Amazon had disclosed the true sustainable nature of the Greenwashed Seafood Products, Plaintiff Rogow would not have purchased the Greenwashed Seafood Products at all or otherwise would have paid less for them. Plaintiff Rogow would be willing to purchase the Greenwashed Seafood Products in the future if she could be certain the Sustainability Claims on Amazon's point-of-sale webpages were true and not misleading.

14.     Plaintiff Adam Sorkin ("Plaintiff Sorkin") is, and at all times relevant, has been a citizen and resident of Illinois domiciled in Chicago, Illinois, in Cook County. Plaintiff Sorkin purchased the Greenwashed Seafood Products from Amazon, including Bumble Bee Chunk Light Tuna, Chicken of the Sea Alaskan Pink Salmon (pouches and cans), Bumble Bee Applewood Smoke Seasoned Tuna, 2.5 oz. (pouches), Bumble Bee Prime Lemon & Pepper Yellowfin Tuna, and Bumble Bee Chunk Light Tuna in Water, 2.5 oz. (pouches), Bumble Bee Wild Caught Sardines in Mustard Sauce (tins), Bumble Bee Jalapeno Seasoned Tuna, 2.5 oz. (pouches), Bumble Bee Thai Chili Seasoned Tuna, 2.5 oz. (pouch), Bumble Bee Wild Caught Pink Salmon with Skin and Bones, 14.75 oz (can), and Bumble Bee Pink Salmon Wild Premium Quality, 14.75 oz (cans), between approximately October 2023 and November 2025. When Plaintiff Sorkin purchased Bumble Bee Chunk Light Tuna, Chicken of the Sea Alaskan Pink Salmon (pouches and cans), Bumble Bee Applewood Smoke Seasoned Tuna, 2.5 oz. (pouches), Bumble Bee Prime Lemon & Pepper Yellowfin Tuna, and Bumble Bee Chunk Light Tuna in Water, 2.5 oz. (pouches) via Amazon's marketplace, Amazon was the seller of the products. Had Amazon disclosed the truth, Plaintiff Sorkin would have purchased an available, comparable, lower-priced seafood product that did not carry the misleading sustainability representations, such as Starkist Chunk Light Tuna in Water (pouches or cans), Chicken of the Sea Wild Caught Premium Solid White Albacore Tuna in Water (can), Starkist Tuna Creations Lemon Pepper (pouch), or Double "Q" Pink Wild Caught Alaskan Salmon (can).

15.     Prior to purchasing these products, Plaintiff Sorkin viewed the information available on Amazon's Product Detail Pages for Bumble Bee Chunk Light Tuna, Chicken of the

CLASS ACTION COMPLAINT – 6
011398-11/5086982 V1

Sea Alaskan Pink Salmon (pouches and cans), Bumble Bee Applewood Smoke Seasoned Tuna, 2.5 oz. (pouches), Bumble Bee Prime Lemon & Pepper Yellowfin Tuna, Bumble Bee Chunk Light Tuna in Water, 2.5 oz. (pouches). Each of the Product Detail Pages included statements regarding the sustainability of the product and stated the Greenwashed Seafood Products were MSC certified, including the specific representations "MSC Certified Sustainable Seafood," "wild caught," and "sustainable]. Plaintiff Sorkin read and relied on these representations in deciding to purchase the Products.

16.    Because of the Misrepresentations and Omissions, Plaintiff Sorkin believed he was purchasing seafood products that were sustainable. During the time he purchased and used the Greenwashed Seafood Products, and due to the Misrepresentations, Omissions, and other deceptive conduct by Amazon, he was unaware the true sustainability of the Greenwashed Seafood Products was not as marketed or advertised. If Amazon had disclosed the true sustainable nature of the Greenwashed Seafood Products, Plaintiff Sorkin would not have purchased the Greenwashed Seafood Products at all or otherwise would have paid less for them. Plaintiff Sorkin would be willing to purchase the Greenwashed Seafood Products in the future if he could be certain the Sustainability Claims on Amazon's point-of-sale webpages were true and not misleading.

17.    Plaintiffs were injured based on paying a premium price for the Greenwashed Seafood Products and suffered economic loss because they would not have spent the money on these products or paid a premium for products with MSC certification.

18.    Defendant's unfair, unlawful, and deceptive conduct in manufacturing, marketing, and selling the Greenwashed Seafood Products as described in this Class Action Complaint on its platform caused Plaintiffs out-of-pocket loss. Defendant knew that the Greenwashed Seafood Products were not sustainable but did not disclose such facts or their effects to Plaintiffs, so Plaintiffs purchased the Greenwashed Seafood Products on the reasonable, but mistaken belief that the Greenwashed Seafood Products were derived from supply chains using sustainable fishing practices, in contrast to similar products without this certification.

CLASS ACTION COMPLAINT – 7
011398-11/5086982 V1

19.     Amazon is an American multinational consumer goods and technology company that conducts business in all 50 states and the District of Columbia. Amazon is a Delaware corporation with principal executive offices located at 410 Terry Avenue North, Seattle, Washington 98109.

20.     Amazon knowingly created, oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive point-of-sale webpages and related marketing for the Greenwashed Seafood Products that misleadingly claimed the Greenwashed Seafood Products were sustainable.

21.     Plaintiffs relied on the Greenwashed Seafood Products' point-of-sale webpages, which were prepared, reviewed, and/or approved by Amazon and its agents at its headquarters in Seattle and disseminated by Amazon and its agents.

## IV.     FACTUAL ALLEGATIONS

**A.     Amazon Sells Seafood Products in Its Online Marketplace and Delivers These Products Directly to Consumers**

22.     Amazon operates the largest online retail marketplace in the United States, which includes its website, applications for mobile devices, and voice-controlled devices that allow consumers to make purchases from Amazon ("Amazon's marketplace").

23.     Amazon directly sells a wide range of consumer goods—approximately 12 million goods—to customers on its marketplace.[14] Some of these products are manufactured by third parties but sold to consumers by Amazon as a traditional first-party retailer. Other products are manufactured by Amazon or its subsidiaries and marketed under one of Amazon's many in-house brand names.

24.     Amazon is the manufacturer and seller of multiple Greenwashed Seafood Products at issue: 365 by Whole Foods Albacore Wild Tuna, Beer Battered Pollock, Sockeye Salmon Fillets, Unsalted Skipjack Tuna in Water, Wild Fancy Pink Salmon, and Full Size Fish Omega 1000 MG supplements, as well as Amazon Fresh Brand Wild Caught Flounder Boneless Skinless Fillet

---

[14] *Amazon Statistics: Key Numbers and Fun Facts*, Amazon Scout, https://amzscout.net/blog/amazon-statistics (last accessed July 30, 2026).

CLASS ACTION COMPLAINT – 8
011398-11/5086982 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

Portions (frozen) and Amazon Grocery Wild Caught Pacific Cod boneless skinless fillets and Wild Caught Yellowfin Tuna skinless steaks.[15]

25. Amazon also sells several of the Greenwashed Seafood Products directly to consumers as a first party, including Bumble Bee Applewood Smoke Seasoned Tuna, Bumble Bee Chunk Light Tuna in Water, Bumble Bee Prime Lemon & Pepper Yellowfin Tuna in extra virgin olive oil, Chicken of the Sea Alaskan Pink Canned Salmon in Water, Chicken of the Sea Alaskan Pink Salmon in Spring Water, Fishwife Albacore Tuna in Olive Oil, Fishwife Albacore Tuna in Spicy Olive Oil, Rio Mare Premium Yellowfin Tuna with a drizzle of olive oil, and Starkist Wild Pink Salmon. In other words, Amazon itself—not a third party—lists these Products on Amazon's marketplace and sells, ships, and delivers them to consumers.

26. In addition to selling goods as a first party, Amazon allows third-party sellers to list products on Amazon's marketplace. Such sellers enter into an agreement with Amazon to participate in its ecommerce marketplace by executing Amazon's Business Solutions Agreement as well as other related agreements.

27. Amazon's Business Solutions Agreement with third-party sellers provides, *inter alia*, that Amazon controls: the formatting of product listings on its online marketplace; all communications about the third party's products with Amazon customers, which must take place exclusively through Amazon's online platform; and the processing of all payments, including what the permissible means of purchase are, and remittance of payments to merchants minus Amazon's substantial service fees—which range from 15–40% of the purchase price.

28. Amazon operates a fulfillment service known as "Fulfillment by Amazon." For third-party sellers participating in Fulfillment by Amazon, there are additional policies and requirements that govern the third party's products' presence on Amazon's marketplace.

29. When a third-party seller participates in Fulfillment by Amazon, Amazon undertakes numerous activities to put the seller's goods in consumers' hands. Amazon stores Fulfillment by Amazon products at Amazon warehouses and tracks data related to inventory of the

---

[15] Whole Foods is a wholly owned subsidiary of Amazon. Whole Foods' CEO, Jason Buechel, is also Amazon's Vice President of Worldwide Grocery Stores.

CLASS ACTION COMPLAINT – 9
011398-11/5086982 V1



1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

product. When a consumer places an order for the goods on Amazon's marketplace, Amazon facilitates the transaction, sorts and packages the goods in its warehouses, ships the goods directly to the consumer's doorstep, often via Amazon delivery vehicles, and handles customer service, including processing of returns, complaints, and refund requests.[16]

30.    Sales on Amazon's marketplace make up between 65% and 70% of all online marketplace sales in the United States and account for over 50% of all online retail sales revenue in the United States.[17] The vast majority of sales on Amazon's marketplace are of products that are either sold by Amazon as a first party or handled and shipped by Amazon via Fulfillment by Amazon.

31.    The Greenwashed Seafood Products, including Genuine American Tuna – Premium Wild Pacific Albacore Tuna Fillets and Sports Research Alaskan Omega-3 Fish Oil Supplements (Triple Strength) and Sports Research Alaskan Omega-3 Salmon Oil Supplements (Wild Caught Sockeye), are sold by third parties, but stored, handled, and shipped to consumers by Amazon via Fulfillment by Amazon.

**B.    Amazon Controls and Creates Content for the Point-of-Sale Webpages**

32.    Amazon exercises extensive control over the format and content of the point-of-sale webpages, even for products listed by third parties. The Business Solutions Agreement requires third-party sellers to provide certain "Required Product Information," on Detail Pages,[18] including a description, SKU number, information regarding in-stock status and availability, product category information, digital images, price information, shipping and handling

---

[16] *In the Matter of Amazon.com, Inc.*, CPSC Dkt. No. 21-2, Decision and Order of the United States Consumer Product Safety Commission, at 7–11 (July 29, 2024). In regulatory proceedings, Amazon has attempted to avoid responsibility for selling dangerous products by arguing that it is a "third-party logistics provider" rather than a distributor. *Id.* at 6. In 2024, the United States Consumer Product Safety Commission rejected that argument, finding that Amazon acts as a distributor via Fulfillment by Amazon, and noting that Amazon "controls communications between [third-party sellers] and customers," and that "Amazon controls the distribution of Fulfilled by Amazon products from the initial transactions on Amazon.com through product returns." *Id.* at 34, 39.

[17] *Investigation of Competition in Digital Markets, Majority Staff Report and Recommendations*, SUBCOMMITTEE ON ANTITRUST, COMMERCIAL, AND ADMINISTRATIVE LAW OF THE COMMITTEE ON THE JUDICIARY OF THE HOUSE OF REPRESENTATIVES, 117th Congress (released Oct. 2020, adopted Apr. 2021), at 213, available at https://www.govinfo.gov/content/pkg/CPRT-117HPRT47832/pdf/CPRT-117HPRT47832.pdf.

[18] Amazon refers to the point-of-sale webpages for individual products sold on Amazon as "Product Detail Pages."

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

information, product dimensions, and "any text, disclaimers, warnings, notices, labels, warranties, or other content required by applicable Law to be displayed, or that are necessary for the safe use of Your Product, in connection with the offer, merchandising, advertising, or sale of Your Product."[19]

33.    Amazon monitors the content of product listings. If Amazon determines that Required Product Information is missing from a product listing, it asks the seller to provide the required information, and it removes the product listing from Amazon's marketplace if the seller does not comply.

34.    Amazon provides third-party sellers with "Product detail page rules" that specify the format and content of product descriptions on Detail Pages. The rules include "policies for writing listings," which specify the number of characters a product title can have, prohibit the use of emojis, and forbid sellers from including quotes, testimonials, or requests for positive customer reviews in Detail Page content.

35.    When more than one third-party seller sells a given product on Amazon's marketplace, Amazon decides what information is displayed on the Detail Page.

36.    Each of the Greenwashed Seafood Products is sold on Amazon's platform via a point-of-sale webpage. The point-of-sale webpage for each Product includes a product description and a picture of the product's ingredients panel, the specifications of which are set by Amazon.

37.    For example, the Detail Page for Bumble Bee Chunk Light Tuna purchased by Plaintiff Adam Sorkin is set forth below:

---

[19] *Amazon Services Business Solutions Agreement*, AMAZON SELLER CENTRAL, https://sellercentral.amazon.com/help/hub/reference/external/G1791 (last accessed July 30, 2026).

CLASS ACTION COMPLAINT – 11
011398-11/5086982 V1



**Figure 1**: Screenshot of Amazon Product Detail Page
for Bumble Bee Chunk Light Tuna (purchased by Plaintiff Sorkin)

38. The Product Detail Page contains language touting the sustainability of this product, describing it as "wild caught," containing "clean ingredients," "sustainable," "MSC Certified Sustainable Seafood, Wild Caught, and Dolphin Safe," and traceable as to "where and how [i]t was caught, processed, and more."

CLASS ACTION COMPLAINT – 12
011398-11/5086982 V1

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX



**Figure 2**: Screenshot of Amazon Product Detail Page
for Bumble Bee Chunk Light Tuna (purchased by Plaintiff Sorkin)

39.     As part of its greenwashing scheme, Amazon also includes statements from the manufacturer on the point-of-sale webpage, including claims that the product is "wild caught" and that the company is "passionately pursuing its purpose of feeding people's lives through the power of the ocean. We consistently aim to deliver delicious, healthy and affordable food while working hard to find new ways to protect the ocean today, and for generations to come."



**Figure 3**: Screenshot of Amazon Product Detail Page
for Bumble Bee Chunk Light Tuna (purchased by Plaintiff Sorkin)

CLASS ACTION COMPLAINT – 13
011398-11/5086982 V1

40.     The point-of-sale webpage for Chicken of the Sea Alaskan Pink Salmon in Spring Water, 5 Ounce Packets (Pack of 12), Wild Caught Salmon, Skinless & Boneless, purchased by Plaintiff Adam Sorkin is set forth below:



**Figure 4**: Screenshot of Amazon Product Detail Page for Chicken of the Sea Alaskan Pink Salmon in Spring Water (purchased by Plaintiff Sorkin)

41.     The Product Detail Page contains language touting the sustainability of this product, describing it as "wild caught," "100% simple ingredients" "responsibly sourced," "Marine Steward Council (MSC) certified." The Page also claims that "[w]e're leaders in sustainability efforts to ensure that we are responsible stewards of our seas now and for future generations."

CLASS ACTION COMPLAINT – 14
011398-11/5086982 V1



**Figure 5**: Screenshot of Amazon Product Detail Page for Chicken of the
Sea Alaskan Pink Salmon in Spring Water (purchased by Plaintiff Sorkin)

42. The point-of-sale webpage for Bumble Bee Low Sodium Solid White Albacore Tuna in Water, 5 oz Can (Pack of 12) – Wild Caught Tuna, purchased by Plaintiff Adam Sorkin is set forth below:

**Figure 6**: Screenshot of Amazon Product Detail Page for Bumble Bee Low Sodium
Solid White Albacore Tuna in Water, 5 oz Can (Pack of 12) (purchased by Plaintiff Sorkin)

43. The Product Detail Page contains language touting the sustainability of this product, describing it as "wild caught," "sustainable tuna," "dolphin safe." The Page also encourages consumers to "submit the code on the can on our Trace My Catch website to learn where and how your seafood was caught, processed, and more."

CLASS ACTION COMPLAINT – 15
011398-11/5086982 V1



**Figure 7**: Screenshot of Amazon Product Detail Page for Bumble Bee Low Sodium
Solid White Albacore Tuna in Water, 5 oz Can (Pack of 12) (purchased by Plaintiff Sorkin)

44. Amazon also includes statements from the manufacturer on the point-of-sale webpage, including claims that the product is "wild caught."



**Figure 8**: Screenshot of Amazon Product Detail Page for Bumble Bee Low Sodium
Solid White Albacore Tuna in Water, 5 Ounce Can (Pack of 12) (purchased by Plaintiff Sorkin)

45. The point-of-sale webpage for Bumble Bee Wild Caught Sardines in Mustard Sauce, 3.75 oz (12-Pack), purchased by Plaintiff Adam Sorkin is set forth below:

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX



**Figure 9**: Screenshot of Amazon Product Detail Page for Bumble Bee Wild Caught Sardines in Mustard Sauce (purchased by Plaintiff Sorkin)

46.    The Product Detail Page contains language touting the sustainability of this product, describing it as "wild caught" and "traceable." The Page also claims "[o]ur products feature a code you can enter on our Trace My Catch website to learn where and how your seafood was caught, processed, and more."

**Figure 10**: Screenshot of Amazon Product Detail Page for Bumble Bee Wild Caught Sardines in Mustard Sauce (purchased by Plaintiff Sorkin)

CLASS ACTION COMPLAINT – 17
011398-11/5086982 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

47.     Amazon also includes statements from the manufacturer on the point-of-sale webpage, including claims that the product is "wild caught."



**Figure 11**: Screenshot of Amazon Product Detail Page for Bumble Bee Wild Caught Sardines in Mustard Sauce (purchased by Plaintiff Sorkin)

48.     The point-of-sale webpage for Bumble Bee Applewood Smoke Seasoned Tuna Pouch, 2.5 oz (Pack of 12), Wild Caught Tuna, purchased by Plaintiff Adam Sorkin is set forth below:



**Figure 12**: Screenshot of Amazon Product Detail Page for Bumble Bee Applewood Smoke Seasoned Tuna Pouch (purchased by Plaintiff Sorkin)

49.     The Product Detail Page contains language touting the sustainability of this product, describing it as "wild caught," "sustainable tuna," "dolphin safe," and "MSC certified."

The Page also encourages consumers to "submit the product code on our Trace My Catch website to learn where and how your seafood was caught, processed, and more."

**Figure 13**: Screenshot of Amazon Product Detail Page for Bumble Bee Applewood Smoke Seasoned Tuna Pouch (purchased by Plaintiff Sorkin)

50.    As part of the scheme, Amazon also includes statements from the manufacturer on the point-of-sale webpage, including claims that the product is "wild caught" and that the company is "passionately pursuing its purpose of feeding people's lives through the power of the ocean. We consistently aim to deliver delicious, healthy and affordable food while working hard to find new ways to protect the ocean today, and for generations to come."

CLASS ACTION COMPLAINT – 19
011398-11/5086982 V1

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX



**Figure 14**: Screenshot of Amazon Product Detail Page for Bumble Bee
Applewood Smoke Seasoned Tuna Pouch (purchased by Plaintiff Sorkin)

51.    The point-of-sale webpage for Bumble Bee Jalapeno Seasoned Tuna Pouch, 2.5 oz (Pack of 12), Wild Caught Tuna, purchased by Plaintiff Adam Sorkin is set forth below:

**Figure 15**: Screenshot of Amazon Product Detail Page for Bumble Bee
Applewood Smoke Seasoned Tuna Pouch (purchased by Plaintiff Sorkin)

52.    The Product Detail Page contains language touting the sustainability of this product, describing it as "wild caught," "sustainable tuna," "dolphin safe," and "MSC certified." The Page also encourages consumers to "submit the product code on our Trace My Catch website to learn where and how your seafood was caught, processed, and more."

CLASS ACTION COMPLAINT – 20
011398-11/5086982 V1



**Figure 16**: Screenshot of Amazon Product Detail Page for Bumble Bee Jalapeno Seasoned Tuna Pouch (purchased by Plaintiff Sorkin)

53.     Amazon, as part of the scheme, also includes statements from the manufacturer on the point-of-sale webpage, including claims that the product is "wild caught" and that the company is "passionately pursuing its purpose of feeding people's lives through the power of the ocean. We consistently aim to deliver delicious, healthy and affordable food while working hard to find new ways to protect the ocean today, and for generations to come."



**Figure 17**: Screenshot of Amazon Product Detail Page for Bumble Bee Jalapeno Seasoned Tuna Pouch (purchased by Plaintiff Sorkin)

CLASS ACTION COMPLAINT – 21
011398-11/5086982 V1

54.    The point-of-sale webpage for Bumble Bee Lemon & Pepper Seasoned Tuna Pouch, 2.5 oz, Wild Caught Tuna, purchased by Plaintiff Adam Sorkin is set forth below:

**Figure 18**: Screenshot of Amazon Product Detail Page for Bumble Bee Lemon & Pepper Seasoned Tuna Pouch (purchased by Plaintiff Sorkin)

55.    The Product Detail Page contains language touting the sustainability of this product, describing it as "wild caught," "sustainable tuna," "dolphin safe," and "MSC certified." The Page also encourages consumers to "submit the product code on our Trace My Catch website to learn where and how your seafood was caught, processed, and more."

CLASS ACTION COMPLAINT – 22
011398-11/5086982 V1

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX



**Figure 19**: Screenshot of Amazon Product Detail Page for Bumble Bee Lemon & Pepper Seasoned Tuna Pouch (purchased by Plaintiff Sorkin)

56.    Amazon also includes statements from the manufacturer on the point-of-sale webpage, including claims that the product is "wild caught" and that the company is "passionately pursuing its purpose of feeding people's lives through the power of the ocean. We consistently aim to deliver delicious, healthy and affordable food while working hard to find new ways to protect the ocean today, and for generations to come."

CLASS ACTION COMPLAINT – 23
011398-11/5086982 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX



**Figure 20**: Screenshot of Amazon Product Detail Page for Bumble Bee Lemon & Pepper Seasoned Tuna Pouch (purchased by Plaintiff Sorkin)

57.    The point-of-sale webpage for Bumble Bee Spicy Thai Chili Seasoned Tuna Pouch, 2.5 oz, Wild Caught Tuna, purchased by Plaintiff Adam Sorkin is set forth below:

**Figure 21**: Screenshot of Amazon Product Detail Page for Bumble Bee Spicy Thai Chili Seasoned Tuna Pouch (purchased by Plaintiff Sorkin)

58.    The Product Detail Page contains language touting the sustainability of this product, describing it as "wild caught," "sustainable tuna," "dolphin safe," and "MSC certified." The Page also encourages consumers to "submit the product code on our Trace My Catch website to learn where and how your seafood was caught, processed, and more."

CLASS ACTION COMPLAINT – 24
011398-11/5086982 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX



**Figure 22**: Screenshot of Amazon Product Detail Page for Bumble
Bee Spicy Thai Chili Seasoned Tuna Pouch (purchased by Plaintiff Sorkin)

59.    Amazon also includes statements from the manufacturer on the point-of-sale webpage, including claims that the product is "wild caught" and that the company is "passionately pursuing its purpose of feeding people's lives through the power of the ocean. We consistently aim to deliver delicious, healthy and affordable food while working hard to find new ways to protect the ocean today, and for generations to come."



**Figure 23**: Screenshot of Amazon Product Detail Page for Bumble
Bee Spicy Thai Chili Seasoned Tuna Pouch (purchased by Plaintiff Sorkin)

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

60.     The point-of-sale webpage for Chicken of the Sea Alaskan Pink Canned Salmon in Water with 25% Less Sodium, 5oz Cans, 12-Count, High Protein Skinless Boneless Wild Caught Salmon, purchased by Plaintiff Adam Sorkin is set forth below:



**Figure 24**: Screenshot of Amazon Product Detail Page for Chicken of the Sea Alaskan Pink Canned Salmon in Water (purchased by Plaintiff Sorkin)

61.     The Product Detail Page contains language touting the sustainability of this product, describing it as "wild caught," "Marine Stewardship Council certified, and "responsibly sourced." The Page also claims that "we're doing our part to keep our seas healthy" and "our SeaChange sustainability plan has solutions for both people & the planet to support a better future for all."

CLASS ACTION COMPLAINT – 26
011398-11/5086982 V1



**Figure 25**: Screenshot of Amazon Product Detail Page for Chicken of
the Sea Alaskan Pink Canned Salmon in Water (purchased by Plaintiff Sorkin)

62.	Amazon also includes statements from the manufacturer on the point-of-sale webpage, including claims that the product is "wild-caught," "Marine Steward Council (MSC) certified," "responsibly sourced." Amazon also includes the manufacturer's claim that, "[w]e're leaders in sustainability efforts to ensure that we are responsible stewards."



**Figure 26**: Screenshot of Amazon Product Detail Page for Chicken of
the Sea Alaskan Pink Canned Salmon in Water (purchased by Plaintiff Sorkin)

CLASS ACTION COMPLAINT – 27
011398-11/5086982 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

63.    The point-of-sale webpage for Bumble Bee Wild Caught Pink Salmon with Skin & Bones, 14.75 oz, purchased by Plaintiff Adam Sorkin is set forth below:



**Figure 27**: Screenshot of Amazon Product Detail Page for Bumble Bee Wild Caught Pink Salmon with Skin & Bones (purchased by Plaintiff Sorkin).

64.    The Product Detail Page contains language touting the sustainability of this product, describing it as "wild caught," "fished from a plentiful species," and "MSC certified sustainable seafood." The Page also encourages consumers to "submit the product code on our Trace My Catch website to learn where and how your seafood was caught, processed, and more."

CLASS ACTION COMPLAINT – 28
011398-11/5086982 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX



**Figure 28**: Screenshot of Amazon Product Detail Page for Bumble Bee
Wild Caught Pink Salmon with Skin & Bones (purchased by Plaintiff Sorkin)

65.    The point-of-sale webpage for Bumble Bee Pink Salmon, Wild, Premium Quality, 14.75 oz, Pack of 3, purchased by Plaintiff Adam Sorkin is set forth below:



**Figure 29**: Screenshot of Amazon Product Detail Page for Bumble
Bee Pink Salmon, Wild, Premium Quality (purchased by Plaintiff Sorkin)

66.     The Product Detail Page contains language touting the sustainability of this product, describing it as "wild caught," "[f]ished from a plentiful species," and "MSC certified sustainable seafood." The Page also encourages consumers to "submit the product code on our Trace My Catch website to learn where and how your seafood was caught, processed, and more."



**Figure 30**: Screenshot of Amazon Product Detail Page for Bumble
Bee Pink Salmon, Wild, Premium Quality (purchased by Plaintiff Sorkin)

67.     The point-of-sale webpage for Bumble Bee Chunk Light Tuna in Water, 5 oz (Pack of 24), Wild Caught Tuna, purchased by Plaintiff Adam Sorkin is set forth below:



**Figure 31**: Screenshot of Amazon Product Detail Page for Bumble
Bee Chunk Light Tuna in Water, 5 oz (Pack of 24) (purchased by Plaintiff Sorkin)

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

68.    The Product Detail Page contains language touting the sustainability of this product, describing it as "wild caught," "sustainable tuna," "dolphin safe," and "MSC certified." The Page also encourages consumers to "submit the code on the can on our Trace My Catch website to learn where and how your seafood was caught, processed, and more."



**Figure 32**: Screenshot of Amazon Product Detail Page for Bumble Bee Chunk Light Tuna in Water, 5 oz (Pack of 24) (purchased by Plaintiff Sorkin)

69.    Amazon also includes statements from the manufacturer on the point-of-sale webpage, including claims that the product is "wild caught."



**Figure 33**: Screenshot of Amazon Product Detail Page for Bumble Bee Chunk Light Tuna in Water, 5 oz (Pack of 24) (purchased by Plaintiff Sorkin)

CLASS ACTION COMPLAINT – 31
011398-11/5086982 V1

70.     The point-of-sale webpage for 365 by Whole Foods Market, Sockeye Salmon Fillet, 32 oz, purchased by Plaintiff Madeline Rogow is set forth below:



**Figure 34**: Screenshot of Amazon Product Detail Page for 365 by
Whole Foods Market Sockeye Salmon Fillet (purchased by Plaintiff Rogow)

71.     The Product Detail Page contains language touting the sustainability of this product, describing it as "Wild-Caught, "traceability from fishery to store," "certified sustainable to the Marine Stewardship Council (MSC) standard," "rated either 'green' or 'yellow' by the Monterey Bay Aquarium Seafood Watch and the safina center," and "certified sustainable." The Page also claims that, "We don't sell any of the red-rated seafood you might find at other Grocery stores."

CLASS ACTION COMPLAINT – 32
011398-11/5086982 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX



**Figure 35**: Screenshot of Amazon Product Detail Page for 365 by
Whole Foods Market Sockeye Salmon Fillet (purchased by Plaintiff Rogow)

72.     The point-of-sale webpage for 365 by Whole Foods Market, No Salt Albacore Tuna in Water, 5 Ounce Can, purchased by Plaintiff Madeline Rogow is set forth below:



**Figure 36**: Screenshot of Amazon Product Detail Page for 365 by Whole
Foods Market No Salt Albacore Tuna in Water (purchased by Plaintiff Rogow)

73.     The Product Detail Page contains language touting the sustainability of this product, describing it as "100% Pole & Line Caught," "The Pole & Line Method is Safe for Dolphins & Sea Turtles," "Traceable From Boats to Shelf," and "An Amazon brand."

CLASS ACTION COMPLAINT – 33
011398-11/5086982 V1

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX



**Figure 37**: Screenshot of Amazon Product Detail Page for 365 by Whole Foods Market No Salt Albacore Tuna in Water (purchased by Plaintiff Rogow)

**C.     The Greenwashed Seafood Products Sold on Amazon's Platform Have Been "Certified by the MSC"**

74.     The Marine Stewardship Council ("MSC") is an independent non-profit organization that was founded in the 1990s by the World Wildlife Fund ("WWF") in partnership with Unilever (which was the world's largest producer and buyer of frozen seafood at the time) after the collapse of the Grand Banks cod fishery in Canada.[20]

75.     The MSC "blue fish label" is used on the packaging of seafood products and items and can only be applied to a fish or seafood item if it is "from fishing practices that have been independently assessed as meeting the MSC's requirements for environmental sustainability."[21]



**Figure 38**: MSC Blue Fish Label

[20] *Our History*, Marine Stewardship Council, https://www.msc.org/about-the-msc/our-history (last accessed July 30, 2026).

[21] *Frequently Asked Questions*, Marine Stewardship Council, https://www.msc.org/en-us/about-the-msc/faqs (last accessed July 30, 2026).

CLASS ACTION COMPLAINT – 34
011398-11/5086982 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

76.    MSC claims that the blue fish label is "the most trusted seafood ecolabel globally [and] … provides an easy way for North American consumers to identify seafood that is always wild-caught and traceable back to a sustainable source."[22]

77.    The fisheries certified by the MSC must meet the MSC Fishery Standard principles:

- "Healthy and sustainable fish stocks [i.e., the fish come from abundant fish stocks];

- Minimal environmental impact; and

- Effective fisheries management in place to react and adapt to any new information or changing conditions."[23]

78.    MSC certified fisheries are required to collect data to show they fish "within sustainable limits," "within specified geographic boundaries," and "the fishing practices are not causing long-lasting harm to the environment."[24]

79.    However, not all products sourced from MSC certified fisheries are sustainable, despite the statements made on the packaging and on Amazon's point-of-sale webpages. For example, Amazon never discloses that the Greenwashed Seafood Products are MSC certified but that the MSC certifies fisheries that do not routinely practice sustainable fishing methods, that bring in large amounts of bycatch, use dredging and bottom trawl fishing, and use fish aggregating devices ("FADs")—man-made floating objects deployed in open water to attract fish for easier capture—in addition to claims that the MSC Chain of Custody standard is not the same as traceability and that MSC certified products include products associated with ecological damages.

80.    The contents of the point-of-sale Detail Pages for the Greenwashed Seafood Products show that (1) Amazon knows the sustainability of seafood products is material to consumers and (2) Amazon fails to disclose to consumers the fact that the Greenwashed Seafood Products are not sustainably sourced.

---

[22] *Id.*

[23] *Id.*; *see also The MSC Blue Fish Label*, https://www.msc.org/en-us/the-msc-blue-fish-label-what-it-means-for-you (last accessed July 30, 2026).

[24] *Frequently Asked Questions*, supra n.21.

CLASS ACTION COMPLAINT – 35
011398-11/5086982 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

81.    Excerpts from the Greenwashed Seafood Products' point-of-sale webpages are attached in Appendix B.

**D.    A Company's Environmental Stewardship Is a Material Attribute to Consumers**

82.    A large portion of consumers weigh the environmental impact of products when making purchasing decisions, with many stating they are willing to pay more for sustainable options and prioritize brands with environmentally conscious practices.

83.    For instance, according to a study from McKinsey & Company, 78% of U.S. consumers say that a sustainable lifestyle is important to them, and that more than 60% of U.S. consumers disclosed that they care about buying environmentally and ethically sustainable products.[25]

84.    McKinsey's research also shows "that a wide range of consumers across incomes, life stages, ages, races, and geographies are buying products bearing ESG[26]-related labels." These findings are consistent with other consumer surveys which find that 68%[27] of consumers rate sustainability important regardless of age or gender, and that 63%[28] of consumers have adopted greener buying habits to become more sustainable.

85.    These green preferences are reflected in recent sales data for household goods. For example, the McKinsey study reviewed actual consumer purchasing behavior over a five-year period to compare products that made one or more ESG-related claims on their packaging to similar products which made none. The McKinsey study found that the packages with the ESG-related claims outperformed products that made none, and that there was "a clear and material link between ESG-related claims and consumer spending."[29]

---

[25] *Consumers care about sustainability—and back it up with their wallets*, McKinsey & Company (Feb. 6, 2023), https://www.mckinsey.com/industries/consumer-packaged-goods/our-insights/consumers-care-about-sustainability-and-back-it-up-with-their-wallets (last accessed July 30, 2026).

[26] ESG is an acronym for Environmental, social, and governance issues.

[27] *CGS Survey Reveals Sustainability Is Driving Demand and Customer Loyalty*, CGS (Jan. 10, 2019), https://www.globenewswire.com/news-release/2019/01/10/1686144/0/en/cgs-survey-reveals-sustainability-is-driving-demand-and-customer-loyalty.html (last accessed July 30, 2026).

[28] *52 Huge Environmentally Conscious Consumer Statistics*, The Roundup (Jan. 21, 2026), https://theroundup.org/environmentally-conscious-consumer-statistics/ (last accessed July 30, 2026).

[29] McKinsey & Company, *supra* n.25.

CLASS ACTION COMPLAINT – 36
011398-11/5086982 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

86.     Studies also show that consumers are even willing to pay a significant price premium for sustainable products and practices. For example, Price Waterhouse Coopers ("PwC") recently published a survey that showed that a majority of consumers were willing to spend 9.7% more, on average, for sustainably produced or sourced goods[30]:



**Figure 39**: PwC 2024 Voice of the Consumer Survey excerpt showing
consumer willingness to pay a premium for sustainably produced or sourced goods

87.     Correspondingly, poor environmental practices in a product or company's supply chain are also material to consumers. According to data summarizing 2023 consumer behaviors released by the consumer and environmental advocacy group, The Roundup, 84% of consumers said that "poor environmental practices will alienate them from a brand or company."[31] Examples of poor environmental practices include: a poor environmental track record, unsustainable packaging, a poor compliance record, and irresponsible materials sourcing.

88.     Independent research conducted by Globescan, an insights and advisory firm, in 2022 with more than 20,000 global consumers, confirmed the trust that consumers place in the MSC label and in the importance of sustainably sourced products:

      a.     "78% of consumers who have seen the MSC label trust it";

---

[30] *PwC 2024 Voice of the Consumer Survey*, PwC (May 15, 2024), https://www.pwc.com/gx/en/news-room/press-releases/2024/pwc-2024-voice-of-consumer-survey.html (last accessed July 30, 2026).

[31] *52 Huge Environmentally Conscious Consumer Statistics*, *supra* n.28.

CLASS ACTION COMPLAINT – 37
011398-11/5086982 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

      b.    "79% believe that supermarkets' and brands' claims about sustainability and the environment need to be clearly labelled by an independent organisation [sic]";

      c.    "78% believe that we must consume fish and seafood only from sustainable sources to save our ocean"; and

      d.    "45% of consumers say the top action they are willing to take to protect the fish and seafood in our ocean is to purchase more sustainable seafood."[32]

89.    Amazon has also recognized that sustainability labels are shifting shopping decisions on its platform: "more customers value sustainability, and our validation helps provide the trust they need."[33] Amazon's Climate Pledge Friendly program was "designed to help customers discover and shop for products with verified sustainability features" and "recognizes products that meet sustainability standards and third-party certifications."[34]

90.    Sales of products in Amazon's Climate Pledge Friendly program increased more than 8,000% between 2020 and 2025 (from 25,000 products in 2020 to more than 2 million in 2025).[35] In 2024, customers purchased more than 1.7 billion Climate Pledge Friendly-badged products, representing a 48% increase from 2023.[36] Additionally, "[s]ince 2020, more than 143 million customers have switched from a conventional product to a product recognized by certifications that are part of Climate Pledge Friendly."[37]

91.    Because of these strong shifts in consumer preferences, many companies are assessing the environmental impacts of their manufacturing and supply chains, and touting products and practices that represent more sustainable options. Some companies, however, have also chosen to develop sophisticated greenwashing campaigns to misleadingly position themselves as environmental stewards.

---

[32] *Senate Inquiry into Greenwashing — MSC Submission*, *supra* n.11, at 2.

[33] *Sustainability labels are shifting shopping decisions*, Amazon (Dec. 9, 2025), https://sustainability.aboutamazon.com/stories/sustainability-labels-are-shifting-shopping-decisions.

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Id.*

CLASS ACTION COMPLAINT – 38
011398-11/5086982 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

92.    "Greenwashing" is the act of misleading consumers regarding the environmental practices of a company or a product. Greenwashing occurs when a company positions itself (or a specific product) as having a positive influence on environmental issues, when in reality, the company (or product) is either exaggerating its influence and/or actively engaging in negative environmental practices that do not align with its previously touted green goals. Product-level greenwashing refers to the act of misleading consumers about the environmental benefits of a specific product and can include tactics such as labeling products with false or misleading information regarding their composition.[38] Firm-level greenwashing arises when a company makes false or misleading claims about its overall environmental practices, policies, or performance, rather than just its individual products.

93.    According to academic researchers from Pace University's Sustainable Business Law Hub, firm-level greenwashing "involves creating a false image of the company as environmentally responsible, even though its actual practices may be environmental harmful or unsustainable. This form of greenwashing can be particularly damaging as it misleads consumers and investors into thinking that the entire company is environmentally friendly, when in fact only a small portion of its practices may be achieving the stated sustainability goals."[39]

**E.    The Material Misrepresentations and Omissions Mislead and Deceive Reasonable Consumers**

94.    Based on Amazon's Misrepresentations and Omissions, and the net impression created by the point-of-sale webpages as a whole, no reasonable consumer would discern that the claims regarding the sustainable nature of the Greenwashed Seafood Products were, in fact, misleading, deceptive, and unfair. Considered together rather than in isolation, the sustainability certifications, responsible-sourcing statements, traceability representations, and environmental cues on each Detail Page combine to convey the net impression that the Greenwashed Seafood Products are sustainably and responsibly sourced.

---

[38] Barbara Ballan & Jason J. Czarnezki, *Disclosure, Greenwashing and the Future of ESG Litigation,* 81 Wash. & Lee L. Rev. 545, 555-60 (2024), available at https://digitalcommons.pace.edu/lawfaculty/1276.

[39] *Id.*

CLASS ACTION COMPLAINT – 39
011398-11/5086982 V1

95.    The Greenwashed Seafood Products' point-of-sale webpage communications include, but are not limited to (collectively, the "Misrepresentations"):

**a.    365 by Whole Foods Market, Albacore Wild Tuna, no salt added:**

- "Certified Sustainable Seafood MSC"

- "100% Pole & Line Caught"

- "Wild Tuna"

- "Traceable from Boats to Shelf"

- "Dolphin Safe"

- "100% pole and line caught for dolphin and sea turtle safety"

- "Wild-caught tuna"

- "This Albacore Tuna is wild-caught the old-fashioned way on a pole and line"

**b.    365 by Whole Foods Market, Beer Battered Pollock:**

- "Certified Sustainable Seafood MSC"

- "Sustainably Sourced Wild Caught"

- "In order for a fishery to earn MSC certification, they're evaluated by an independent third party in accordance with the MSC Fisheries Standard for healthy fish populations and ecosystems, and effective management."

- "All seafood from the Whole Foods Market Seafood department is Responsibly Farmed or sustainable wild-caught."

- "Traceable to farm or fishery"

**c.    365 by Whole Foods Market, Sockeye Salmon Fillet:**

- "Wild caught"

- "Certified Sustainable Seafood MSC"

- "Sustainable Wild-Caught"

- "When you shop for wild-caught seafood, you may wonder where it comes from and whether supplies are dwindling. No worries in our seafood Department. Fresh or frozen, we have traceability from fishery to store."

- "We only sell wild-caught seafood from fisheries that are certified sustainable to the Marine Stewardship Council (MSC) standard or rated either 'green' or 'yellow' by the Monterey Bay Aquarium Seafood Watch and the safina center."

CLASS ACTION COMPLAINT – 40
011398-11/5086982 V1

- "We don't sell any of the red-rated seafood you might find at other Grocery stores."[40]

- "Certified Sustainable"

- "Sustainably wild-caught seafood"

d.  **365 by Whole Foods Market, Unsalted Skipjack Tuna in Water:**

- "Certified Sustainable Seafood MSC"

- "100% Pole & Line Caught"

- "Wild"

- "Traceable from Boats to Shelf"

- "Dolphin and sea turtle safe fishing methods"

- "Sustainably sourced"

e.  **365 by Whole Foods Market, Wild Fancy Pink Salmon:**

- "Certified Sustainable Seafood MSC"

- "Wild-Caught"

f.  **Amazon Fresh Brand, Wild Caught Flounder Boneless Skinless Fillet Portions:**

- "Certified Sustainable Seafood MSC"

- "Wild Caught"

- "Sustainably Sourced"

- "Sustainably Sourced: Certified by the Marine Stewardship Council"

g.  **Amazon Fresh Brand, Wild Caught Pink Salmon Skinless Fillet Portions (frozen):**

- "Certified Sustainable Seafood MSC"

- "Wild Caught"

- "Sustainably Sourced"

- "Sustainably Sourced: Certified by the Marine Stewardship Council"

---

[40] According to Monterey Bay Aquarium Seafood Watch, "red-rated" means a high environmental risk. https://www.seafoodwatch.org/recommendations/developing-our-recommendations.

CLASS ACTION COMPLAINT – 41
011398-11/5086982 V1



    **h.**    **Amazon Grocery, Wild Caught Pacific Cod:**

- "Certified Sustainable Seafood MSC"

- "Wild Caught"

- "Sustainably Sourced"

- "Amazon Private Brands offers wild-caught . . . that is certified . . . against sustainability criteria and can be traced back to the source."

- "Sustainably Sourced: Certified by the Marine Stewardship Council"

    **i.**    **Amazon Grocery, Wild Caught Yellowfin Tuna:**

- "Certified Sustainable Seafood MSC"

- "Wild-Caught"

- "Sustainably Sourced"

- "Sustainably sourced and MSC-certified from a well-managed and sustainable fishery"

    **j.**    **Bumble Bee, Applewood Smoke Seasoned Tuna Skinless Steaks:**

- "Certified Sustainable Seafood MSC"

- "Wild Caught"

- "Our pouch is MSC certified!"

- "From an MSC certified sustainable fishery"

- "Bumble Bee ranks #1 for having the most Marine Stewardship Council (MSC) labeled products among all shelf-stable tuna brands in the US."

- "Sustainable Tuna"

- "MSC Certified Sustainable Seafood, Wild Caught, and Dolphin Safe"

- "[S]ubmit the product code on our Trace my Catch website to learn where and how your seafood was caught, processed, and more."

- "Environmental Sustainability"

- "Feeding the World While Protecting Our Oceans"

- "We consistently aim to deliver delicious, healthy and affordable food while working hard to find new ways to protect the ocean today, and for generations to come."

CLASS ACTION COMPLAINT – 42
011398-11/5086982 V1

**k.    Bumble Bee, Chunk Light Tuna in Water (2.5 ounce pouch):**

- "Certified Sustainable Seafood MSC"

- "Wild Caught"

- "Our pouch is MSC certified!"

- "From an MSC certified sustainable fishery"

- "Bumble Bee ranks #1 for having the most Marine Stewardship Council (MSC) labeled products among all shelf-stable tuna brands in the US."

- "Clean ingredients"

- "Sustainable Tuna"

- "MSC Certified Sustainable Seafood, Wild Caught, and Dolphin Safe"

- "[S]ubmit the product code on our Trace My Catch website to learn where and how your seafood was caught, processed, and more."

- "Environmental Sustainability"

- "Feeding the World While Protecting Our Oceans"

- "We consistently aim to deliver delicious, healthy and affordable food while working hard to find new ways to protect the ocean today, and for generations to come."

**l.    Bumble Bee, Chunk Light Tuna in Water (5 ounce can):**

- "Certified Sustainable Seafood MSC"

- "Wild Caught"

- "Clean ingredients"

- "Sustainable Tuna"

- "MSC Certified Sustainable Seafood, Wild Caught, and Dolphin Safe"

- "Environmental Sustainability"

- "Feeding the World While Protecting Our Oceans"

- "We consistently aim to deliver delicious, healthy and affordable food while working hard to find new ways to protect the ocean today, and for generations to come."

**m.    Bumble Bee, Jalapeno Seasoned Tuna Pouch:**

- "Certified Sustainable Seafood MSC"

CLASS ACTION COMPLAINT – 43
011398-11/5086982 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

- "Wild caught"

- "Our pouch is MSC certified!"

- "From an MSC certified sustainable fishery"

- "Bumble Bee ranks #1 for having the most Marine Stewardship Council (MSC) labeled products among all shelf-stable tuna brands in the US."

- "Sustainable tuna"

- "MSC Certified Sustainable Seafood, Wild Caught, and Dolphin Safe"

- "[S]ubmit the product code on our Trace My Catch website to learn where and how your seafood was caught, processed, and more."

- "Environmental Sustainability"

- "Feeding the World While Protecting Our Oceans"

- "We consistently aim to deliver delicious, healthy and affordable food while working hard to find new ways to protect the ocean today, and for generations to come."

    **n.**   **Bumble Bee, Pink Salmon Wild Premium Quality:**

- "Certified Sustainable Seafood MSC"

- "Wild Caught"

- "tracemycatch.com"

- "Fished from a plentiful species"

- "Sustainable salmon"

- "[S]ubmit the product code on our Trace My Catch website to learn where and how your seafood was caught, processed, and more."

    **o.**   **Bumble Bee, Prime Lemon & Pepper Yellowfin Tuna in extra virgin olive oil:**

- "Certified Sustainable Seafood MSC"

- "Wild Caught"

- "tracemycatch.com"

- "Clean ingredients"

- "Sustainable Tuna"

- "MSC Certified Sustainable Seafood, Wild Caught, and Dolphin Safe"

CLASS ACTION COMPLAINT – 44
011398-11/5086982 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

- "[S]ubmit the product code on our Trace My Catch website to learn where and how your seafood was caught, processed, and more."

- "Environmental Sustainability"

- "Feeding the World While Protecting Our Oceans"

- "We consistently aim to deliver delicious, healthy and affordable food while working hard to find new ways to protect the ocean today, and for generations to come."

p.  **Bumble Bee, Spicy Thai Chili Seasoned Tuna Pouch:**

- "Certified Sustainable Seafood MSC"

- "Wild caught"

- "Our pouch is MSC certified!"

- "From an MSC certified sustainable fishery"

- "Bumble Bee ranks #1 for having the most Marine Stewardship Council (MSC) labeled products among all shelf-stable tuna brands in the US."

- "Sustainable tuna"

- "MSC Certified Sustainable Seafood, Wild Caught, and Dolphin Safe"

- "[S]ubmit the product code on our Trace My Catch website to learn where and how your seafood was caught, processed, and more."

- "Environmental Sustainability"

- "Feeding the World While Protecting Our Oceans"

- "We consistently aim to deliver delicious, healthy and affordable food while working hard to find new ways to protect the ocean today, and for generations to come."

q.  **Bumble Bee, Wild Caught Pink Salmon with Skin and Bones:**

- "Certified Sustainable Seafood MSC"

- "Wild Caught"

- "tracemycatch.com"

- "Fished from a plentiful species"

- "Sustainable salmon"

- "[S]ubmit the product code on our Trace My Catch website to learn where and how your seafood was caught, processed, and more."

CLASS ACTION COMPLAINT – 45
011398-11/5086982 V1

HAGENS BERMAN

1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

r. **Chicken of the Sea, Alaskan Pink Canned Salmon in Water (5 ounce can):**

- "Certified Sustainable Seafood MSC"

- "Wild Caught"

- "Caught in Alaska"

- "Mermaid Approved"

- "Wild-caught from cold Alaskan waters"

- "Seachange 2030: Seachange is our sustainability plan with solutions for both people and the planet to support a better future for all"

- "Human & labor rights," "climate action," "circularity," "biodiversity"

- "Wild caught: We're doing our part to keep our seas healthy; the fish in our pink salmon cans are Marine Stewardship Council certified, and responsibly sourced"

- "Our salmon wild caught cans contain only Marine Stewardship Council certified, responsibly sourced fish."

- "Responsibly sourced"

- "We're leaders in sustainability efforts to ensure that we are responsible stewards of our seas now and for future generations."

- "We're expanding our efforts to restore and preserve ocean, land, plant, and animal resources to protect our natural ecosystems."

- "Sustainability for Good"

s. **Chicken of the Sea, Alaskan Pink Salmon in Spring Water (2.5 ounce packet)**

- "Certified Sustainable Seafood MSC"

- "Wild Caught"

- "Caught in Alaska"

- "Mermaid Approved"

- "Seachange 2030: Seachange is our sustainability plan with solutions for both people and the planet to support a better future for all"

- "Human & labor rights," "climate action," "circularity," "biodiversity"

- "Responsibly sourced"

- "Chicken of the Sea salmon is wild caught, Marine Steward Council (MSC) certified, and responsibly sourced."

CLASS ACTION COMPLAINT – 46
011398-11/5086982 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

- "We're leaders in sustainability efforts to ensure that we are responsible stewards of our seas now and for future generations."

- "Sustainability for Good"

t. **Fishwife, Albacore Tuna in Olive Oil:**

- "Certified Sustainable Seafood MSC"

- "Pole & Line Caught"

- "Wild Caught"

- "Sustainably Sourced"

- "For those who go wild for delicious, responsibly-sourced smoked fish, this bundle is the answer to your prayers"

- "Responsibly Sourced"

- "[O]ur tuna is pole & line caught by small boat fishermen in the Bay of Biscay, and off the coast of South Africa, both Marine Stewardship Council-certified fisheries."

- "Ethically Sourced"

- "We source from responsibly managed fisheries and aquaculture farms"

- "Sustainably Harvested"

u. **Fishwife, Albacore Tuna in Spicy Olive Oil:**

- "Certified Sustainable Seafood MSC"

- "Pole & Line Caught"

- "Wild-Caught"

- "Sustainably Sourced"

- "For those who go wild for delicious, responsibly-sourced smoked fish, this bundle is the answer to your prayers"

- "Responsibly Sourced"

- "[O]ur tuna is pole & line caught by small boat fishermen in the Bay of Biscay and off the coast of South Africa, both Marine Stewardship Council-certified fisheries."

- "Ethically Sourced"

- "Ethically Sourced: Always"

- "Sustainably Harvested"

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

- "We source from responsibly managed fisheries and aquaculture farms"

  **v.    Genuine American Tuna, Premium Wild Pacific Albacore Tuna Fillets, no salt:**

- "Certified Sustainable Seafood MSC"

- "Caught one by one"

- "Traditional Pole & Line or Troll Methods"

- "Traceable to the Vessel"

- "One-by-one Caught Albacore Tuna sourced from an MSC Certified Fishery"

- "Traceable back to an individual U.S. flagged vessel"

- "Sustainable Fishing Practices"

- "Transparency Guarantee"

- "Ocean Friendly"

- "Sustainably Sourced"

- "Harvested one-by-one"

- "Sourced from the wild"

- "We employ the most sustainable fishing method, ensuring minimal impact on marine ecosystems and promoting responsible fishing practices."

- "our tuna is dolphin-safe, meeting the stringent standards of the Earth Island Institute to protect marine life."

- "Sustainable fishing practices"

- "The MSC certification signifies that the albacore tuna used in this product is sourced sustainably, meeting strict environmental and social standards."

- "The One-by-One catch method involves hook and line fishing, which significantly reduces bycatch and minimizes the impact on non-target species and marine habitats."

- "Our tuna is caught one-by-one"

- "MSC Award Winner 2022 US Ocean Champion"

- "Responsibly Sourced"

CLASS ACTION COMPLAINT – 48
011398-11/5086982 V1

w. **Rio Mare, Premium Yellowfin Tuna with a drizzle of olive oil:**

- "Certified Sustainable Seafood MSC"

- "Wild Caught"

- "Wild Yellowfin"

- "Dolphin Safe"

- "[O]ur 'Responsible Quality' program . . . champions sustainable fishing and ocean health."

- 100% traceable ingredients"

- "Traceable from boat to plate"

- "With our real-time tracking & transparency system, you can discover the origin of the tuna, how it's caught, and even the name of the boat, using the lot code information you can find on the can."

- "Responsible Quality in Every Can"

- "Proper nutrition, along with sustainable fishing, respecting environment and people, are four pillars of Rio Mare's 'Responsible Quality'. It's our daily commitment to quality along the entire supply chain, from the moment the fish is caught until the product reaches your tables."

x. **Starkist, Wild Pink Salmon, Boneless, Skinless:**

- "Certified Sustainable Seafood MSC"

- "Wild"

- "Alaska Seafood"

- "Wild caught"

- "100% wild caught"

- "certified sustainable seafood by the MSC"

- "Starkist represents a tradition of quality, consumer trust and a commitment to sustainability."

- "Dolphin safe"

y. **365 by Whole Foods Market, Full Size Fish Omega 1000 MG:**

- "Certified Sustainable Seafood MSC"

- "Wild-caught"

- Sports Research, Alaskan Omega-3 Fish Oil Supplements, Triple Strength:

CLASS ACTION COMPLAINT – 49
011398-11/5086982 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

- "Certified Sustainable Seafood MSC"

- "Wild Alaska Pollock"

- "MSC Certified Sustainable"

- "Wild-Caught"

- "Sustainably Sourced and Certified by MSC"

- "Sustainably Sourced"

- "We source exclusively from wild-caught Alaska Pollock harvested in the cold, pristine waters of the Bering Sea."

- "Our oil is Marine Stewardship Council (MSC) certified sustainable and IFOS 5-Star rated, guaranteeing purity, freshness, traceability, and eco-responsibility at every step of the supply chain."

- "Clean, potent, and traceable"

- "Our omega-3 fish oil is sourced exclusively from MSC verified Wild Alaska Pollock harvested from the pristine waters of the Alaskan Bering Sea – one of the world's most productive ecosystems for marine life."

z.   **Sports Research, Alaskan Omega-3 Fish Oil Supplements, Triple Strength:**

- "Certified Sustainable Seafood MSC"

- "Wild Alaska Pollock"

- "MSC Certified Sustainable"

- "Wild-Caught"

- "Sustainably Sourced and Certified by MSC"

- "Sustainably Sourced"

- "We source exclusively from wild-caught Alaska Pollock harvested in the cold, pristine waters of the Bering Sea."

- "Our oil is Marine Stewardship Council (MSC) certified sustainable and IFOS 5-Star rated, guaranteeing purity, freshness, traceability, and eco-responsibility at every step of the supply chain."

- "Clean, potent, and traceable"

- "Our omega-3 fish oil is sourced exclusively from MSC verified Wild Alaska Pollock harvested from the pristine waters of the Alaskan Bering Sea – one of the world's most productive ecosystems for marine life."

CLASS ACTION COMPLAINT – 50
011398-11/5086982 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

**aa. Sports Research, Alaskan Omega-3 Salmon Oil, Wild Caught Sockeye:**

- "Certified Sustainable Seafood MSC"

- "Wild Caught"

- "Wild Alaskan Sockeye Salmon"

- "Sustainable"

- "Sustainably Sourced and Certified by MSC"

- "Sourced exclusively from wild-caught Alaskan Sockeye Salmon"

- "[O]ur premium fish oil is MSC certified—ensuring it comes from a sustainably managed fishery that meets the Marine Stewardship Council's strict environmental standards."

- "From ocean to softgel, it's traceable, ethical, and fully transparent."

- "Certified ingredients"

- "We're committed to high-quality and transparent labeling."

- "just naturally sourced omega-3s from a trusted marine origin."

- "Sustainably sourced, the right way"

- "Our Salmon Oil proudly claims the MSC label, which signifies that our fish oil has been independently assessed and meets high sustainability guidelines that align with ecological fishing standards."

96.    In addition to the affirmative Misrepresentations, Amazon fails to disclose—on the Greenwashed Seafood Products' point-of-sale webpages or anywhere else at the point of sale—material facts necessary to make its Sustainability Claims not misleading (collectively, the "Omissions"). As part of its greenwashing scheme, Amazon does not disclose at the point of sale, among other things:

a.    the specific country of origin and source fishery for any of the Greenwashed Seafood Products, leaving reasonable consumers unable to evaluate the sourcing or sustainability of the seafood they purchase;

b.    the specific catch method for most of the Greenwashed Seafood Products, leaving reasonable consumers unable to evaluate those products sourcing or sustainability;

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

c.      that Amazon does not independently verify, and lacks a reasonable basis to substantiate, each sourcing, traceability, and sustainability attribute it represents about the Greenwashed Seafood Products;

d.      that real-world traceability is limited because 72 to 76% of the world's industrial fishing vessels are not publicly tracked and vessels operating near IUU-fishing hotspots frequently disable their transponders to obscure where and how they fish;[41]

e.      that catch is frequently moved and consolidated at sea through transshipment onto refrigerated cargo vessels, a practice that further obscures the origin of seafood and can be used to launder illegally caught fish into the supply chain;[42]

f.      that between one in five and one in three wild-caught seafood imports into the United States is harvested using illegal, unreported, and unregulated (IUU) fishing methods and is therefore neither responsibly nor sustainably sourced;[43]

g.      that nearly all seafood imports into the United States are not inspected by any government agency for fraud such as species substitution;[44]

h.      that the federal Seafood Import Monitoring Program ("SIMP") requires catch documentation and traceability for only 13 species and species groups—representing roughly 40% of U.S. seafood imports—so nearly 60% of imported seafood enters the United States without any such screening, and even for covered species SIMP's traceability

[41] Paolo et al., *supra* n.1, at 85 (finding that "72–76% of the world's industrial fishing vessels are not publicly tracked"); Welch, *supra* n.9, at 1 (documenting more than 55,000 suspected intentional AIS-disabling events concentrated near exclusive economic zone boundaries in regions of IUU concern).

[42] *See* Welch, *supra* n.9, at 1 (identifying transshipment as a driver of at-sea AIS disabling and a means of obscuring vessel activity); Jack Cheney, *An Overview of Tuna and its Sustainability in 2025*, Sustainable Fisheries UW (Univ. of Wash. Aug. 1, 2025), https://sustainablefisheries-uw.org/tuna-sustainability-2025/ (describing at-sea transshipment and noting it "can further jeopardize fishing regulations" and "is still very common, especially in canned tuna supply chains").

[43] Aylesworth, *supra* n.2, at 6 ("[A]n estimated 20 to 32 percent of all wild-caught seafood imported into the United States is fished using illegal or unreported methods."); *see* Pramod, *supra* n.10.

[44] Aylesworth, *supra* n.2, at 10 (Mandatory federal inspection of seafood imports is minimal: Customs and Border Protection has historically inspected only 1.0 to 2.4 percent of seafood imports for customs and paperwork compliance, and the Food and Drug Administration roughly 2 percent for food safety. Although NOAA reports inspecting roughly 30 percent of seafood imports through its Seafood Inspection Program, that program is a voluntary, self-selecting, fee-for-service inspection that companies pay to enroll in; it is not a mandatory government fraud-enforcement screen and is "unlikely to find IUU-fished products."); Warner et al., *supra* n.3, at 4 (noting that "less than 1 percent" of seafood is "inspected by the government specifically for fraud" such as species substitution).

CLASS ACTION COMPLAINT – 52
011398-11/5086982 V1

requirements end at the U.S. border, allowing the laundering of illegally sourced seafood to go undetected within the domestic supply chain;[45]

i.     that some seafood products in the United States have been shown through independent DNA testing to contain fish other than what is on the label;

j.     that a "dolphin safe" label does not mean that the tuna is environmentally or ecologically sustainable, or that its sourcing, the harm caused by the fishing methods used, or the bycatch of non-dolphin species are sustainable;[46]

k.     that the MSC Chain of Custody standard establishes only that each company in the supply chain has been audited and is not the same as traceability, the MSC operates a pay-for-play certification model in which fisheries pay the auditors responsible for assessing them, creating a conflict of interest, and that the MSC has relaxed its sustainability standards over time;[47]

l.     the MSC certifies as sustainable fisheries that do not routinely practice sustainable fishing methods, including fisheries that catch protected and endangered species, damage ecosystems, target overfished species, and overharvest fish;[48]

m.     MSC-certified fisheries bring in large amounts of bycatch of non-target species, including dolphins, whales, sea turtles, and seabirds, which are often injured or killed;[49]

---

[45] Porterfield et al., *supra* n.4, at 5, 19 (Feb. 2022) (SIMP "only covers 13 species and species groups representing about 40% of U.S. seafood imports," "[n]early 60% of the seafood products landing on Americans' plates are not covered by SIMP," and "traceability requirements only apply from the fishing vessel or farm to the first point of entry into U.S. commerce—the U.S. border").

[46] *See Sustainable Tuna Buying Guide*, Monterey Bay Aquarium, https://www.montereybayaquarium.org/animals-the-ocean/how-to-choose-sustainable-seafood/sustainable-seafood-guides/tuna-buying-guide (last accessed July 30, 2026) ("Dolphin-safe does not mean the tuna is environmentally sustainable . . . .").

[47] *See MSC: The Blue Tick Deceiving Consumers*, *supra* n.11 (describing conflicts of interest arising because fisheries pay the certifiers that audit them); *see also Senate Inquiry into Greenwashing — MSC Submission*, *supra* n.11. For example, in 2020 the MSC certified an Atlantic bluefin tuna fishery over the formal objection of the World Wildlife Fund, which noted the stock had not yet reached sustainable levels.

[48] *See id.* (documenting that MSC-certified fisheries engage in substantial bycatch, destructive gear use, and other practices inconsistent with the certification's sustainability representations).

[49] *See Understanding Bycatch*, NOAA Fisheries, https://www.fisheries.noaa.gov/insight/understanding-bycatch (last accessed July 30, 2026); *Bycatch*, World Wildlife Fund, https://www.worldwildlife.org/threats/bycatch

CLASS ACTION COMPLAINT – 53
011398-11/5086982 V1

n.      MSC-certified fisheries use dredging and bottom trawling, which the National Academy of Sciences has described as the most destructive form of fishing on seafloor habitats such as corals and sponges, and that some pollock trawls marketed as "midwater" make contact with the seafloor up to 100% of the time;[50] and

o.      more than half of MSC-certified "sustainable tuna" is caught using fish aggregating devices ("FADs") associated with reduced biodiversity, increased bycatch, and ocean pollution, and that a FAD-caught tuna fishery "would be 'Avoid' rated" under the Monterey Bay Aquarium's Seafood Watch program.[51]

97.     Each of the Omissions concerns a fact that is material to reasonable consumers deciding whether, and how much, to pay for seafood marketed as sustainable. Amazon had exclusive or superior knowledge of the Omissions and the means to disclose them at the point of sale, yet failed to do so, rendering the Sustainability Claims misleading.

98.     The Misrepresentations and Omissions misleadingly convey to consumers that the Greenwashed Seafood Products are ecologically sustainable and environmentally friendly and have certain characteristics that they do not actually possess.

99.     Amazon misleadingly causes consumers to believe the Greenwashed Seafood Products it sells are sustainable, due to the material Misrepresentations and Omissions, when in fact the Greenwashed Seafood Products are not sustainable.

100.    Whether the Greenwashed Seafood Products are ecologically sustainable and environmentally friendly is material information to reasonable consumers, including Plaintiffs.

---

(last accessed July 30, 2026) (noting that bycatch causes avoidable deaths and injuries to dolphins, sea turtles, seabirds, and other non-target species).

[50] Jon Warrenchuk et al., *Net Loss: The Costs of Bottom Trawling in the Gulf of Alaska*, Oceana, 5, 9, 20 (Aug. 2022) ("According to the National Academy of Sciences, bottom trawling is the most destructive form of fishing on seafloor habitat like corals and sponges"; "Pollock trawling is regulated as a midwater fishing practice yet some pollock trawls make contact with the seafloor up to 100% of the time"); *see Effects of Trawling and Dredging on Seafloor Habitat*, National Research Council (Nat'l Acad. of Scis. 2002).

[51] Schiller et al., *supra* n.12, at 9 (documenting FAD-related reductions in biodiversity, increased bycatch, and ocean pollution, and that MSC-certified FAD fisheries carried an average of approximately 15 unresolved "open conditions" during their first assessment cycle); Cheney, *supra* n.42 ("today the FAD tuna fishery would be 'Avoid' rated" under the Monterey Bay Aquarium's Seafood Watch program).

CLASS ACTION COMPLAINT – 54
011398-11/5086982 V1

101.    Amazon wrongfully failed to disclose to reasonable consumers material information regarding the true sustainable nature of the Greenwashed Seafood Products.

102.    Due to the point-of-sale webpages, Misrepresentations, and Omissions, reasonable consumers, like Plaintiffs, would not suspect the Greenwashed Seafood Products were not sustainable and did not have the environmentally positive qualities set forth.

103.    Unlike Amazon, reasonable consumers are not able to independently determine the true sustainable nature of the Greenwashed Seafood Products and are generally without the means to conduct their own investigations into the sustainability of the Greenwashed Seafood Products.

104.    The opacity of the global seafood supply chain compounds this information asymmetry. More than 80% of the seafood consumed in the United States is imported,[52] yet less than 1% is inspected by the government for fraud such as species substitution.[53] DNA testing has repeatedly confirmed that seafood is frequently mislabeled, with historically as much as one-third of sampled products mislabeled as a different species.[54] And between one in five and one in three wild-caught seafood imports into the United States is harvested using illegal, unreported, and unregulated (IUU) fishing methods, which are neither responsibly nor sustainably sourced. These conditions leave reasonable consumers—and even retailers—without a practical means to independently verify the sustainability of the seafood they purchase, reinforcing their reliance on Amazon's representations.[55]

---

[52] Sullivan & Valentine, *supra* n.2, at 3 ("In the United States, up to 85% of seafood is imported."); Aylesworth, *supra* n.2, at 6 ("Over eighty percent of all seafood consumed in the United States is imported.").

[53] Aylesworth, *supra* n.2, at 10 (Mandatory federal inspection of seafood imports is minimal: Customs and Border Protection has historically inspected only 1.0 to 2.4 percent of seafood imports for customs and paperwork compliance, and the Food and Drug Administration roughly 2 percent for food safety. Although NOAA reports inspecting roughly 30 percent of seafood imports through its Seafood Inspection Program, that program is a voluntary, self-selecting, fee-for-service inspection that companies pay to enroll in; it is not a mandatory government fraud-enforcement screen and is "unlikely to find IUU-fished products."); Warner et al., *supra* n.3, at 4 (noting that "less than 1 percent" of seafood is "inspected by the government specifically for fraud" such as species substitution).

[54] Warner et al., *supra* n.4, at 1 (finding that across Oceana's investigations testing more than 1,500 samples, "roughly one-third of samples tested were mislabeled"); *see also* Warner et al., *supra* n.3 (nationwide DNA testing finding one-third of samples mislabeled). Following implementation of the Seafood Import Monitoring Program, Oceana testing of species not covered by the program still found 21% of samples mislabeled. *See* Porterfield et al., *supra* n.4.

[55] Aylesworth, *supra* n.2, at 6 ("[A]n estimated 20 to 32 percent of all wild-caught seafood imported into the United States is fished using illegal or unreported methods."); *see also id.* at 4 ("as much as 32 percent of seafood imports sold in U.S. markets is harvested through IUU fishing practices"); Pramod, *supra* n.10.

CLASS ACTION COMPLAINT – 55
011398-11/5086982 V1

105.    Moreover, whatever information regarding the sustainable nature of the Greenwashed Seafood Products is known, is in the exclusive possession of Amazon and not available to consumers. Amazon chose to not disclose such information to consumers and thus actively concealed the true sustainable nature of the Greenwashed Seafood Products.

106.    The limited and scattered public reporting concerning MSC certification and industrial fishing practices is not reasonably discoverable by ordinary consumers at the point of sale. Reasonable consumers must and do rely on Amazon to honestly report on the sustainable nature of the Greenwashed Seafood Products it sells on its platform.

107.    Based on Amazon's failure to disclose the Misrepresentations and Omissions in its Sustainability Claims about the Greenwashed Seafood Products on the point-of-sale webpages, no reasonable consumer would expect, suspect, or understand that the true sustainability of the Greenwashed Seafood Products was not as advertised.

108.    In light of Amazon's statements regarding the quality of the Greenwashed Seafood Products, Amazon knew or should have known the true sustainable nature of the Greenwashed Seafood Products was not as advertised.

109.    Amazon's knowledge of the true sustainable nature of the Greenwashed Seafood Products is demonstrated by, among other things: (a) its extensive control over, and monitoring of, the Product Detail Pages and "Required Product Information," as alleged above; (b) its annual Amazon Sustainability Reports and its Climate Pledge Friendly program, which reflect detailed knowledge of seafood sourcing and third-party certifications; (c) its own Environmental Marketing Guidelines and Amazon Green Guides, which recognize that unqualified "sustainable" and "eco-friendly" claims require a high level of substantiation; and (d) publicly available reporting, including the Corporate Accountability Lab's January 30, 2025 report, documenting that MSC-certified fisheries engage in substantial bycatch, destructive gear use, and labor abuses.

110.    Amazon had a duty to ensure the Greenwashed Seafood Products it sold were not deceptively, misleadingly, unfairly, and falsely marketed and that all material information was properly and fully disclosed.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

111. Amazon acted negligently, recklessly, unfairly, and/or intentionally with its deceptive point-of-sale webpages based on the material Misrepresentations, Omissions, and scheme to greenwash all of the products at issue.

112. The Misrepresentations and Omissions on Amazon's point-of-sale webpages are material and reasonably likely to deceive reasonable consumers, such as Plaintiffs, in their purchasing decisions.

113. The Misrepresentations and Omissions make the Greenwashed Seafood Products' point-of-sale webpages misleading and deceptive based on the true sustainable nature of the Greenwashed Seafood Products. Reasonable consumers, like Plaintiffs, would consider the true sustainable nature of the Greenwashed Seafood Products a material fact when considering which seafood products to purchase.

114. Amazon knew, yet failed to disclose, that the Greenwashed Seafood Products or the ingredients used in the Greenwashed Seafood Products were not sustainably sourced.

115. The Misrepresentations and Omissions were misleading due to Amazon's failure to ensure the Greenwashed Seafood Products sold on its platform were truly sustainable.

116. Amazon knew or should have known that the sustainable nature of Greenwashed Seafood Products was not as advertised and that such information was not disclosed on the point-of-sale webpages.

117. Amazon knew or should have known that reasonable consumers, including Plaintiffs, expected Amazon to ensure the Greenwashed Seafood Products sold on its platform were sustainable, consistent with the statements and communications contained on the point-of-sale webpages.

118. Further, Amazon knew or should have known that reasonable consumers paid higher prices, or paid any price at all, for the Greenwashed Seafood Products and expected the Sustainability Claims about the Greenwashed Seafood Products sold on Amazon's platform were true and not misleading.

CLASS ACTION COMPLAINT – 57
011398-11/5086982 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

119.    The Misrepresentations and Omissions are material and render the Greenwashed Seafood Products' point-of-sale webpages deceptive because without full disclosure, reasonable consumers, such as Plaintiffs, believe the Sustainability Claims about the Greenwashed Seafood Products are true and not misleading.

120.    The Misrepresentations and Omissions on Amazon's point-of-sale webpages were intended to and did, in fact, cause consumers like Plaintiffs and the other Class Members to purchase products they would not have if the true quality and ingredients were disclosed or for which they would not have paid a premium price, or any price at all.

121.    Amazon charged, and Plaintiffs and the Class Members paid, a premium price for the Greenwashed Seafood Products, despite the availability of comparable, lesser-priced seafood products sold by other retailers without the misleading MSC certification:

| The Greenwashed Seafood Products | Price/oz. |
|---|---|
| Bumble Bee, Chunk Light Tuna in Water (5 ounce can) | $0.19 |
| Bumble Bee, Wild Caught Pink Salmon with Skin & Bones (14.75-ounce can) | $0.30 |
| Bumble Bee, Pink Salmon, Wild Premium (14.75-ounce can, pack of 3) | $0.30 |
| Amazon Fresh Brand, Wild Caught Pink Salmon Skinless Fillet Portions (frozen) | $0.37 |
| Amazon Fresh Brand, Wild Caught Flounder Boneless Skinless Fillet Portions (Frozen) | $0.40 |
| Bumble Bee, Applewood Smoke Seasoned Tuna (Pouch) | $0.40 |
| Bumble Bee, Spicy Thai Chili Seasoned Tuna (2.5-ounce pouch, pack of 12) | $0.40 |
| 365 by Whole Foods Market, Beer Battered Pollock (Frozen) | $0.41 |
| Bumble Bee, Chunk Light Tuna in Water (2.5-ounce pouch) | $0.46 |
| Bumble Bee, Jalapeno Seasoned Tuna (2.5-ounce pouch, pack of 12) | $0.46 |
| 365 by Whole Foods Market, Unsalted Skipjack Tuna in Water (5-ounce can) | $0.50 |
| Bumble Bee, Prime Lemon & Pepper Yellowfin Tuna in Extra Virgin Olive Oil (5 ounce can) | $0.50 |
| Chicken of the Sea, Alaskan Pink Salmon in Spring Water (2.5-ounce packet) | $0.52 |
| 365 by Whole Foods Market, Albacore Wild Tuna, no salt added (5-ounce can) | $0.53 |
| Chicken of the Sea, Alaskan Pink Canned Salmon in Water (5-ounce can) | $0.53 |
| Amazon Grocery, Wild Caught Yellowfin Tuna (Fresh) | $0.62 |
| 365 by Whole Foods Market, Wild Fancy Pink Salmon (6-ounce can) | $0.72 |
| Amazon Grocery, Wild Caught Pacific Cod (Frozen) | $0.86 |

CLASS ACTION COMPLAINT – 58
011398-11/5086982 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

| Starkist, Wild Pink Salmon, Boneless, Skinless (2.6-ounce pouch) | $0.94 |
|---|---|
| Rio Mare, Premium Yellowfin Tuna with a drizzle of olive oil (3.2-ounce can) | $1.01 |
| Amazon Grocery, Wild Caught Alaskan Sockeye Salmon (Frozen) | $1.08 |
| 365 by Whole Foods Market, Sockeye Salmon Fillet (Frozen) | $1.09 |
| Genuine American Tuna, Premium Wild Pacific Albacore Tuna Fillets, no salt (5 ounce can) | $1.73 |
| Fishwife, Albacore Tuna in Spicy Olive Oil (3.2-ounce can) | $2.33 |
| Fishwife, Albacore Tuna in Olive Oil (3.2-ounce can) | $2.61 |
| **Competitor Products** | **Price/oz.** |
| StarKist, Chunk Light Tuna in Water (5-ounce can) | $0.15 |
| Gorton's, Crunchy Breaded Fish Fillets (Frozen) | $0.26 |
| Van de Kamp's, Beer Battered Whole Fish Fillets (Frozen) | $0.29 |
| StarKist, Chunk Light Tuna in Water (2.6-ounce pouch) | $0.34 |
| StarKist, E.V.O.O. Solid Yellowfin Tuna (4.5-ounce can) | $0.40 |
| Trident Seafoods, Pubhouse Battered Alaska Cod (Frozen) | $0.50 |
| Marine Harvest, Tilapia Fillets (Fresh) | $0.50 |
| MOWI, Atlantic Salmon Side (Fresh) | $0.59 |
| Circle Seafoods, Pink Salmon Portions (Frozen) | $0.75 |

| The Greenwashed Seafood Products | Price/count |
|---|---|
| 365 by Whole Foods Market, Wild-Caught Fish Oil Supplements | $0.14/each |
| Sports Research, Alaskan Omega-3 Salmon Oil Supplements, Wild Caught Sockeye | $0.17/each |
| Sports Research, Alaskan Omega-3 Fish Oil Supplements, Triple Strength | $0.57/each |
| **Competitor Products** | **Price/count** |
| Nature's Bounty, Fish Oil Omega-3 Supplements | $0.06/each |
| Nature Made, Fish Oil Omega-3 Supplements | $0.08/each |
| MAV Nutrition, Omega-3 Fish Oil Supplements, Triple Strength | $0.29/each |

122.    As a result of Amazon's scheme and deceptive, unfair, and misleading Misrepresentations, and Omissions, Amazon was able to generate substantial sales, which allowed it to reap enormous profits from Plaintiffs and similarly situated consumers who paid the purchase price or premium for the Greenwashed Seafood Products that were not as advertised.

123.    Plaintiffs and other reasonable consumers would not have purchased the Greenwashed Seafood Products or would have paid less for them but for the Misrepresentations, and Omissions, and other deceptive conduct by Amazon.

CLASS ACTION COMPLAINT – 59
011398-11/5086982 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

**F.    The FTC's Green Guides and Amazon's Own Advertising Guidelines Instruct Advertisers on How to Avoid Deceptive Environmental-Themed Marketing Claims**

**1.    The FTC monitors environmentally themed marketing and publishes guidelines to help develop level the playing field when it comes to environmental advertising.**

124.    The Federal Trade Commission ("FTC") continuously monitors environmentally-themed marketing and publishes the "Guides for the Use of Environmental Marketing Claims"—or more colloquially known as the "Green Guides." The FTC Green Guides address environmental claims by clarifying (1) general principles that apply to all environmental marketing claims; (2) how consumers are likely to interpret particular claims and how marketers can substantiate these claims; and (3) how marketers can qualify their claims to avoid deceiving consumers.

125.    The Green Guides are designed to help marketers avoid making environmental marketing claims that are unfair or deceptive under Section 5 of the FTC Act, 15 U.S.C. § 45.[56] Section 5 of the FTC Act prohibits "unfair or deceptive acts and practices in or affecting commerce[.]" A representation, omission, or practice is deceptive if it is likely to mislead consumers acting reasonably under the circumstances and is material to consumers' decisions.[57] According to the FTC, "marketers must ensure that all reasonable interpretations of their claims are truthful, not misleading, and supported by a reasonable basis before they make the claims." The Green Guides also make clear that "a firm's failure to possess and rely upon a reasonable basis for objective claims constitutes an unfair and deceptive act or practice in violation of Section 5 of the Federal Trade Commission Act."[58]

126.    Importantly, the Green Guides play a large role in state consumer protection law. At least twelve states, including Washington, have laws that directly incorporate the standards set forth in the Green Guides as the legal standard for lawfully making certain environmentally

---

[56] *Green Guides*, 16 C.F.R. part 260, FTC, available at https://www.ftc.gov/news-events/topics/truth-advertising/green-guides.

[57] *See* "FTC Policy Statement on Deception," 103 F.T.C. 174 (1983), available at https://www.ftc.gov/system/files/documents/public_statements/410531/831014deceptionstmt.pdf.

[58] "FTC Policy Statement Regarding Advertising Substantiation," 104 F.T.C. 839 (1984), available at https://www.ftc.gov/legal-library/browse/ftc-policy-statement-regarding-advertising-substantiation (cited by 16 C.F.R. § 260.2).

CLASS ACTION COMPLAINT – 60
011398-11/5086982 V1

marketing claims.[59] Another twenty-seven states and territories have laws providing that the FTC's interpretation in the Green Guides shall serve as persuasive authority for courts when construing a deceptive or misleading advertising within a state's consumer protection law. The Green Guides have also been used as evidence in court proceedings involving false advertising litigation.

127.    The FTC Green Guides expressly describe a marketer's responsibilities when making environmental claims. Some of these include:

> **§ 260.2 Interpretation and substantiation of environmental marketing claims.** A representation, omission, or practice is deceptive if it is likely to mislead consumers acting reasonably under the circumstances and is material to consumers' decisions. To determine if an advertisement is deceptive, marketers must identify all express *and implied* claims that the advertisement reasonably conveys. Marketers must ensure that all reasonable interpretations of their claims are truthful, not misleading, and supported by a reasonable basis *before* they make the claims. In the context of environmental marketing claims, a reasonable basis often requires competent and reliable scientific evidence [created] in an objective manner by qualified persons. (emphasis added) (citation omitted) . . . .

> **§ 260.3 (a) Qualifications & disclosures.** To prevent deceptive claims, qualifications and disclosures should be clear, prominent, and understandable. . . .

> **§ 260.3 (c) Overstatement of environmental attribute.** An environmental marketing claim should not overstate, directly or by implication, an environmental attribute or benefit. Marketers should not state or imply environmental benefits if the benefits are negligible. . . .

> **§ 260.4 General environmental benefit claims.** (a) It is deceptive to misrepresent, directly or by implication, that a product, package or service offers a general environmental benefit. (b) Unqualified general environmental benefit claims are difficult to interpret and likely convey a wide range of meanings. In many cases, such claims likely convey that the product, package, or service has specific and far-reaching environmental benefits that may convey that the item or service has no negative environmental impact. Because it is highly unlikely that marketers can substantiate all reasonable interpretations of these claims, markets should not make unqualified general environmental benefit claims. . . .

---

[59] Comments to FTC re Green Guides from the states of California, Connecticut, Delaware, Illinois, Maryland, Michigan, Minnesota, New Jersey, New Mexico, New York, Oregon, Rhode Island and Wisconsin (Apr. 24, 2023), available at https://oag.ca.gov/system/files/attachments/press-docs/Comments%20to%20FTC%20re%20Green%20Guides%204.24.23.pdf.

**§ 260.6 Certifications and seals of approval**: (a) It is deceptive to misrepresent, directly or by implication, that a product, package has been endorsed or certified by an independent third party. (b) A marketer's use of the name, logo, or seal of approval of a third party certifier or organization may be an endorsement, which should meet the criteria of the FTC's Endorsement Guides . . . (c) Third-party certification does not eliminate a marketers' obligation to ensure that it has substantiation for all claims reasonably communicated by the certification. (d) A marketer's use of an environmental certification or seal of approval likely conveys that the product offers a general environmental benefit . . . . Because it is highly unlikely that marketers can substantiate general environmental benefit claims, marketers should not use environmental certifications or seals that do not convey the basis for the certification. (e) . . . To avoid deception, marketers should use clear and prominent qualifying language that clearly conveys that the certification or seal refers only specific and limited benefits.

128. The Green Guides also discuss the term "sustainability." Although the Green Guides do not define sustainability per se, this "does not mean unscrupulous marketers are free to deceive consumers."[60] Indeed, "marketers still are responsible for substantiating consumers' reasonable understanding of these claims."[61] Further "if in context reasonable consumers perceive a sustainable claim as a general environmental benefit claim, the marketer must be able to substantiate that claim and all attendant reasonably implied claims."[62]

### 2. The Amazon Green Guides reflect many of the same principles included in the FTC Green Guides.

129. Amazon acknowledges the importance of providing clear and accurate information to consumers. It maintains a set of advertising guidelines and requirements to help its vendors design and post appropriate advertising for their products.

130. Amazon also prohibits misleading claims, stating that,

Claims are statements, either explicit or implied, about a product's feature, performance or benefits. Amazon is committed to maintaining customer trust by ensuring that product listings are

---

[60] *Statement of Basis and Purpose*, FTC The Green Guides, at 258, available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-issues-revised-green-guides/greenguidesstatement.pdf.

[61] *Id.*

[62] *Id.*; *see also Sends Warning Letters to Companies Regarding Diamond Ad Disclosures*, FTC (Apr. 2, 2019), available at https://www.ftc.gov/news-events/news/press-releases/2019/04/ftc-sends-warning-letters-companies-regarding-diamond-ad-disclosures.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

accurate, transparent, and compliant with applicable laws and regulations. Amazon requires that all product listings comply with regulatory standards that prohibit deceptive advertising, and international consumer protection laws that require claims to be truthful and verifiable. These guidelines aim to ensure customers can make informed purchasing decisions with confidence, based on substantiated product information on Amazon. This policy applies to claims on all product detail pages, including images, descriptions, packaging and marketing materials, across all categories.

The Federal Trade Commission protects consumers from unfair or deceptive advertising and marketing practices that raise health and safety concerns. Section 5 of the Federal Trade Commission Act prohibits unfair or deceptive acts or practices in or affecting commerce.[63]

131. Amazon defines a misleading claim as one that "falsely advertises, or uses language that is not directly truthful, such as unsubstantiated representations about a product's features. Misleading claims are not necessarily false in their literal wording, but they could create a false impression or mislead a consumer. . . . Amazon policy prohibits the sale of products that are misleading about the qualities or characteristics of the product."[64]

132. Amazon's claims guidelines instruct sellers to support claims about composition, ingredients, or origin with verifiable evidence and documentation and to avoid deceptive or ambiguous marketing such that a product's description or marketing "must not create a false or misleading impression."[65]

133. Amazon's policy also specifically mentions environmental claims, defined as "statements made about the environmental impact or benefits of a product," which includes claims such as "eco-friendly" or "sustainable."[66] It further states that "[e]nvironmental claims about the qualities or characteristics of a product must be truthful and not misleading, and they should be supported by evidence[]" and directed vendors to the Federal Trade Commission's Green

---

[63] *Misleading and prohibited claims*, Amazon Seller Central, https://sellercentral.amazon.com/help/hub/reference/external/G202024200?locale=en-US.

[64] *Id.*

[65] *Id.*

[66] *Id.*

CLASS ACTION COMPLAINT – 63
011398-11/5086982 V1

Guides for "general principles and specific guidance on how to substantiate environmental claims" and California's Environmental Marketing Claims Act for specific claims requirements.[67]

134.    Amazon's previous set of guidelines also stressed the importance of compliance with applicable laws, regulations, and best practices (such as the FTC Green Guides). Known as the "Amazon Ads Guidelines and Acceptance Policies for Restricted Content, Products, and Services" Amazon vendors are required to comply with these guidelines when advertising their products (either at point-of-sale or elsewhere on Amazon's website). Amazon explains that it created these guidelines after considering "industry best practices, local laws and regulations, [and] product features."[68]

135.    Amazon also has Environmental Marketing Guidelines for its vendors that reinforce the prohibition against making misleading environmental claims about products, noting

> [I]t is also important to provide buyers with information about those products that is *accurate and trustworthy*, and that *is not misleading about the qualities or characteristics of a product that make it environmentally friendly or "green."* To sell products that are marketed with environmental claims on Amazon.com, you must ensure that the marketing claims you make on your product packaging and on your product detail page meet not only all federal laws such as the FTC's *Guides for the Use of Environmental Marketing Claims* (known as the "Green Guides"), but also all applicable state and local laws that regulate environmental claims.[69]

136.    Amazon highlighted portions from the FTC Green Guides, including that its vendors:

    a.    "Avoid broad, general claims regarding a product's environmental benefits or qualities (ex., avoid 'eco-friendly' or 'environmentally friendly' or 'green')";

---

[67] *Id.*

[68] *7.0 Restricted Content, Products, and Services*, Amazon, https://web.archive.org/web/20250122214043/https://advertising.amazon.com/resources/ad-policy/creative-acceptance/restricted-content-products-services?ref_=a20m_us_spcs_cpf_spcs_cap7#requiredsubstantiation (captured Jan. 22, 2025).

[69] *Environmental marketing guidelines*, Amazon Seller Central, https://sellercentral.amazon.com/help/hub/reference/external/201893650?locale=en-US (last accessed July 30, 2026) (emphasis added).

CLASS ACTION COMPLAINT – 64
011398-11/5086982 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

b.    "All claims about a product's environmental benefits or qualities should be specific, and all qualifications (or limitations) to environmental claims must be specific, clear and prominently displayed (ex., 'product is made from 20% recycled materials')"; and

c.    "Narrowly tailor environmental claims so as not to overstate the environmental benefits or qualities."[70]

137.    Consistent with and highlighted from the FTC Green Guides, Amazon specifically instructs its vendors to "Carefully consider certifications and seals and include the specific basis or environmental benefit for the certification whenever it is used. For questions regarding certifications, see http://ftc.gov/os/2009/10/091005revisedendorsementguides.pdf."[71]

138.    Previously, section 7.20 of the Amazon Ads Guidelines and Acceptance Policies for Restricted Content, Products, and Services addressed "Environmental or 'Green' Claims." (Collectively, with Amazon's Environmental Marketing Guidelines, "Amazon Green Guides").[72] Here, Amazon incorporated many of the same principles included in the FTC Green Guides. For example, Amazon instructs its vendors that "the basis of environmental claims must be objective and substantiated." Amazon also explains that "the bar for substantiation" for unqualified "green" or "eco-friendly" claims is "very high" and that many such claims "are unlikely to be accepted."

139.    Also, according to the Amazon Green Guides, Amazon only permits advertising that includes environmental claims if the claims conform with specific limitations. Amazon notes that the meaning of environmental terms used in ads must be clear to customers. Moreover, vendors are encouraged to avoid "technical or scientific terminology" as it may confuse customers.

---

[70] *Id.*

[71] *Id.*

[72] *7.0 Restricted Content, Products, and Services*, Amazon, https://web.archive.org/web/20241006042324/https://advertising.amazon.com/resources/ad-policy/creative-acceptance/restricted-content-products-services?ref_=a20m_us_spcs_cpf_spcs_cap7#requiredsubstantiation (captured Oct. 6, 2024).

CLASS ACTION COMPLAINT – 65
011398-11/5086982 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

140. Amazon also provides an Environmental Claims Table in the Amazon Green Guides with specific examples to guide vendors on appropriate language. Below are some examples:[73]

**Environmental Claims Table**

| Type of environmental claim | Claim example | Required substantiation |
|---|---|---|
| Constituent claim – relates to the materials from which the product is made | "Made with 100% recycled plastic" | The claim must be substantiated in the ad or on the PDP. |
| Unqualified "green" or "eco-friendly" claims | "Eco-friendly" | Unqualified "green" or "eco-friendly" claims are highly unlikely to be acceptable. In order to be acceptable the ad or PDP must direct customers to an independent study showing the product has caused no environmental harm over its entire life-cycle. |
| Qualified "green" or "eco-friendly" claims (The claim is qualified with an explanation as to the elements or use of the product that make it green or eco-friendly, for example being designed for reuse.) | "Eco-Friendly - Designed to be reused and refilled." | The claim must be substantiated in the ad or on the PDP. |

**Figure 40**: Environmental Claims Table

141. Amazon's own Environmental Claims Table thus instructs vendors to avoid the very practices Amazon employs in marketing the Greenwashed Seafood Products. Where the Table directs that unqualified terms like "sustainable" and "eco-friendly" be avoided or narrowly qualified with the specific, substantiated basis for the claim, Amazon instead displays broad, unqualified sustainability cues—"sustainable," "responsibly sourced," "traceable," and the MSC ecolabel—without disclosing their limits or basis. By its own standard, then, the Sustainability Claims on the Greenwashed Seafood Products' point-of-sale webpages are precisely the kind of environmental claims Amazon represents it does not permit. As part of the greenwashing scheme

---

[73] *Id.*

CLASS ACTION COMPLAINT – 66
011398-11/5086982 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

in this case, Amazon permitted and encouraged environmental claims that violate Amazon's own rules.

**G.      Amazon devotes a massive amount of marketing resources to position itself as a leading environmental steward.**

> **1.      Amazon touts its sustainability goals because it knows that Amazon's commitment to environmental stewardship is important to consumers.**

142.    According to Amazon's current CEO, Andy Jassy, "of course, most people care about [environmental responsibility] … our customers care about this, our partners care about this, [and] our employees care about this."[74] As such, Amazon has adopted and publicly touted a set of sustainability goals or "focus areas" that anchor Amazon's commitment as a leading environmental steward. These five focus areas are: (1) driving climate solutions; (2) reducing waste and packaging; (3) protecting natural resources; (4) advancing human rights; and (5) innovating products and services.[75]

143.    Each year, Amazon publishes the "Amazon Sustainability Report" which also identifies and documents the progress made towards the Company's sustainability goals. Amazon routinely acknowledges in its annual Sustainability Reports that environmentally conscious practices are important to Amazon consumers. For example, according to Kara Hurst, Amazon's Chief Sustainability Officer states: "we regularly hear from our customers, corporate partners, and employees how much they care about sustainability and social responsibility."[76] Amazon also explains in the same report that its "customers want products that align with their values, and this often includes products created with sustainability in mind."[77]

144.    Additionally, Amazon communicates its progress towards its sustainability goals via the Amazon Sustainability website. The website consists of dozens of webpages tracking Amazon's progress in meeting its goal of "protecting natural resources" because Amazon knows

---

[74] *Amazon CEO Andy Jassy shares 5 ways the company is committed to sustainability*, *supra* n.6.

[75] *Sustainability*, Amazon, https://sustainability.aboutamazon.com/ (last accessed July 30, 2026).

[76] *2023 Amazon Sustainability Report*, Amazon (2023), https://sustainability.aboutamazon.com/2023-amazon-sustainability-report.pdf (last accessed July 30, 2026), at 4.

[77] *Id.* at 58.

CLASS ACTION COMPLAINT – 67
011398-11/5086982 V1

that progress against this goal is material to its consumers. In doing so, as depicted below, Amazon promises consumers that it protects natural resources by "striv[ing] to source and use natural resources like water, raw materials, and ingredients in a responsible way across our business and supply chain. We're also investing in conservation and restoration initiatives to support carbon emissions reductions, while protecting the natural world, wildlife habits, and biodiversity":[78]



**Figure 41**: Screenshot of Amazon Sustainability website "Protecting Natural Resources" webpage

**H.    Amazon created the "Climate Pledge" marketing campaign to amplify the message to consumers that Amazon is committed to sustainable practices and products.**

145.    In 2019, Amazon announced, to much fanfare, that it had co-founded "The Climate Pledge" based on "the conviction that global businesses are responsible, accountable, and able to act on the climate crisis."[79] The Climate Pledge brings the world's top companies together to work on reaching net-zero carbon emissions by 2040. Signatories of The Climate Pledge agree to: (1) measure and report their greenhouse gas emissions on a regular basis; (2) implement

---

[78] *Protecting Natural Resources*, Amazon, https://sustainability.aboutamazon.com/natural-resources (last accessed July 30, 2026).

[79] *Climate Solutions*, Amazon, https://sustainability.aboutamazon.com/climate-solutions (last accessed July 30, 2026).

CLASS ACTION COMPLAINT – 68
011398-11/5086982 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

decarbonization strategies in line with the 2015 Paris Climate Agreement; and (3) neutralize any remaining emissions with "additional, quantifiable, real, permanent, and socially beneficial offsets to achieve net-zero annual carbon emissions by 2040."[80] Currently more than 545 companies in 46 countries have become signatories of The Climate Pledge. These companies represent more than $3.5 trillion in revenues and employ over 8 million people.

146.    Since 2019, Amazon has consistently devoted massive advertising resources to position Amazon and The Climate Pledge as synonymous with responsible environmental stewardship. For example, in 2021, Amazon promoted The Climate Pledge by "taking over" more than 42 screens in Times Square for over two hours to display pictures of trees, plants, and the earth.[81] Amazon also hosts an annual Climate Pledge Summit in New York City where thought-leaders discuss potential solutions to environmental problems. The Climate Pledge logo is also ubiquitous across the Amazon platform and printed on Amazon delivery boxes and packaging tape. Amazon also produces a docuseries dedicated to The Climate Pledge spotlights.[82] And most notably, Amazon spent an estimated $300-$400 million[83] to acquire the naming rights to Seattle's newest sports arena and chose to name the arena "The Climate Pledge Arena." According to then-Amazon CEO, Jeff Bezos, "instead of calling it Amazon Arena, we are naming it Climate Pledge Arena as a regular reminder of the urgent need for climate action."[84]

147.    The Climate Pledge describes its "Mission" as "accelerat[ing] responsible climate action in every industry so our planet's diverse communities, natural resources, and shared environments can thrive indefinitely" because "when it comes to protecting our planet, there is no

---

[80] *The Climate Pledge*, https://www.theclimatepledge.com/us/en (last accessed July 30, 2026).

[81] *The Climate Pledge*, Ads of the World, https://www.adsoftheworld.com/campaigns/the-climate-pledge (last accessed July 30, 2026).

[82] *A New Docuseries by The Climate Pledge Spotlights Corporate Climate Solutions*, Amazon News, https://www.aboutamazon.com/news/sustainability/a-new-docuseries-by-the-climate-pledge-spotlights-corporate-climate-solutions (last accessed July 30, 2026).

[83] *Amazon Secures Naming Rights to Seattle's Climate Pledge Arena*, SportsPro, https://www.sportspro.com/sponsorship-marketing/sponsorship/amazon-seattle-nhl-climate-pledge-arena-naming-rights (last accessed July 30, 2026).

[84] *With Climate Pledge Arena, Amazon Puts Promise in Lights*, Associated Press, https://apnews.com/with-climate-pledge-arena-amazon-puts-promise-in-lights-0d11c81cbb26851b2a009208809a86b7 (last accessed July 30, 2026).

CLASS ACTION COMPLAINT – 69
011398-11/5086982 V1

middle ground."[85] Amazon also hosts its own The Climate Pledge webpage as part of its Sustainability website:



**Figure 42**: Screenshots of a post about the Climate Pledge Arean on Jeff Bezos's Instagram page and Amazon's "The Climate Pledge" webpage

148. According to Amazon, "the Climate Pledge Friendly initiative supports Amazon's [The Climate Pledge] commitment to reach the Paris Agreement ten years early and be net zero carbon by 2040" and "make[s] it easier for customers to access product choices that align with our commitment to a more sustainable future."[86]

149. Amazon launched the Climate Pledge Friendly program in January 2020 but continues to tout it even six years later. For example, Amazon hosted a "Climate Pledge Friendly

---

[85] *About the Pledge*, The Climate Pledge, https://www.theclimatepledge.com/us/en/the-pledge/About (last accessed July 30, 2026).

[86] *Amazon Launches Climate Pledge Friendly Program*, Amazon News, https://www.aboutamazon.com/news/sustainability/amazon-launches-climate-pledge-friendly-program (last accessed July 30, 2026).

CLASS ACTION COMPLAINT – 70
011398-11/5086982 V1

Day" on April 15 of last year, which was a 24-hour event that provided discounts and buzz about how the logo program can "help meet customer needs to browse for more sustainable products." According to Nancy Wine, one Amazon director involved with the event, "[o]ur customers are looking for more sustainable items, and this event will make it easier for them to find [Climate Pledge Friendly]-badged products."[87]

## I.    The Greenwashing Claims on Amazon's Point-of-Sale Webpages are Misleading to Consumers

150.    Amazon's point-of-sale webpages for the Greenwashed Seafood Products include Misrepresentations and Omissions regarding the sustainable and environmentally friendly nature of the Greenwashed Seafood Products. Such statements are greenwashing claims because, for example:

a.    The MSC certifies fisheries that do not routinely practice sustainable fishing methods; e.g., fisheries that catch protected and endangered animals, damage ecosystems, target overfished species, overharvest fish, and excessively use plastics and/or gasoline.

b.    The MSC certifies fisheries as sustainable even when they bring in a large amount of bycatch. Bycatch are animals that are caught and discarded that fishers do not want, cannot sell, or cannot keep and can be fish, dolphins, whales, sea turtles, and seabirds and are often injured or die as a result.[88] Bycatch poses an ecological and economic issue, impacts marine ecosystems; contribute to overfishing, slowed rebuilding of fish stocks, and population declines of protected species like dolphins, sea turtles, protected fish, and whales.[89]

c.    The MSC certifies fisheries as sustainable even when they use dredging and bottom trawl fishing, a practice that involves a dredge (e.g., a weighted net) being dragged

---

[87] *Amazon Ads Announces First Climate Pledge Friendly Day*, Amazon Ads (Mar. 20, 2024), https://web.archive.org/web/20260312010510/https://advertising.amazon.com/library/news/amazon-ads-announces-first-climate-pledge-friendly-day (captured Mar. 12, 2026).

[88] *Understanding Bycatch*, *supra* n.49.

[89] *Id.*; *see also Bycatch*, supra n.49 ("Despite new technologies and industry recognition of the issue, bycatch is still a major problem. Not only does it cause avoidable deaths and injuries, but the fishing methods can be harmful to the marine environments where they are employed.").

CLASS ACTION COMPLAINT – 71
011398-11/5086982 V1

along the sea floor. Dredging and bottom trawling can capture and injure sea turtles and marine mammals like pilot whales, common dolphins, and porpoises. [90] According to the National Academy of Sciences, bottom trawling is the most destructive form of fishing on seafloor habitats such as corals and sponges, and "[p]ristine seafloor habitat can be changed forever by one pass of a trawl that obliterates corals, sponges, and other habitats that can take hundreds of years to grow."[91] Although marketed as a "midwater" method, some pollock trawls—used to source Greenwashed Seafood Products at issue here—make contact with the seafloor up to 100% of the time.[92]



**Figure 43**: Screenshot of Dredging
(source: NOAA Fisheries, *Fishing Gear: Dredges*, *supra* n.90)

d.      More than half of MSC certified "sustainable tuna" is caught using "fish aggregating devices" ("FADs") that are associated with reduced biodiversity, increased bycatch, and ocean pollution.[93] FADs are often man-made floating objects designed and

---

[90] *Fishing Gear: Dredges*, NOAA Fisheries, https://www.fisheries.noaa.gov/national/bycatch/fishing-gear-dredges (last accessed July 30, 2026).

[91] Warrenchuk et al., supra n.50, at 4, 14 ("According to the National Academy of Sciences, bottom trawling is the most destructive form of fishing on seafloor habitat like corals and sponges"; "Pristine seafloor habitat can be changed forever by one pass of a trawl that obliterates corals, sponges, and other habitats that can take hundreds of years to grow"); *see Effects of Trawling and Dredging on Seafloor Habitat*, *supra* n.50.

[92] Warrenchuk et al., *supra* n.50, at 20 ("Pollock trawling is regulated as a midwater fishing practice yet some pollock trawls make contact with the seafloor up to 100% of the time.").

[93] *MSC: The Blue Tick Deceiving Consumers*, *supra* n.11.

CLASS ACTION COMPLAINT – 72
011398-11/5086982 V1

strategically placed to attract fish in open water. FADs pose a threat to sea turtles and marine mammals that can become entangled in or injured by old nets, lines, and ropes. [94] A 2025 study published in Science Advances found that lost and abandoned FADs are stranded in 104 maritime jurisdictions, contributing to coastal pollution and damaging sensitive habitats.[95] The study also found that MSC-certified FAD fisheries carried an average of approximately 15 unresolved "open conditions" during their first assessment cycle—with every certified FAD fishery failing to fully satisfy the MSC criterion governing impacts on endangered, threatened, or protected species.[96] Contemporary sustainability rating systems reflect this concern: as a 2025 University of Washington review explained, a FAD-caught tuna fishery "would be 'Avoid' rated" under the Monterey Bay Aquarium's Seafood Watch program.[97]

---

[94] *Fishing gear: Fish aggregating devices*, NOAA Fisheries, Office of Protected Resources (Nov. 30, 2017), https://www.fisheries.noaa.gov/national/bycatch/fishing-gear-fish-aggregating-devices.

[95] Schiller et al., *supra* n.12, at 1 ("Lost dFADs have stranded in 104 maritime jurisdictions, contributing to coastal pollution and damaging sensitive habitats.").

[96] Schiller et al., *supra* n.12, at 9 (finding that "MSC-certified dFAD fisheries had an average of $15.0 \pm 6.5$ open conditions during their first assessment cycle" and that "all dFAD fisheries had open conditions under sustainability Criterion 2, which relates to their impact on endangered, threatened, or protected (ETP) species as well as their impacts on habitat").

[97] Cheney, *supra* n.42 ("today the FAD tuna fishery would be 'Avoid' rated, and the pole and line tuna fishery would be 'Best Choice' rated" under the Monterey Bay Aquarium's Seafood Watch program); *see also Sustainable Tuna Buying Guide*, *supra* n.46 (advising consumers to "[a]void tuna caught with longlines or purse seines using FADs," and explaining that "[r]ed-rated" seafood should be avoided "because environmental risks are high, often due to overfishing, poor management, or harm to marine life and habitats").

CLASS ACTION COMPLAINT – 73
011398-11/5086982 V1

**Figure 44**: Screenshot of Fish Aggregating Device
(source: NOAA Fisheries, *Fishing Gear: Fish Aggregating Devices*, *supra* n.94)

e.      The MSC Chain of Custody standard is not the same as traceability. The MSC has referred to products with its blue fish label as being able to "trace[] back through the supply chain to a sustainable source."[98] However, the Chain of Custody standard is a certificate that shows every company within that supply chain has been audited, not that the sourced fish or seafood is traceable.[99] Independent science underscores how limited real-world traceability is: a 2024 study published in Nature, combining satellite imagery, vessel GPS data, and machine learning, found that 72 to 76% of the world's industrial fishing vessels are not publicly tracked, rendering representations of boat-to-shelf traceability especially misleading.[100]

f.      Fisheries pay the certifiers that conduct the checks that are part of the MSC certification process (i.e., the certification companies and auditors are paid by the people they are monitoring, thus creating a conflict of interest).

---

[98] *Frequently asked questions*, *supra* n.21.

[99] Traceability involves "understanding where raw materials come from, who produces and trades them, and how they move through the supply chain." Cherika Hardjakusumah, *Why traceability and chain of custody are strategic for business*, ISEAL, Feb. 9, 2026, https://isealalliance.org/sustainability-news/why-traceability-and-chain-custody-are-strategic-business.

[100] Paolo et al., *supra* n.1.

CLASS ACTION COMPLAINT – 74
011398-11/5086982 V1

g.      MSC has been relaxing its definition of sustainable, caused by or resulting in MSC certification being driven by market demands and fisheries influencing the process. For example, in 2020, the MSC certified an Atlantic Bluefin tuna fishery, to which the WWF formally objected due to as the Atlantic Bluefin tuna had not yet reached sustainable levels required before fisheries could be endorsed with a sustainability label.

151.    Amazon does not disclose anywhere on its point-of-sale webpages the true sustainable nature of the Greenwashed Seafood Products.

152.    Reasonable consumers would have no reason to doubt the claims as to the sustainability of the Greenwashed Seafood Products sold on Amazon's platform.

## J.      Amazon's misleading practices violate both the FTC Green Guides and Amazon's Green Guides.

153.    The FTC Green Guides help marketers avoid making environmental marketing claims that are unfair or deceptive by "provid[ing] the [FTC's] views on how reasonable consumers likely interpret certain claims." *See* Section IV.F.1, *supra*. Amazon's Green Guides instruct vendors to provide clear and accurate information to consumers and prohibit vendors from making misleading claims. *See* Section IV.F.2, *supra*.

154.    The FTC explains that "a representation, omission, or practice is deceptive if it is likely to mislead consumers acting reasonably under the circumstances and is material to consumers' decisions." According to the FTC, "whether a particular claim is deceptive will depend on the net impression of the advertisement, label, or other promotional material at issue."[101] The Commission also instructs in § 260.2 that "to determine if an advertisement is deceptive, marketers must identify all express and implied claims that the advertisement reasonably conveys. Marketers must ensure that all reasonable interpretations of their claims are truthful, not misleading, and supported by a reasonable basis before they make the claims." Moreover, "in the context of

---

[101] *Guides for the Use of Environmental Marketing Claims*, 16 C.F.R. pt. 260, FTC, https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-issues-revised-green-guides/greenguides.pdf. (last accessed July 30, 2026), at 2.

CLASS ACTION COMPLAINT – 75
011398-11/5086982 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

environmental marketing claims, a reasonable basis often requires competent and reliable scientific evidence."[102]

155.    Amazon's Environmental Marketing Guidelines states,

[I]t is also important to provide buyers with information about those products that is accurate and trustworthy, and that is not misleading about the qualities or characteristics of a product that make it environmentally friendly or "green." To sell products that are marketed with environmental claims on Amazon.com, you must ensure that the marketing claims you make on your product packaging and on your product detail page meet not only all federal laws such as the FTC's Guides for the Use of Environmental Marketing Claims (known as the "Green Guides"), but also all applicable state and local laws that regulate environmental claims.[103]

156.    Further, Amazon highlights portions of the FTC Green Guides, including that vendors should:

a.    "Avoid broad, general claims regarding a product's environmental benefits or qualities (ex., avoid 'eco-friendly' or 'environmentally friendly' or 'green')."

b.    "All claims about a product's environmental benefits or qualities should be specific, and all qualifications (or limitations) to environmental claims must be specific, clear and prominently displayed (ex., 'product is made from 20% recycled materials')."

c.    "Narrowly tailor environmental claims so as not to overstate the environmental benefits or qualities."[104]

157.    Consistent with and highlighted from the FTC Green Guides, Amazon specifically instructs its vendors to "Carefully consider certifications and seals and include the specific basis or environmental benefit for the certification whenever it is used. For questions regarding certifications, see http://ftc.gov/os/2009/10/091005revisedendorsementguides.pdf."[105] Amazon violates this instruction through its own use of the MSC "blue fish" ecolabel. Amazon prominently displays the MSC seal on the Greenwashed Seafood Products' point-of-sale webpages without

---

[102] *Id.* at 3.

[103] *Environmental marketing guidelines*, *supra* n.69 (emphasis added).

[104] *Id.*

[105] *Id.*

CLASS ACTION COMPLAINT – 76
011398-11/5086982 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

conveying the specific basis for the certification or its limits—including that MSC certifies fisheries that engage in substantial bycatch, use bottom trawling, dredging, and fish aggregating devices, and are associated with labor abuses. By presenting the seal as a general assurance of sustainability rather than "the specific basis or environmental benefit for the certification," Amazon uses the certification in exactly the manner its own guidelines prohibit.

158.   In fact, Amazon's conduct related to selling the Greenwashed Seafood Products on its platform clearly violates several portions of the FTC Green Guides as well as its own Green Guides.

159.   First, Amazon's use of the Sustainability Claims in marketing and advertising the Greenwashed Seafood Products violates its own instructions. The Sustainability Claims— including "sustainable," "sustainably sourced," and "responsibly sourced"—are exactly the kind of broad, general environmental claims that Amazon tells its vendors to avoid, and Amazon displays them without the specific, prominent qualifications its guidelines require. Amazon neither defines these terms at the point of sale nor discloses the material limitations described above, leaving reasonable consumers with the misleading net impression that the Greenwashed Seafood Products are environmentally sustainable.

160.   Amazon's advertising and marketing of the Greenwashed Seafood Products violate § 260.2 of the Green Guides, regarding the requirement that "all reasonable interpretations of their claims are truthful [and] not misleading. The Sustainability Claims on Amazon's point-of-sale webpages are misleading and not truthful. For example, Amazon never discloses that the Greenwashed Seafood Products are MSC certified but that the MSC certifies fisheries that do not routinely practice sustainable fishing methods, that bring in large amounts of bycatch, use dredging and bottom trawl fishing, and use fish aggregating devices, in addition to claims that the MSC Chain of Custody standard is not the same as traceability and that the MSC certified products include products that cause ecological damage.

161.   Amazon's advertising and marketing of the Greenwashed Seafood Products also violates § 260.3(a) of the Green Guides, regarding qualifications and disclosures. The Green

CLASS ACTION COMPLAINT – 77
011398-11/5086982 V1

Guides state that "[t]o prevent deceptive claims, qualifications and disclosures should be clear, prominent, and understandable." For example, Amazon never discloses at point-of-sale that the Greenwashed Seafood Products are MSC certified but that the MSC certifies fisheries that do not routinely practice sustainable fishing methods, that bring in large amounts of bycatch, use dredging and bottom trawl fishing, and use fish aggregating devices, in addition to claims that the MSC Chain of Custody standard is not the same as traceability and the MSC certified products include products associated with causing ecological damage. There are no disclosures included on Amazon's point-of-sale webpages that could prevent the deceptive claims about the sustainability of the Greenwashed Seafood Products.

162. Amazon's advertising and marketing of the Greenwashed Seafood Products further violates § 260.3(a) of the Green Guides, regarding qualifications and disclosures. The Green Guides state that "[t]o prevent deceptive claims, qualifications and disclosures should be clear, prominent, and understandable." Amazon does not define the term "certified sustainable," traceable, or "wild caught," even though those terms as used in its point-of-sale webpages is unlikely to be understood by reasonable consumers.

163. Amazon's advertising and marketing of the Greenwashed Seafood Products also violates § 260.3(c) of the Green Guides, regarding overstatement of environmental attributes. The Green Guides state that an environmental marketing claim "should not overstate, directly or by implication, an environmental attribute or benefit," and that marketers "should not state or imply environmental benefits if the benefits are negligible." Amazon's advertising and marketing, with the Sustainability Claims about the Greenwashed Seafood Products, implies that the Greenwashed Seafood Products are sustainably sourced and traceable.

164. Similarly, here, even if it is technically true that some of the Greenwashed Seafood Products are truly sustainably sourced, Amazon's advertising and marketing is misleading because it conveys the false net impression that all of the Sustainability Claims are true.

165. Amazon's marketing of the Greenwashed Seafood Products also violates § 260.4 of the Green Guides, regarding general environmental benefit claims. The Green Guides state that

CLASS ACTION COMPLAINT – 78
011398-11/5086982 V1

it "is deceptive to misrepresent, directly or by implication, that a product, package, or service offers a general environmental benefit." § 260.4(a). They note that "general environmental benefit claims are difficult to interpret and likely convey a wide range of meanings," and "may convey that the item or service has no negative environmental impact." § 260.4(b). Although marketers can make general statements not misleading by qualifying them with specific statements, they "should not imply that any specific benefit is significant if it is, in fact, negligible." § 260.4(c). Amazon violates this guidance by communicating the Sustainability Claims, via the MSC ecolabel, that the Greenwashed Seafood Products are generally environmentally friendly and sustainably sourced. Any environmental benefit associated with the fraction of Greenwashed Seafood Products sustainably sourced is negligible given the sourcing practices of the fisheries certified by MSC.

166.    Again, the Green Guides' example of a marketing practice that violates § 260.4 is remarkably similar to some of Amazon's practices:

> *Example 3:* A marketer's advertisement features a laser printer in a bird's nest balancing on a tree branch, surrounded by dense forest. In green type, the marketer states, "Buy our printer. Make a change." Although the advertisement does not expressly claim that the product has environmental benefits, the featured images, in combination with the text, likely convey that the product has far reaching environmental benefits and may convey that the product has no negative environmental impact. Because it is highly unlikely that a marketer can substantiate these claims, this advertisement is deceptive.

167.    Amazon's point-of-sale materials operate in the same way. Just as the marketer in Example 3 pairs green imagery and the exhortation to "[m]ake a change" to convey far-reaching environmental benefits it cannot substantiate, Amazon surrounds the Greenwashed Seafood Products with a combination of the MSC "blue fish" ecolabel and repeated cues such as "sustainable," "sustainably sourced," "responsibly sourced," "wild caught," "traceable," and "dolphin safe," together with invitations to "learn where and how your seafood was caught" through Amazon's and its vendors' tracing tools. As in Example 3, even where no single word expressly promises that a Product has no negative environmental impact, the images and text in combination convey exactly that net impression—that the Greenwashed Seafood Products are sourced sustainably and without meaningful harm to marine life, marine habitats, or the ocean.

And as in Example 3, that impression is deceptive because it is highly unlikely that Amazon can substantiate it: Amazon does not independently verify the sourcing, traceability, or sustainability attributes it conveys, and, for the reasons set forth above, the Sustainability Claims are at best unsupported and in material respects false. Amazon compounds the deception by omitting the material facts described above—including the Omissions—that a reasonable consumer would need in order to understand the limits of the MSC certification and the other sustainability cues displayed at the point of sale.

## V.   TOLLING OF THE STATUTE OF LIMITATIONS

### A.   Discovery Rule Tolling

168.   Plaintiffs and the Class members had no way of knowing about Amazon's deception with respect to the Sustainability Claims on the Greenwashed Seafood Products' point-of-sale webpages. Specifically, the true sustainable nature of the Products could be determined only through specialized, fishery-level investigation of sourcing, certification conditions, and fishing methods that were not disclosed at the point of sale and that Plaintiffs could not have uncovered through the exercise of reasonable diligence.

169.   Within the period of any applicable statutes of limitation, Plaintiffs and members of the proposed Class could not have discovered through the exercise of reasonable diligence that through Amazon's point-of-sale webpages, it was making misleading, deceptive, and unfair communications as complained of herein and was misrepresenting the true environmentally friendly and sustainable nature of the Greenwashed Seafood Products sold on its platform.

170.   Plaintiffs and the other Class members did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Amazon did not report information within its knowledge to federal and state authorities or consumers; nor would a reasonable and diligent investigation have disclosed this information, which was discovered by Plaintiffs only shortly before this action was filed. Nor in any event would such an investigation on the part of Plaintiffs and other Class members have disclosed that Amazon valued profits over truthful marketing and compliance with law.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

171.    For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims alleged herein.

**B.    Estoppel**

172.    After consistently touting its environmentally friendly and sustainable stewardship, Amazon was under a continuous duty to disclose to Plaintiffs and the other Class members the true character, quality, and sustainable nature of the Greenwashed Seafood Products sold on its platform.

173.    Amazon knowingly, affirmatively, and actively concealed, or suppressed, or recklessly disregarded the true character, quality, and sustainable nature of the Greenwashed Seafood Products sold on its platform.

174.    Based on the foregoing, Amazon is estopped from relying on any statutes of limitations in defense of this action.

## VI.    CLASS ALLEGATIONS

175.    Plaintiffs bring this action on behalf of themselves and as a class action pursuant to the provisions of Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons who purchased a Greenwashed Seafood Product from Defendant in the United States through the time of trial.

176.    Excluded from the Class are Amazon and its officers, directors, subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the district judge or magistrate judge to whom this case is assigned, his/her immediate family members, and his/her judicial officers and their personnel. Plaintiffs reserve the right to revise the Class definition based upon information learned through discovery.

177.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

178.    This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

179.    Numerosity. Federal Rule of Civil Procedure 23(a)(1): The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, e-mail, text messages, social media, Internet postings, and/or published notice.

180.    Commonality and Predominance. Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a.    Whether the Misrepresentations and Omissions were misleading;

b.    Whether the Misrepresentations and Omissions were unfair;

c.    Whether the Misrepresentations and Omissions were material to reasonable consumers;

d.    Whether Amazon had knowledge that the Misrepresentations and Omissions were material, false, deceptive, and misleading;

e.    Whether Amazon owed a duty to disclose;

f.    Whether Amazon knew or should have known the Sustainability Claims about the Greenwashed Seafood Products were misleading, deceptive, and unfair;

g.    Whether Amazon failed to disclose the true sustainable nature of the Greenwashed Seafood Products to consumers;

h.    Whether Amazon violated Washington state law;

i.    Whether Amazon engaged in unfair trade practices;

j.    Whether Amazon engaged in false advertising scheme;

k.    Whether Amazon made fraudulent misrepresentations;

CLASS ACTION COMPLAINT – 82
011398-11/5086982 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

l.      Whether Plaintiffs and the Class Members are entitled to actual, statutory, and punitive damages; and

m.      Whether Plaintiffs and the Class Members are entitled to declaratory and injunctive relief.

181.    Typicality. Federal Rule of Civil Procedure 23(a)(3): Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Amazon's wrongful conduct as described above.

182.    Adequacy. Federal Rule of Civil Procedure 23(a)(4): Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Class they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

183.    Declaratory and Injunctive Relief. Federal Rule of Civil Procedure 23(b)(2): Amazon has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

184.    Superiority. Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Amazon, so it would be impracticable for Class members to individually seek redress for Amazon's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

CLASS ACTION COMPLAINT – 83
011398-11/5086982 V1

## VII.    CHOICE OF LAW

185.    Washington law applies to Plaintiffs' claims by virtue of a choice-of-law provision that is set forth in "Conditions of Use" that appear on Amazon's website:

> By using any Amazon Service, you agree that applicable federal law, and the laws of the state of Washington, without regard to principles of conflict of laws, will govern these Conditions of Use and any dispute of any sort that might arise between you and Amazon.[106]

## VIII.    CLAIMS FOR RELIEF

### COUNT I

**Violations of the Washington Consumer Protection Act (Wash. Rev. Code Ann. § 19.86.010, *et seq*.) Against Defendant on Behalf of the Class**

186.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

187.    Plaintiffs bring this Count on behalf of all Class members.

188.    The Washington Consumer Protection Act ("Washington CPA") broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code Ann. § 19.86.020.

189.    Amazon's acts complained of herein are deceptive and unfair within the meaning of the Washington CPA. Wash. Rev. Code Ann. § 19.86.020.

190.    Amazon committed the acts complained of herein in the course of "trade" or "commerce" within the meaning of the Washington CPA. Wash. Rev. Code Ann. § 19.86.020.

191.    Amazon's deceptive and unfair practices, as alleged herein, are injurious to the public interest as they have the capacity to injure other persons, including the millions of consumers who shop on Amazon.com.

192.    Amazon's deceptive and unfair practices, and scheme, as alleged herein, injured Plaintiffs and the Class in their business or property. Plaintiffs and the Class paid for the Greenwashed Seafood Products that were marketed as sustainable, environmentally friendly, and

---

[106] *Amazon Conditions of Use*, *supra* n.13.

CLASS ACTION COMPLAINT – 84
011398-11/5086982 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

MSC certified when in fact the MSC certifies fisheries that do not routinely practice sustainable fishing methods, that bring in large amounts of bycatch, use dredging and bottom trawl fishing, and use fish aggregating devices, in addition to claims that the MSC Chain of Custody standard is not the same as traceability and the MSC certified products include products associated with causing ecological damage.

193. If not for Amazon's deceptive and unfair conduct, Plaintiffs and the Class would not have purchased the Greenwashed Seafood Products, or would not have purchased the Greenwashed Seafood Products at the prices they paid.

194. Amazon's Misrepresentations and Omissions, and other deceptive conduct described herein were directed at the consumer public at-large as they repeatedly occurred in the course of Amazon's business and were capable of deceiving a substantial portion of the consuming public.

195. Whether the Greenwashed Seafood Products are sustainable and environmentally friendly is material information to reasonable consumers, including Plaintiffs.

196. Amazon wrongfully failed to disclose to reasonable consumers material information regarding the true sustainable nature of the Greenwashed Seafood Products.

197. Due to the point-of-sale webpages, Misrepresentations, and Omissions, reasonable consumers, like Plaintiffs, would not suspect the Greenwashed Seafood Products were not sustainable.

198. Unlike Amazon, reasonable consumers are not able to independently determine the true sustainable nature of the Greenwashed Seafood Products and are generally without the means to conduct their own investigations into the sustainability of the Greenwashed Seafood Products.

199. Moreover, information regarding the sustainable nature of the Greenwashed Seafood Products is in the exclusive possession of Amazon and not available to consumers. Amazon chose to not disclose such information to consumers and thus actively concealed the true sustainable nature of the Greenwashed Seafood Products.

CLASS ACTION COMPLAINT – 85
011398-11/5086982 V1

200. Based on the failure to disclose the true sustainable nature of the Greenwashed Seafood Products on the point-of-sale webpages, no reasonable consumer would expect, suspect, or understand that the true sustainability of the Greenwashed Seafood Products was not as advertised.

201. Amazon intended for Plaintiffs and the Class Members to rely on its Misrepresentations and Omissions, and other deceptive conduct regarding the Greenwashed Seafood Products' quality, ingredients, standards, and sustainability when purchasing the Greenwashed Seafood Products, unaware of the undisclosed material facts.

202. Plaintiffs and the Class Members did in fact rely on the material Misrepresentations, Omissions, and other deceptive conduct and purchased the Greenwashed Seafood Products to their detriment. Reasonable consumers must and do rely on Amazon to honestly report on the sustainable nature of the Greenwashed Seafood Products it sells on its platform.

203. Because of the Misrepresentations, Omissions, and other deceptive conduct, Amazon has also violated sections 260.2, 260.3, and 260.4 of the FTC Green Guides, which have been incorporated into Revised Code of Washington Annotated sections 70A.455.020 and 19.86.920.

204. The Misrepresentations, Omissions, and other deceptive conduct caused Plaintiffs and the Class Members to suffer injury in the form of actual damages when they purchased the Greenwashed Seafood Products that were worth less than the price paid and that they would not have purchased at all had they known the Greenwashed Seafood Products were not sustainable as advertised and marketed on Amazon's point-of-sale webpages.

205. Plaintiffs and the Class Members have been harmed, and that harm will continue unless Amazon is enjoined from further misrepresenting the true quality, ingredients, standards, and sustainability of the Greenwashed Seafood Products.

206. As a direct and proximate result of Amazon's conduct, Plaintiffs and the Class suffered actual damages by: (1) paying a premium price for Greenwashed Seafood Products they reasonably believed were sustainable and environmentally friendly; and/or (2) purchasing

CLASS ACTION COMPLAINT – 86
011398-11/5086982 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

Greenwashed Seafood Products they would not have purchased without Amazon's Misrepresentations and Omissions..

207. Amazon is liable to Plaintiffs for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages, as well as any other remedies the Court may deem appropriate under Washington Revised Code Annotated section 19.86.090.

## COUNT II

### Fraudulent Misrepresentation and Concealment
### (Based on Washington Law)

208. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

209. Plaintiffs bring this Count on behalf of all Class members.

210. The Misrepresentations and Omissions on Amazon's point-of-sale webpages that communicate the Greenwashed Seafood Products are sustainable and environmentally friendly are material and reasonably likely to deceive reasonable consumers, such as Plaintiffs, in their purchasing decisions.

211. Whether the Greenwashed Seafood Products are sustainable and environmentally friendly is material information to reasonable consumers, including Plaintiffs.

212. The Sustainability Claims communicated on the point-of-sale webpages are misleading and deceptive because the true sustainable nature of the Greenwashed Seafood Products are not as marketed and advertised.

213. Amazon knew or should have known that reasonable consumers, including Plaintiffs, expected Amazon to ensure the Greenwashed Seafood Products sold on its platform were sustainable, consistent with the statements and communications contained on the point-of-sale webpages.

214. The Misrepresentations and Omissions on Amazon's point-of-sale webpages were intended to and did, in fact, cause consumers like Plaintiffs and the other Class Members to

CLASS ACTION COMPLAINT – 87
011398-11/5086982 V1

HAGENS BERMAN

1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

purchase products they would not have if the true quality and ingredients were disclosed or for which they would not have paid a premium price, or any price at all.

215. Amazon is in a superior position to know the true sustainable nature of the Greenwashed Seafood Products.

216. Amazon knew reasonable consumers, including Plaintiffs, are not able to independently determine the true sustainable nature of the Greenwashed Seafood Products and are generally without the means to conduct their own investigations into sustainability of the Greenwashed Seafood Products.

217. Amazon intended for Plaintiffs and the Class Members to rely on the Sustainability Claims because Amazon, as the host of the platform where the Greenwashed Seafood Products are sold, is in a special position of trust upon which consumers rely. Amazon knew or should have known the Sustainability Claims would induce Plaintiffs and the Class Members to purchase the Greenwashed Seafood Products.

218. Plaintiffs and the Class Members reasonably relied on the Sustainability Claims because Amazon knows its customers trust the communications about the Greenwashed Seafood Products on the point-of-sale webpages and expect the Greenwashed Seafood Products to be sustainable and environmentally friendly, as advertised and marketed.

219. Amazon knows that consumers seek out and wish to purchase seafood products that are sustainable and environmentally friendly and that these consumers will pay for seafood products they believe possess these qualities.

220. As a direct and proximate result of Amazon's conduct, Plaintiffs and the Class suffered actual damages by: (1) paying a premium price for Greenwashed Seafood Products they reasonably believed were sustainable and environmentally friendly; and/or (2) purchasing Greenwashed Seafood Products they would not have purchased without Amazon's Misrepresentations and Omissions.

221. Plaintiffs and the Class Members seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

CLASS ACTION COMPLAINT – 88
011398-11/5086982 V1

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of members of the Class, respectfully request that the Court enter judgment in their favor and against Amazon, as follows:

A.      Certification of the proposed Class, including appointment of Plaintiffs' counsel as Class Counsel;

B.      An order temporarily and permanently enjoining Amazon from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged herein;

C.      Costs, restitution, damages, including punitive damages, and disgorgement in an amount to be determined at trial;

D.      An order requiring Amazon to pay both pre- and post-judgment interest on any amounts awarded;

E.      An award of costs and attorneys' fees; and

F.      Such other or further relief as may be appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial for all claims so triable.

DATED: July 31, 2026                          Respectfully submitted,

                                              **HAGENS BERMAN SOBOL SHAPIRO LLP**

                                              By: */s/ Steve W. Berman*
                                                    Steve W. Berman (WSBA No. 48827)
                                              By: */s/ Shelby Smith*
                                                    Shelby Smith (WSBA No. 31377)
                                              1301 Second Avenue, Suite 2000
                                              Seattle, WA 98101
                                              Telephone: (206) 623-7292
                                              Email: steve@hbsslaw.com
                                              Email: shelby@hbsslaw.com

                                              Roxana Moussavian*
                                              **HAGENS BERMAN SOBOL SHAPIRO LLP**
                                              715 Hearst Avenue, Suite 300
                                              Berkeley, CA 94710
                                              Telephone: (510) 725-3000
                                              Email: roxana.moussavian@hbsslaw.com

CLASS ACTION COMPLAINT – 89
011398-11/5086982 V1

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

Catherine A. Peterson*
Rebecca A. Peterson*
Krista K. Freier*
**HECHT PARTNERS LLP**
1650 West 82nd Street, Suite 880
Bloomington, MN 55431
Telephone: (612) 778-9530
Email: cpeterson@hechtpartners.com
Email: rpeterson@hectpartners.com
Email: kfreier@hechtpartners.com

*Pro hac vice application to be filed

*Attorneys for Plaintiffs*

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX