THE HONORABLE KYMBERLY K. EVANSON

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| MADELEINE ROGOW et al., Plaintiffs, v. AMAZON.COM, INC., Defendant. | Case No. 2:26-cv-02702-KKE<br>**AMAZON.COM, INC.'S MOTION TO DISMISS**<br>NOTE ON MOTION CALENDAR: JANUARY 8, 2027<br>ORAL ARGUMENT REQUESTED |

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1
II. BACKGROUND ..... 3
  A. Plaintiffs Allege that They Purchased Seafood After Viewing Amazon Product Webpages ..... 3
  B. Plaintiffs Premise Their Theory on an Alleged "Net Impression" of MSC-Linked Sustainability Statements. ..... 4
  C. Plaintiffs Do Not Dispute that Their Products Were MSC-Certified or Tie the Practices They Criticize to Their Purchases. ..... 5
  D. Plaintiffs' Two Claims Rest on the Same Alleged Misrepresentations and Omissions. ..... 6
III. LEGAL STANDARDS ..... 6
IV. ARGUMENT ..... 7
  A. Plaintiffs Do Not Plausibly Allege Article III Injury. ..... 7
    1. Plaintiffs Do Not Connect the Practices They Criticize to the Seafood They Purchased. ..... 8
    2. Plaintiffs Lack Standing as to Products They Did Not Purchase. ..... 10
  B. Plaintiffs' Allegations Do Not Satisfy Rule 9(b). ..... 13
  C. Plaintiffs Fail to State a Claim Under the Consumer Protection Act. ..... 16
    1. Plaintiffs Do Not Plausibly Allege a False or Deceptive Representation. 16
    2. Plaintiffs Do Not Plausibly Allege an Actionable Omission. ..... 22
    3. Plaintiffs Do Not Plead Injury to Business or Property. ..... 25
    4. Plaintiffs Do Not Plausibly Allege a Distinct Unfair Practice. ..... 26
  D. Plaintiffs Fail to State a Claim for Fraudulent Misrepresentation or Concealment. ..... 28
    1. Plaintiffs Do Not Plausibly Allege a Fraudulent Misrepresentation Claim. ..... 28
    2. Plaintiffs Do Not Plausibly Allege a Duty Supporting Fraudulent Concealment. ..... 29
  E. Plaintiffs Cannot Obtain Restitution or Disgorgement Without Pleading that Legal Remedies Are Inadequate. ..... 31
  F. Plaintiffs Cannot Toll the Statute of Limitations. ..... 31
V. CONCLUSION ..... 33

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*389 Orange St. Partners v. Arnold*,
179 F.3d 656 (9th Cir. 1999) ........ 32

*In re Amazon Serv. Fee Litig.*,
705 F. Supp. 3d 1255 (W.D. Wash. 2023) ........ 14

*Ang v. Bimbo Bakeries USA, Inc.*,
No. 13-cv-01196-WHO, 2014 WL 1024182 (N.D. Cal. 2014) ........ 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 7

*Baker Boyer Nat'l Bank v. Foust*,
436 P.3d 382 (Wash. Ct. App 2018) ........ 30

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 7

*Bodenburg v. Apple Inc.*,
146 F.4th 761 (9th Cir. 2025) ........ 15

*Bohen v. ConAgra Brands, Inc.*,
No. 23 C 1298, 2024 WL 1254128 (N.D. Ill. Mar. 25, 2024) ........ 17, 21

*Brown v. Old Navy, LLC*,
567 P.3d 38 (Wash. 2025) ........ 20

*Carrico v. City & Cnty. of S.F.*,
656 F.3d 1002 (9th Cir. 2011) ........ 34

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
598 F.3d 1115 (9th Cir. 2010) ........ 6

*Cole v. Keystone RV Co.*,
No. C18-5182 TSZ, 2021 WL 3111452 (W.D. Wash. July 22, 2021) ........ 22, 24

*Conerly v. Westinghouse Elec. Corp.*,
623 F.2d 117 (9th Cir. 1980) ........ 32

*Crisman v. Crisman*,
931 P.2d 163 (Wash. Ct. App. 1997) ........ 29

*Del Guzzi Constr. Co. v. Global Nw. Ltd., Inc.*,
719 P.2d 120 (Wash. 1986) .......... 32

*Depot, Inc. v. Caring for Montanans, Inc.*,
915 F.3d 643 (9th Cir. 2019) .......... 7

*Dwyer v. Allbirds, Inc.*,
598 F. Supp. 3d 137 (S.D.N.Y. 2022) .......... 18

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) .......... 16

*Enoh v. Hewlett Packard Enter. Co.*,
No. 17-cv-04212-BLF, 2018 WL 3377547 (N.D. Cal. July 11, 2018) .......... 32

*Favors v. Matzke*,
770 P.2d 686 (Wash. Ct. App. 1989) .......... 29, 30

*Fowler v. Guerin*,
515 P.3d 502 (Wash. 2022) .......... 32

*Giesecke v. Movement Mortg. LLC*,
No. 3:25-cv-05377-TMC, 2026 WL 1223568 (W.D. Wash. May 5, 2026) .......... 28

*Gray v. Amazon.com, Inc.*,
653 F. Supp. 3d 847 (W.D. Wash. 2023) .......... 7, 13

*Greenberg v. Amazon.com, Inc.*,
553 P.3d 626 (Wash. 2024) .......... 26, 27

*Guzman v. Polaris Indus. Inc.*,
49 F.4th 1308 (9th Cir. 2022) .......... 31

*Henriquez v. ALDI Inc.*,
No. 2:22-cv-06060-JLS-JEM, 2023 WL 2559200 (C.D. Cal. Feb. 7, 2023) .......... 10

*Herceg v. Chobani, LLC*,
No. 22-CV-5137 (KMK), 2023 WL 6162939 (S.D.N.Y. Sept. 21, 2023) .......... 18

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .......... 13

*King v. Amazon.com Servs. LLC*,
No. C24-2009-KKE, 2026 WL 628261 (W.D. Wash. Mar. 6, 2026) .......... 13, 15

*Krakauer v. Recreational Equip., Inc.*,
No. C22-5830-BHS, 2024 WL 1494489 (W.D. Wash. Mar. 29, 2024) .......... 9, 20, 23

*Kwan v. SanMedica Int'l*,
854 F.3d 1088 (9th Cir. 2017)........................................................................................ 6

*Larsen v. Trader Joe's Co.*,
No. C 11-05188 SI, 2012 WL 5458396 (N.D. Cal. June 14, 2012)................................ 10, 11

*Lohr v. Nissan N. Am., Inc.*,
No. C16-1023RSM, 2022 WL 1449680 (W.D. Wash. 2022)............................................... 22

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ......................................................................................................... 6, 7

*Matthews v. Polar Corp.*,
No. 22-cv-649, 2023 WL 4534543 (N.D. Ill. Mar. 22, 2023)............................................... 33

*McGinity v. Procter & Gamble Co.*,
69 F.4th 1093 (9th Cir. 2023)...................................................................................... 16, 18

*Medal v. Amazon.com Servs. LLC*,
No. 2:23-cv-01975-JHC, 2025 WL 1635233 (W.D. Wash. June 9, 2025)............................ 11

*Montes v. SPARC Group LLC*,
586 P.3d 999 (Wash. 2026).....................................................................................*passim*

*Moore v. Trader Joe's Co.*,
4 F.4th 874 (9th Cir. 2021)......................................................................................... 16, 18

*Myers v. Starbucks Corp.*,
No. 22-55930, 2024 WL 3102800 (9th Cir. June 24, 2024) ................................................. 18

*Oates v. Taylor*,
199 P.2d 924 (Wash. 1948)................................................................................................. 30

*Oh v. Fresh Bellies, Inc.*,
No. CV 24-5417 PSG (JPRx), 2024 WL 4500727 (C.D. Cal. Oct. 15, 2024)................. 10, 11

*Panag v. Farmers Ins. Co. of Wash.*,
204 P.3d 885 (Wash. 2009)................................................................................................. 16

*Ramirez v. Baxter Credit Union*,
No. 16-cv-03765-SI, 2017 WL 1064991 (N.D. Cal. Mar. 21, 2017)..................................... 32

*Ringler v. J.M. Smucker Co.*,
783 F. Supp. 3d 1229 (C.D. Cal. 2025)............................................................................... 11

*Rydman v. Champion Petfoods USA, Inc.*,
No. C18-1578 RSM, 2020 WL 4347512 (W.D. Wash. July 29, 2020) ............................ 29, 30

*Safari v. Whole Foods Market Services, Inc.*,
No. 8:22-cv-01562-JWH-KES, 2023 WL 5506014 (C.D. Cal. July 24, 2023) .............. 8, 9, 20

*Salameh v. Tarsadia Hotel*,
726 F.3d 1124 (9th Cir. 2013)........................................................................................ 13

*Sanchez v. Walmart Inc.*,
733 F. Supp. 3d 653 (N.D. Ill. 2024) ............................................................................ 17

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020)......................................................................................... 31

*Sorkin v. Kroger*,
No. 23 C 14916, 2024 WL 3673719 (N.D. Ill. Aug. 6, 2024) ....................................... 33

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........................................................................................................ 7

*State v. Living Essentials, LLC*,
436 P.3d 857 (Wash. Ct. App. 2019) ............................................................................ 20

*Steele v. Extendicare Health Servs., Inc.*,
607 F. Supp. 2d 1226 (W.D. Wash. 2009)..................................................................... 24

*Stiley v. Block*,
925 P.2d 194 (Wash. 1996)....................................................................................... 28, 29

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003)....................................................................................... 13

*Westby v. Gorsuch*,
50 P.3d 284 (Wash. Ct. App. 2002) .............................................................................. 28

*Wright v. Costco Wholesale Corp.*,
651 F. Supp. 3d 1099 (N.D. Cal. 2023) ........................................................................ 10

**Statutes**

16 U.S.C. § 1385(d) ........................................................................................................ 21

RCW 4.16.080(4) ............................................................................................................ 31

RCW 19.86.090.............................................................................................................. 25

RCW 19.86.120.............................................................................................................. 31

Washington Consumer Protection Act, RCW 19.86.010 et seq. ........................................ *passim*

**Other Authorities**

16 C.F.R. § 260.1(a), 260.4, 260.6(c) .......... 19, 24

50 C.F.R. § 216.91 .......... 21

77 Fed. Reg. 62,122, 62,124 (Oct. 11, 2012) .......... 19

Fed. R. Civ. P. 9(b) .......... *passim*

Fed. R. Civ. P. 12(b)(1) .......... 6

Fed. R. Civ. P. 12(b)(6) .......... 6

Fed. R. Civ. P. 12(f) .......... 32

Jack Cheney, *An Overview of Tuna and its Sustainability in 2025*, Sustainable Fisheries UW (Univ. of Wash. Aug. 1, 2025), https://sustainablefisheries-uw.org/tuna-sustainability-2025/ .......... 5

Monterey Bay Aquarium, *Sustainable Tuna Buying Guide*, https://www.montereybayaquarium.org/animals-the-ocean/how-to-choose-sustainable-seafood/sustainable-seafood-guides/tuna-buying-guide (last visited Oct. 26, 2026) .......... 5

Ganapathiraju Pramod et al., *Estimates of Illegal and Unreported Fish in Seafood Imports to the USA*, 48 Marine Policy, Sept. 2014, at 102 .......... 5

## I. INTRODUCTION

Plaintiffs do not challenge anything Amazon said about the seafood they bought. Instead, they criticize the global fishing industry and the independent standard setter whose standards Plaintiffs dislike.

Plaintiffs Madeleine Rogow and Adam Sorkin allegedly bought seafood through Amazon.com. The seafood was certified by the Marine Stewardship Council ("MSC"), a well-known, independent nonprofit that sets standards for sustainable fishing. Plaintiffs do not allege that Amazon misrepresented any product's MSC certification status. Their gripe is with MSC itself. They contend MSC-certified fisheries use practices Plaintiffs deem inconsistent with sustainable fishing. Their criticism of MSC, however, does not render Amazon's statement that a product is MSC-certified deceptive.

To bypass this foundational defect, Plaintiffs identify a hodgepodge of sustainability terms, product attributes, images, and certification language and allege that, taken together, they create a "net impression" that the seafood was sourced with "minimal harm to the planet and our oceans." Compl. ¶¶ 3, 94, 167. But "minimal harm" is Plaintiffs' creation, not Amazon's. Plaintiffs acknowledge that "no single word expressly promises" the environmental guarantee they attribute to the product webpages at issue. *Id.* ¶ 167. Yet, throughout their 93-page complaint, Plaintiffs take sustainability language presented alongside a certification standard, substitute their own conception of what "sustainable" *should* mean, and then plead deception because MSC's standards differ from their preferred standards.

These pleading defects are not confined to one element or one cause of action. They each independently defeat Plaintiffs' claims at multiple points. *First*, Plaintiffs do not plausibly allege Article III injury. Their claimed economic injury depends on the premise that the seafood they purchased was materially different from what Amazon represented. But Plaintiffs do not allege that their products were not MSC-certified, and they do not identify any fishery, vessel, or catch method behind their purchases that engaged in the practices they condemn. The Complaint instead relies

on allegations about fisheries and the global fishing industry generally. That is not enough to plead that Plaintiffs themselves received something different from what Amazon represented. Nor do Plaintiffs have standing to challenge claims made about products they never purchased.

*Second*, Plaintiffs independently flunk the heightened standard under Federal Rule of Civil Procedure 9(b): they fail to plead the "who, what, when, where, and how" of the challenged conduct—and what was false or misleading about the representation and why. Sorkin, for instance, alleges ten purchases over more than two years but identifies pre-purchase product webpages for only five products. Compl. ¶¶ 11–16. Neither Plaintiff alleges the product-specific facts necessary to show why any particular representation was false. Moreover, their common-law fraud claim also fails to plausibly allege knowledge of falsity, intent to deceive, or a duty supporting fraudulent concealment.

*Third*, Plaintiffs' CPA claim fails on the merits. Their disagreement with MSC does not make Amazon's MSC certification statements deceptive, and their broader "minimal harm" theory attributes to the product webpages promises that Amazon did not make. Their allegations about fishing practices elsewhere do not establish that statements about the seafood they purchased were misleading. Their challenges to discrete attributes such as "wild caught," "traceable," and "dolphin safe" likewise lack product-specific allegations of falsity, while other challenged statements are aspirational or nonactionable puffery. Their omissions theory fares no better: Plaintiffs identify no concealed fact that made the representations they saw misleading and allege no duty requiring Amazon to disclose Plaintiffs' broader criticisms of MSC and the global fishing industry.

*Fourth*, Plaintiffs do not plead the injury to business or property that Washington law requires. That defect is particularly clear after the Washington Supreme Court's recent decision in *Montes v. SPARC Group LLC*, 586 P.3d 999 (Wash. 2026). Plaintiffs repeatedly allege that they would not have purchased the products, or would have paid less, if they had understood the challenged sustainability claims differently, Compl. ¶¶ 17, 123, 193, 204, 206, 214, 220, but "disappointment is not a cognizable CPA injury." *Montes*, 586 P.3d at 1008. Plaintiffs must

plausibly allege objective economic loss, such as receiving something objectively different from or worth less than what they paid for. Plaintiffs do not.

These are not technical defects in an otherwise viable claim. Plaintiffs filed a 93-page Complaint detailing MSC, commercial fishing practices, seafood sourcing, and numerous product webpages, yet they do not allege that Amazon misstated the MSC certification status of any product they purchased and fail to connect their purchases to the fishing practices at the center of their case. Rather than state any viable claims against Amazon, the Complaint recasts Plaintiffs' criticisms of MSC and the global fishing industry as actionable misrepresentations. They are not, and the Court should dismiss the Complaint with prejudice.

## II. BACKGROUND

### A. Plaintiffs Allege that They Purchased Seafood After Viewing Amazon Product Webpages.

Rogow and Sorkin allege that they purchased seafood products through Amazon.com after reviewing information on certain product webpages. Rogow alleges that, between December 2024 and June 2025, she purchased two 365 by Whole Foods Market products: Sockeye Salmon Fillet and No Salt Albacore Tuna. Compl. ¶ 11. Before purchasing those products, Rogow alleges that she viewed their product webpages, which identified the products as MSC-certified and included sustainability-related statements such as "MSC Certified Sustainable Seafood" and "wild caught." *Id.* ¶ 12. She alleges that those representations led her to believe she was purchasing "seafood products that were sustainable." *Id.* ¶ 13.

Sorkin alleges that, between October 2023 and November 2025, he purchased ten Bumble Bee and Chicken of the Sea tuna, salmon, and sardine products. Compl. ¶ 14. But he claims to have viewed the product webpages for only five of those ten products. *Id.* ¶ 15. Sorkin alleges that the webpages he viewed included "MSC Certified Sustainable Seafood," "wild caught," and "sustainable," and that those representations led him to believe the products were sustainable. *Id.* ¶¶ 15–16.

The Complaint extends well beyond Plaintiffs' purchases. Plaintiffs challenge representations associated with numerous additional products that neither Plaintiff alleges purchasing and invoke broader statements concerning Amazon's corporate sustainability initiatives that neither Plaintiff alleges seeing. *See, e.g.*, Compl. ¶¶ 2–3, 89–95, 142–49 & App. A.

### B. Plaintiffs Premise Their Theory on an Alleged "Net Impression" of MSC-Linked Sustainability Statements.

Plaintiffs' allegations show that the sustainability language they challenge is repeatedly and expressly tied to MSC certification. Rogow's Sockeye Salmon webpage, for example, allegedly said that Whole Foods sells wild-caught seafood from fisheries "certified sustainable to the Marine Stewardship Council (MSC) standard" or rated "green" or "yellow" by Monterey Bay Aquarium Seafood Watch. Compl. ¶ 95(c). Product webpages for seafood Sorkin purchased similarly include statements such as "From an MSC certified sustainable fishery" and "MSC Certified Sustainable Seafood, Wild Caught, and Dolphin Safe." *See, e.g.*, *id.* ¶ 95(j)–(k).

The Complaint describes the MSC as an independent nonprofit organization that sets certification standards for wild-capture fisheries. *Id.* ¶¶ 74–78. According to the Complaint, MSC's blue-fish label may be used only for seafood from fisheries independently assessed as meeting MSC's environmental sustainability requirements. *Id.* Their standards address sustainable fish stocks, environmental impact, and fisheries management. *Id.* ¶ 77.

Plaintiffs nevertheless theorize that the product webpages at issue conveyed a broader message than any individual statement expressly made. They group "sustainable," "sustainably sourced," "responsibly sourced," "wild caught," "traceable," "MSC Certified Sustainable Seafood," and "dolphin safe" together as "Sustainability Claims." *Id.* ¶ 3. Plaintiffs do not allege product-specific facts showing that discrete attributes such as "wild caught," "traceable," or "dolphin safe" were false. Instead, they rely on the combined effect of those attributes, the sustainability language, MSC certification, images, and other information on the product webpages. Plaintiffs acknowledge that "no single word expressly promises that a Product has no negative

environmental impact" but allege that the webpages collectively create a "net impression" that the products are sourced with "minimal harm to the planet and our oceans." *Id.* ¶¶ 3, 94, 167. Plaintiffs premise their deception theory on that alleged "net impression."

### C. Plaintiffs Do Not Dispute that Their Products Were MSC-Certified or Tie the Practices They Criticize to Their Purchases.

Plaintiffs do not allege that any product they purchased lacked MSC certification, that Amazon misstated any purchased product's MSC certification status, or that any fishery supplying those products failed MSC's stated certification requirements. Their allegations instead criticize MSC's standards as too permissive. Plaintiffs allege that some MSC-certified fisheries use fish aggregating devices, bottom trawling, or dredging, generate bycatch, or engage in other practices Plaintiffs regard as unsustainable. Compl. ¶¶ 5, 79, 96(k)–(o). Their challenge to MSC certification thus rests on Plaintiffs' conception of what "sustainable" fishing should mean, not on an allegation that the products failed MSC's stated certification standards or that products listed as MSC-certified were not actually properly certified.[1]

Plaintiffs similarly rely on allegations about commercial fishing generally. They allege that many industrial fishing vessels are not publicly tracked, that some vessels disable tracking systems

[1] Plaintiffs' Complaint undercuts their criticism, as many of their sources highlight the *benefits* of MSC certification:

- Jack Cheney's *An Overview of Tuna and its Sustainability in 2025* (*see* Compl. ¶ 96 nn.42, 51, ¶ 150 n.97) defines "sustainable tuna" "as coming from sources that are: . . . Marine Stewardship Council (MSC) certified." Jack Cheney, An Overview of Tuna and its Sustainability in 2025, Sustainable Fisheries UW (Univ. of Wash. Aug. 1, 2025), https://sustainablefisheries-uw.org/tuna-sustainability-2025/.
- Monterey Bay Aquarium's *Sustainable Tuna Buying Guide* (*see* Compl. ¶ 96 n.46, ¶ 150 n.97) recommends shopping at businesses committed to sustainable seafood, such as Whole Foods Market, which "sources green-rated, yellow-rated, and MSC certified wild seafood." Monterey Bay Aquarium, Sustainable Tuna Buying Guide, https://www.montereybayaquarium.org/animals-the-ocean/how-to-choose-sustainable-seafood/sustainable-seafood-guides/tuna-buying-guide (last visited Oct. 26, 2026).
- *Estimates of Illegal and Unreported Fish in Seafood Imports to the USA* (*see* Compl. ¶ 4 n.10, ¶ 96 n.43, ¶ 104 n.55) describes how MSC certification requires increased observer coverage of the Russian pollock fishery, a fishery which historically had low transparency. Ganapathiraju Pramod et al., Estimates of Illegal and Unreported Fish in Seafood Imports to the USA, 48 Marine Policy, Sept. 2014, at 102, 108.

near areas associated with illegal fishing, and that a portion of wild-caught seafood imported into the United States is harvested using illegal or unreported fishing methods. *See id.* ¶¶ 1, 4, 96(d)–(i). But the Complaint does not allege that any of those practices were used to catch seafood Rogow or Sorkin purchased. It identifies no vessel or fishery supplying Plaintiffs' purchases that allegedly engaged in the practices they criticize. The Complaint thus conflates general allegations about fisheries and the fishing industry with representations concerning Plaintiffs' own seafood without alleging the product-specific facts linking the two.

### D. Plaintiffs' Two Claims Rest on the Same Alleged Misrepresentations and Omissions.

Plaintiffs assert two causes of action under Washington law: (1) a claim under the Washington Consumer Protection Act ("CPA") and (2) a claim for fraudulent misrepresentation and concealment. Compl. ¶¶ 185–221. Both counts arise from the same alleged misrepresentations and omissions concerning the sustainability of seafood sold through Amazon. *Id.* ¶¶ 189–204, 210–20. Across both counts, Plaintiffs allege essentially the same economic injury: that they paid a premium for the products or purchased products they otherwise would not have bought. *Id.* ¶¶ 17, 193, 204, 206, 214, 220. They seek damages and equitable relief on behalf of themselves and a putative nationwide class. *Id.* ¶¶ 186–87, 207–09, 221.

## III. LEGAL STANDARDS

A district court must dismiss an action if it lacks subject matter jurisdiction, including where the plaintiffs lack Article III standing. Fed. R. Civ. P. 12(b)(1). Plaintiffs bear the burden of establishing subject matter jurisdiction. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). At the pleading stage, the facts alleged must, if proved, be sufficient to confer standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Under Rule 12(b)(6), dismissal is warranted where the complaint lacks a cognizable legal theory or sufficient facts to support one. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093 (9th Cir. 2017). To survive dismissal, a complaint must contain sufficient factual matter, accepted as true, to

state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The Court accepts well-pleaded factual allegations as true, but it need not accept legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* Nor are "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" sufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Claims sounding in fraud must also satisfy Rule 9(b), which requires a party to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The Complaint must identify "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019) (citation omitted). In other words, it must plead the "who, what, when, where, and how" of the challenged conduct, as well as what was false or misleading about the representation and why. *Id.* Rule 9(b) applies to state-law consumer claims when they are grounded in allegations that the defendant intentionally deceived consumers. *Gray v. Amazon.com, Inc.*, 653 F. Supp. 3d 847, 858 (W.D. Wash. 2023).

## IV. ARGUMENT

### A. Plaintiffs Do Not Plausibly Allege Article III Injury.

Article III requires Plaintiffs to allege an injury that is concrete and particularized, actual or imminent, and fairly traceable to Amazon's challenged conduct. *Lujan*, 504 U.S. at 560–61; *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). While economic loss may satisfy that requirement, Plaintiffs still must allege facts showing they suffered the economic loss asserted. They cannot establish standing by identifying alleged problems elsewhere in an industry and asking the Court to assume that the products they purchased suffered from that problem.

That requirement is dispositive here. Plaintiffs allege that they paid a premium for seafood marketed as sustainable and MSC-certified. Compl. ¶ 17. But the Complaint never alleges that the seafood they purchased was not MSC-certified or that Amazon misstated its MSC certification status. To the extent Plaintiffs contend they paid for some broader sustainability attribute beyond

MSC certification, they do not allege facts connecting their purchases to the fishing practices they allege made that broader representation misleading. Under either version of their theory, Plaintiffs lack standing.

**1. Plaintiffs Do Not Connect the Practices They Criticize to the Seafood They Purchased.**

Plaintiffs' first problem is straightforward: they allege that MSC certification and sustainability-related statements induced their purchases, but they do not allege that any product they purchased lacked the MSC certification identified on its product webpage. Compl. ¶¶ 11–17. They instead direct their criticism at MSC because MSC-certified fisheries may use practices Plaintiffs regard as inconsistent with sustainable fishing. *See id.* ¶¶ 5, 79, 96(k)–(o). That criticism does not establish that Plaintiffs paid for an MSC-certified product but received something else.

Plaintiffs therefore must rely on their broader theory that the product webpages implicitly promised seafood sourced with "minimal harm to the planet and our oceans." Compl. ¶ 3. But even accepting that interpretation, the Complaint still must plausibly allege that Plaintiffs' own seafood lacked the attribute for which they claim to have paid. It does not. Plaintiffs discuss bycatch, bottom trawling, dredging, fish aggregating devices, vessel tracking, illegal fishing, and other practices at length. *See, e.g.*, *id.* ¶¶ 1, 4–5, 79, 96. Yet they identify no fishery or vessel supplying Rogow's or Sorkin's purchases that allegedly engaged in any of those practices. They do not identify the catch method for any purchase that supposedly rendered the challenged representation misleading. And they do not otherwise connect the industry practices described in the Complaint to the seafood they purchased.

*Safari v. Whole Foods Mkt. Servs., Inc.* is particularly instructive. No. 8:22-cv-01562-JWH-KES, 2023 WL 5506014 (C.D. Cal. July 24, 2023). There, the plaintiff alleged that she paid a premium for Whole Foods beef marketed as antibiotic-free and relied on testing showing antibiotics in beef from Whole Foods supply chains. *Id.* at *1–3. The court recognized that overpaying for falsely labeled beef could constitute a concrete economic injury. *Id.* at *6. But that did not establish

the plaintiff's standing because she failed to allege that the beef she purchased came from the supply chains in which antibiotics had been detected. *Id.* at *6–8. Allegations that antibiotics had been found elsewhere in Whole Foods' supply system did not plausibly establish that the plaintiff's own purchase suffered from the defect on which her overpayment theory depended. *Id.*

The same defect is present here. Plaintiffs do not identify any facts concerning the particular supply chains for their purchases. They identify fishing practices occurring broadly in the global seafood industry or among some MSC-certified fisheries and then assume that the seafood they purchased suffered from those practices. *Safari* does not permit that leap to establish Article III standing.

A court in this District applied the same principle in *Krakauer v. Recreational Equip., Inc.*, No. C22-5830-BHS, 2024 WL 1494489 (W.D. Wash. Mar. 29, 2024) (Settle, J.). There, the plaintiff alleged that REI deceptively marketed a raincoat containing per- and polyfluoroalkyl substances ("PFAS") as safe and sustainable. *Id.* at *1. His allegations rested on organic fluorine testing of the same model (an alleged indicator of PFAS[2]) along with third-party testing of other REI products and general claims about PFAS in other rainwear. *Id.* at *3–6. The court held that the plaintiff had not plausibly alleged that the jacket he purchased contained the specific hazardous PFAS chemical on which his claimed economic injury depended. *Id.* at *6–7. In other words, the plaintiff needed facts plausibly connecting the alleged defect to his product, rather than allegations concerning other products. *Id.*

Plaintiffs' allegations here are even more deficient. The Complaint contains allegations about fishing practices but without a factual bridge between those practices and the seafood Plaintiffs purchased. The Complaint acknowledges that determining a product's "true sustainable nature" requires a "specialized, fishery-level investigation of sourcing, certification conditions, and

[2]The court concluded that the testing was insufficient because the heightened levels of organic fluorine (a) may have been indicative of short-chain PFAS treatments, which are considered to be less hazardous than long chain PFAS, and (b) while they may suggest the presence of PFAS, do not "conclusively establish the presence of PFAS." *Id.* at *2, *6.

fishing methods." Compl. ¶ 168. Yet it does not plead the results of such an investigation for Rogow's or Sorkin's purchases or that Rogow or Sorkin even attempted such an investigation, despite the fact the sought-after information was publicly available.

The cases in which sustainable seafood plaintiffs cleared the standing threshold underscore what is missing from the Complaint. In *Wright v. Costco Wholesale Corp.*, for example, plaintiffs specifically alleged that the tuna they purchased came from supply chains using fishing methods harmful to dolphins and other marine life. 651 F. Supp. 3d 1099, 1107–11 (N.D. Cal. 2023). And in *Henriquez v. ALDI Inc.*, plaintiff identified the specific harvesting methods and fisheries associated with defendant's tuna products. No. 2:22-cv-06060-JLS-JEM, 2023 WL 2559200, at *3 (C.D. Cal. Feb. 7, 2023).

Plaintiffs have not plausibly alleged that they paid a premium for an attribute their purchases lacked. As to MSC certification, they received products the Complaint acknowledges were MSC-certified. As to Plaintiffs' broader sustainability theory, they never connect their purchases to the practices they criticize. Their asserted economic injury teeters on speculative theories, which is not enough to plausibly establish a concrete injury.

**2. Plaintiffs Lack Standing as to Products They Did Not Purchase.**

Plaintiffs also seek to challenge representations associated with numerous products neither of them purchased. *See* Compl. ¶¶ 89–95 & App. A. Those claims extend well beyond the products and product webpages Plaintiffs actually viewed. *See id.* ¶¶ 11–15. But Article III requires Plaintiffs to establish that *they* suffered an injury arising from the claims they seek to litigate. Courts applying that requirement to consumer-product claims routinely hold that a plaintiff cannot allege an economic injury stemming from a product they never purchased. For example, in *Larsen v. Trader Joe's Co.*, the court held that plaintiffs lacked standing because they "did not purchase the [products] and therefore, as a matter of law, could not have suffered a particularized injury as required by Article III." No. C 11-05188 SI, 2012 WL 5458396, at *5 (N.D. Cal. June 14, 2012). *Oh v. Fresh Bellies, Inc.* similarly rejected standing based on another consumer's purchase of a

different product variation because that purchase was not "an invasion of [the plaintiff's] legally protected interest." No. CV 24-5417 PSG (JPRx), 2024 WL 4500727, at *4 (C.D. Cal. Oct. 15, 2024). And *Ringler v. J.M. Smucker Co.* rejected the contention that similarity between purchased and unpurchased products itself supplies Article III injury. *Ringler v. J.M. Smucker Co.*, 783 F. Supp. 3d 1229, 1246 (C.D. Cal. 2025). Because the plaintiff had not purchased the other products, she "did not suffer any injury related to" them and lacked standing to challenge them. *Id.* at 1246.

Some courts have permitted class-action plaintiffs to bring claims for unpurchased products if the products and alleged misrepresentations are "substantially similar." While Amazon urges this Court to follow the reasoning set forth in *Larsen*, *Oh*, and *Ringler*, even under the "substantially similar" test, Plaintiffs lack standing to bring claims for products they did not purchase. "When applying the 'substantial similarity' test, courts 'look to a series of factors including whether the challenged products are of the same kind, comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling." *Medal v. Amazon.com Servs. LLC*, No. 2:23-cv-01975-JHC, 2025 WL 1635233, at *3–5 (W.D. Wash. June 9, 2025).

***First***, the products are not of the same "kind." Plaintiffs purchased only 365 by Whole Foods Market, Bumble Bee, and Chicken of the Sea products. *Neither* purchased Fishwife, Rio Mare, Starkist, Genuine American, Sports Research products; *neither* purchased pollock, cod, flounder; and *neither* purchased fish oil supplements, which are obviously quite distinct from fish. Further, Amazon's role with respect to the products differs. Amazon is the manufacturer for some products (Compl. ¶ 24), a first-party retailer for others (Compl. ¶ 25), and merely the fulfillment provider for still others (Compl. ¶ 31). These differences affect Amazon's knowledge, control, and potential liability with respect to the products.

***Second***, the products are not uniformly composed of the same ingredients. The products span canned tuna, frozen salmon fillets, frozen cod, sardines, and fish oil supplements—which all entail different sourcing, harvest, and environmental effects. "[W]here the actual composition or appearance of the product is legally significant to the claim at issue"—whether the products are

"sustainably" sourced—"the consumer may only be allowed to pursue claims for products with identical product composition and/or appearance." *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-01196-WHO, 2014 WL 1024182, at *8 (N.D. Cal. 2014). Plaintiffs challenge Amazon for allegedly not disclosing the source fishery, country of origin, catch method, traceability information, and practices purportedly associated with particular fisheries or categories of seafood. Compl. ¶ 96. Whether any such information pertained to a product, was omitted from its product webpage, or could make that product's particular representations misleading necessarily depends on that product's sourcing and circumstances—and Plaintiffs make no attempt to allege the products entail the same sourcing or circumstances.

***Finally,*** Plaintiffs have not alleged that the products have "identical labels" or that one discrete statement appeared uniformly across every challenged product. Instead, they allege deception from the combined "net impression" created by the particular words, images, certifications, and other information presented for a product. Compl. ¶ 167. Plaintiffs separately attach Appendix B, a 68-page compilation of point-of-sale webpage excerpts for the products listed in Appendix A. *See* Compl. App. B. Those product webpages contain materially different combinations of MSC certification, "wild caught," traceability, dolphin-safety, catch-method, sourcing, and vendor-specific sustainability statements. *Compare*, *e.g.*, Compl. ¶ 95(a), *with id.* ¶¶ 95(c), (j), (v). Their own theory tethers the content and context of each individual product webpage to their claims—and because Plaintiffs' allegations "may well require a context-specific analysis of the appearance of the [webpage], the misrepresentation's placement on the [webpage], and other information contained on the [webpage], [Plaintiffs] may only be allowed to pursue those claims for products with identical labels." *Ang*, 2014 WL 1024182, at *8. Therefore, Plaintiffs' claims fail the "substantial similarity" test.

Plaintiffs' standing problem goes beyond their failure to purchase every product they challenge. The unpurchased products differ in product type, sourcing, representations, and alleged

omissions, and Plaintiffs' own "net impression" theory makes those differences material. Accordingly, Plaintiffs' claims concerning those products should be dismissed.

### B. Plaintiffs' Allegations Do Not Satisfy Rule 9(b).

Rule 9(b) applies to Plaintiffs' claims because they allege a "unified course of fraudulent conduct"—namely that Amazon "engages in a scheme to market numerous seafood products sold on its platform using environmental and ecological representations." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003); Compl. ¶ 2. Courts in this District have expressly held that "an alleged scheme to mislead the public through various channels" depends on a "unified course of fraudulent conduct," and therefore must be pled consistent with 9(b)'s heightened pleading standard. *Gray*, 653 F. Supp. 3d at 858. Therefore, the Complaint "must state with particularity the circumstances" constituting the unfair or deceptive practice. *Id.* (quoting Fed. R. Civ. P. 9(b)). In other words, Plaintiffs' claim "must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess,* 317 F.3d at 1106 (internal quotations omitted).

*King v. Amazon.com Servs. LLC* is instructive. No. C24-2009-KKE, 2026 WL 628261, at *5–7 (W.D. Wash. Mar. 6, 2026). There, this Court agreed that Rule 9(b) required plaintiffs to "specifically describe what statements Plaintiffs saw, when and where they saw them, and whether the allegedly unfair and deceptive statements were the reason" for the challenged transaction. *Id.* Generalized allegations concerning Amazon's representations were not enough; the complaint supplied examples of advertisements, but plaintiffs did not allege which advertisements they read or relied on. *Id.* That holding accords with the Ninth Circuit's rule that a plaintiff alleging fraud must identify the particular advertisements or representations encountered, when they were encountered, and which representations mattered to the challenged decision. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (affirming dismissal where plaintiff did not identify the particular advertisements he saw, when he saw them, or which representations he relied upon); *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (fraud allegations deficient where plaintiffs did not identify when defendants made the allegedly false representations).

Plaintiffs' claims flunk Rule 9(b). Plaintiffs allege a "net impression" theory of deception but fail to identify with particularity which representations they viewed. Rather, Plaintiffs simply allege that taken together, the "Sustainability Claims"—which "refer collectively to Amazon point-of-sale representations that the [products] are, among other things, 'sustainable,' 'sustainably sourced,' 'responsibly sourced,' 'wild caught,' 'traceable,' 'MSC Certified Sustainable Seafood,' and 'dolphin safe'"—create a net impression that the products are sourced with "minimal harm." Compl. ¶ 3. In other words, Plaintiffs' "net impression" theory hinges on an amorphous collection of representations whose universe Plaintiffs do not attempt to define, much less identify with particularity.

Rogow alleges that she purchased two products sometime between December 2024 and June 2025 and that the product webpages for those products "included" various sustainability-related statements. Compl. ¶¶ 11–12. She does not identify when she made each purchase, which version of each product webpage she viewed before that purchase, or which particular statement or combination of statements she encountered and relied upon in connection with that transaction. Her generalized allegation that the representations caused her to believe she was purchasing "seafood products that were sustainable," *Id.* ¶ 13, does not identify what representation she relied on in making what purchase(s).

Sorkin's allegations are even more deficient. He alleges ten purchases spanning more than two years, from October 2023 through November 2025. Compl. ¶ 14. But paragraph 15 identifies pre-purchase product webpages for only five products. The Complaint therefore identifies no representation Sorkin saw before purchasing the other five products, much less when he saw it, what it communicated to him, or how he read and relied on it. This is precisely the kind of deficient pleading that "suffers from a lack of details about Plaintiff's own experience" and requires dismissal under Rule 9(b). *See In re Amazon Service Fee Litigation*, 705 F. Supp. 3d 1255, 1266–67 (W.D. Wash. 2023).

The Complaint's treatment of the broader product universe underscores the lack of particularity. Plaintiffs identify Appendix A as the list of products "at issue in this case." Compl. ¶ 3 n.7 & App. A. But that list does not even correspond to the named Plaintiffs' own purchase allegations. Sorkin alleges, for example, that he purchased Bumble Bee Wild Caught Sardines in Mustard Sauce, Compl. ¶ 14, yet that product does not appear in Appendix A. Appendix A instead identifies a different assortment of seafood and supplement products, while Appendix B separately reproduces point-of-sale webpages containing materially different combinations of certification language, product attributes, and sustainability statements. Plaintiffs cannot manufacture a fraud theory using the combined "net impression" created by product-specific webpages while leaving unclear which challenged product, webpage, representation, and transaction are tied to each named Plaintiff.

Rule 9(b) requires Plaintiffs to explain what was false or misleading about the representation when made. *Bodenburg v. Apple Inc.*, 146 F.4th 761, 771 (9th Cir. 2025) (affirming finding that plaintiff did not satisfy Rule 9(b)'s particularity requirement because she could not "point to any statements . . . that are truly deceptive" or "set forth facts showing that the[] statements are false."). Here, Plaintiffs do not allege that a product they purchased lacked MSC certification, that "wild caught," "traceable," or "dolphin safe" was false as to a particular purchase, or that a fishery supplying their seafood engaged in the practices they contend made a representation misleading. Nor do they explain why the particular product webpage viewed before a particular transaction communicated the unstated "minimal harm" guarantee on which their case depends.

A 93-page Complaint does not satisfy Rule 9(b) through volume. Instead, as *King* explains, Plaintiffs must connect the alleged deception to their own transactions by identifying what they saw, when and where they saw it, and how it caused the transaction. They have not done so and their claims should therefore be dismissed independently under Rule 9(b).

**C. Plaintiffs Fail to State a Claim Under the Consumer Protection Act.**

To state a claim under the CPA, Plaintiffs must plausibly allege (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to business or property, and (5) causation. *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 889 (Wash. 2009). Failure to plead any one element defeats the claim. Plaintiffs fail at several. Most fundamentally, the Complaint does not plausibly allege that the representations Plaintiffs encountered were false or deceptive, that Amazon concealed an actionable fact, or that Plaintiffs suffered the injury to business or property that Washington law requires.

**1. Plaintiffs Do Not Plausibly Allege a False or Deceptive Representation.**

A representation is deceptive under the CPA only if it has the capacity to mislead a substantial portion of the public acting reasonably under the circumstances. *Panag*, 204 P.3d at 895. The inquiry considers what a reasonable consumer would understand from the representation in context, not the most expansive meaning a plaintiff can attribute to isolated words. *See Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (reasonable consumer standard requires a probability that a significant portion of consumers could be misled); *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021) ("unreasonable assumptions" about a label do not suffice). And where a statement is ambiguous rather than affirmatively misleading, surrounding explanatory information may resolve that ambiguity. *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097–99 (9th Cir. 2023) (affirming dismissal where surrounding label information clarified the meaning of an ambiguous front label statement). Plaintiffs' allegations fail that standard.

***First, Plaintiffs' critique of MSC's Standards does not render the MSC certification or MSC-linked sustainability statements deceptive.*** Plaintiffs allege that the products they purchased were presented as MSC-certified and that sustainability language appeared alongside the certification. *See* Compl. ¶¶ 12, 15, 95. Plaintiffs do not allege that any product they purchased was not MSC-certified, that Amazon falsely represented its certification status, or that a fishery supplying Plaintiffs' purchased products failed MSC's certification requirements. Their grievance

is instead that MSC should employ different standards. *Id.* ¶¶ 5, 79, 96(k)–(o). Courts addressing similar claims have rejected deception allegations directed at the certification itself.

In *Sanchez v. Walmart Inc.*, for example, the plaintiff alleged that seafood bearing MSC's Blue Tick was misleading because MSC-certified fisheries allegedly engaged in harmful fishing practices. 733 F. Supp. 3d 653, 670–71 (N.D. Ill. 2024). The court dismissed the challenge to the MSC certification because the certification communicated that the product met MSC's sustainability standards, and the plaintiff did not allege that representation was false. *Id.* at 671. The plaintiff instead objected that MSC's standards permitted practices she considered unsustainable. But that did not make Walmart's statements deceptive. *Id.*

*Bohen v. ConAgra Brands, Inc.* reached the same conclusion on materially similar allegations. No. 23 C 1298, 2024 WL 1254128, at *7 (N.D. Ill. Mar. 25, 2024). There, plaintiffs alleged that MSC-certified fisheries used fishing techniques that harmed marine wildlife and therefore challenged both the MSC Blue Tick and the adjacent statement "Certified Sustainably Sourced." But because plaintiffs did not allege that the products lacked MSC certification or failed MSC's standards, their objection concerned MSC's methodology, not the truth of the certification statement. *Id.* The court therefore held both the Blue Tick and the immediately adjacent "Certified Sustainably Sourced" language nondeceptive as a matter of law. *Id.*

The same is true here. At a minimum, several of the product webpages expressly connect the sustainability language to MSC. The Complaint identifies statements such as "Sustainably Sourced: Certified by the Marine Stewardship Council," and "From an MSC certified sustainable fishery." Compl. ¶ 95(f)–(k). And some product webpages went so far as to specify that MSC certification reflects evaluation by an independent third party under the MSC Fisheries Standard. *Id.* ¶ 95(b). All these statements tell the consumer exactly what the sustainability language means: the product is MSC-certified. As one court put it, "The Blue Tick does exactly its purpose—the product is MSC-certified. That label is not a lie." *Bohen*, 2024 WL 1254128, at *7.

The Ninth Circuit reached the same conclusion in an unpublished memorandum in *Myers v. Starbucks Corp.*, No. 22-55930, 2024 WL 3102800, at *1 (9th Cir. June 24, 2024). There, the court affirmed dismissal of claims alleging that deforestation and child labor in certified supply chains rendered a Rainforest Alliance certification deceptive. That plaintiff, as here, attempted to read into the certification a broader guarantee than it actually communicated. Other courts have reached the same conclusion. In *Dwyer v. Allbirds, Inc.*, the court held that criticism did not plausibly allege that the defendant's use of the standard for calculating environmental impact was misleading. 598 F. Supp. 3d 137, 149–151 (S.D.N.Y. 2022). And in *Herceg v. Chobani, LLC,* the court held that criticism of a certification methodology was not an allegation that the certification statement itself was false. No. 22-CV-5137 (KMK), 2023 WL 6162939, at *6 (S.D.N.Y. Sept. 21, 2023). Plaintiffs therefore cannot state a CPA claim merely by alleging that MSC's definition of sustainable fishing is more permissive than Plaintiffs would prefer. The product webpages represented that the seafood was MSC-certified, and Plaintiffs do not allege otherwise.

***Second, the product webpages do not promise seafood sourced with "minimal harm" to the oceans.*** Recognizing that MSC certification itself does not support their theory, Plaintiffs allege that the product webpages collectively conveyed a broader "net impression." They define that supposed message as a representation that the seafood was sourced in a manner causing "minimal harm to the planet and our oceans." Compl. ¶¶ 3, 94, 167. But that language is Plaintiffs' formulation—not Amazon's. Plaintiffs themselves admit that "no single word expressly promises" the environmental guarantee they attribute to the webpages. *Id.* ¶ 167.

The reasonable consumer standard does not permit Plaintiffs to manufacture deception by aggregating truthful or qualified statements and assigning them a meaning they do not reasonably bear. Context matters. *Moore*, 4 F.4th at 882. And where language is susceptible to more than one meaning, the Court considers surrounding information that explains what the statement conveys. *McGinity*, 69 F.4th at 1097–99. Here, the surrounding language repeatedly identifies the relevant sustainability benchmark: MSC certification. *See* Compl. ¶ 95(c), (f)–(k). A reasonable consumer

encountering "sustainably sourced" alongside "Certified by the Marine Stewardship Council" would understand the former in light of the identified certification standard, not as an unstated promise that the product caused only some undefined minimum level of environmental harm.

Plaintiffs' "net impression" theory also impermissibly converts qualified sustainability language into an absolute environmental guarantee. "Sustainable" does not, without more, mean environmentally harmless, and Plaintiffs acknowledge that no Amazon webpage promises the lack of any negative environmental effects. Compl. ¶ 167. Their alleged "minimal harm" standard would nevertheless read in a specific environmental benchmark from language that Amazon never used.

The FTC's Guides for the Use of Environmental Marketing Claims, or "Green Guides," do not supply the missing promise. Plaintiffs invoke the Guides in the Complaint, *see id.* ¶ 203, but the Guides are administrative guidance, not independently enforceable law. 16 C.F.R. § 260.1(a). More importantly, FTC has expressly declined to provide substantive guidance defining "sustainable" claims. 77 Fed. Reg. 62,122, 62,124 (Oct. 11, 2012). Plaintiffs therefore cannot rely on the Green Guides to transform "sustainable" into their proposed "minimal harm" definition.

The Guides' treatment of broad environmental claims does not change that conclusion. Section 260.4 cautions against broad, unqualified claims such as "environmentally friendly" where context conveys far-reaching environmental benefits. But Plaintiffs' theory depends on language that is repeatedly qualified by an identified certification standard. Nor does the Guides' certification provision establish that MSC certification necessarily conveys Plaintiffs' preferred implied claim. Section 260.6(c) requires marketers to substantiate the claims reasonably communicated by a certification; it does not dictate that MSC certification reasonably communicates a guarantee of "minimal harm."

The same problem defeats Plaintiffs' reliance on generalized promotional language. Statements such as "Feeding the World While Protecting Our Oceans," Compl. ¶ 95(j), describe broad corporate or brand aspirations, rather than measurable guarantees that a particular item was caught without specified environmental effects. Washington law distinguishes between such factual

representations and nonactionable puffery. In *Brown v. Old Navy, LLC*, the Washington Supreme Court explained that puffery includes subjective statements, opinions, and hyperbole—as distinct from actionable representations of fact. 567 P.3d 38, 47 (Wash. 2025). Similarly, in *State v. Living Essentials, LLC*, the court described puffery as "vague or highly subjective" claims incapable of substantiation. 436 P.3d 857, 870 (Wash. Ct. App. 2019). Such puffery cannot form the basis of an actionable claim here.

Plaintiffs may disagree with MSC's standards, and they may prefer seafood harvested by different methods. But the CPA asks whether the representation Amazon actually presented was likely to mislead a reasonable consumer. Plaintiffs cannot satisfy that element by replacing MSC-linked sustainability language with their preferred unstated guarantee of "minimal harm."

***Fourth, generalized allegations about other fisheries do not make representations about plaintiffs' seafood false.*** The Complaint fails even if the Court accepts their proposed understanding of sustainability. To plead deception, they still must allege facts making it plausible that the challenged representation was false or misleading as to the seafood at issue. The Complaint does not do so.

Plaintiffs devote substantial portions of the Complaint to fishing practices occurring somewhere in the seafood industry or among some MSC-certified fisheries. But they do not connect any fishery, vessel, or catch method associated with their purchases to the practices on which their deception theory depends. That missing connection is fatal to their claims. *See, e.g.*, *Krakauer*, 2024 WL 1494489, at *6–7 (allegations concerning PFAS in other products did not plausibly establish the particular defect on which plaintiff's claim depended without sufficient facts linking the defect to plaintiff's alleged purchase); *Safari*, 2023 WL 5506014, at *6–8 (allegations regarding antibiotics detected in portion of beef supply were insufficient to establish beef purchased by plaintiff was mislabeled as antibiotic free).

Plaintiffs' Complaint is similarly deficient. Allegations that objectionable practices occur somewhere in the industry do not plausibly establish that a statement concerning Plaintiffs' seafood was actually false or deceptive.

***And fifth, Plaintiffs do not plead product-specific falsity of "wild caught," "traceable," or "dolphin safe."*** Plaintiffs group several discrete, objectively verifiable product attributes into their defined "Sustainability Claims," including "wild caught," "traceable," and "dolphin safe." Compl. ¶ 3. But the Complaint does not plausibly allege that those attributes were false or deceptive either.

Start with "wild caught." Plaintiffs do not allege that any product identified as wild caught was farmed or otherwise not wild caught. Instead, they criticize that wild-caught seafood can still involve fishing practices they view as environmentally harmful. But that does not make "wild caught" false. A statement describing how seafood was produced is not transformed into a representation about every environmental consequence of the harvesting method.

The same problem defeats Plaintiffs' traceability theory. Plaintiffs allege that many fishing vessels worldwide are not publicly tracked, that some vessels disable transponders, and that transshipment can make seafood supply chains more difficult to monitor. Compl. ¶¶ 4, 96(d)–(e). None of those allegations establish that a product represented as traceable could not in fact be traced in the manner represented. Public vessel tracking and product traceability are not the same proposition. *See, e.g.*, *Bohen*, 2024 WL 1254128, at *8 (rejecting claim asserting that "full traceability" language was deceptive where suppliers allegedly used harmful fishing practices because alleged harmful fishing practices could coexist with the seller's ability to identify the fish's origin and trace its sourcing history).

"Dolphin safe" fares no better. Federal law specifically regulates when tuna may be labeled "dolphin safe." *See* 16 U.S.C. § 1385(d); 50 C.F.R. § 216.91. Plaintiffs do not allege that any purchased tuna product represented as "dolphin safe" failed the applicable federal requirements. Instead, they allege that the phrase is misleading because it does not *also* guarantee broader

environmental sustainability, sustainable fishing methods, or the absence of bycatch involving non-dolphin species. Compl. ¶ 96(j). But that assigns the regulated term a meaning it does not convey. Because Plaintiffs do not allege that the products failed the requirements actually communicated by the "dolphin safe" representation, they do not plausibly allege that the representation was false or deceptive.

Plaintiffs cannot avoid these defects by folding the discrete attributes back into their "net impression" theory. If "wild caught," "traceable," and "dolphin safe" are challenged as factual statements, Plaintiffs must plausibly allege that those statements were false. They do not. If Plaintiffs instead contend that the statements collectively communicated the separate proposition that the seafood caused "minimal harm to the planet and our oceans," Compl. ¶ 3, that theory fails for the reasons explained above. Either way, the Complaint does not plausibly allege a deceptive representation.

**2. Plaintiffs Do Not Plausibly Allege an Actionable Omission.**

Plaintiffs' omissions theory fares no better than their affirmative representation theory. They allege that Amazon should have disclosed a sweeping range of additional information, including source fisheries, catch methods, limitations on vessel tracking and traceability, alleged environmental harms associated with some fishing practices, and criticisms of MSC's certification program. Compl. ¶ 96. But Washington law does not impose a free-floating duty on sellers to disclose every fact a consumer might consider relevant—Plaintiffs may only bring an actionable omission claim when the omitted fact was material and not easily discoverable by the buyer. *Lohr v. Nissan N. America, Inc.*, No. C16-1023RSM, 2022 WL 1449680, at *3 (W.D. Wash. 2022) (internal citations omitted); *Cole v. Keystone RV Co.,* No. C18-5182 TSZ, 2021 WL 3111452, at *4 (W.D. Wash. Jul. 22, 2021) (rejecting nondisclosure theory where the allegedly withheld information was publicly available and readily discoverable), *aff'd*, No. 21-35701, 2022 WL 4234958, at *1 (9th Cir. Sept. 14, 2022).

This is not such a case. Plaintiffs identify no product-specific, material fact about Rogow's

or Sorkin's seafood that Amazon knew and concealed. They instead demand disclosure of generalized, public information about MSC, fishing practices, vessel tracking and traceability. Compl. ¶ 96. Washington's omission doctrine does not convert that body of industry-wide information into a material product defect Amazon was legally bound to disclose.

***First, Plaintiffs fail to allege that any supposedly undisclosed practices affected the seafood*** **they** ***purchased.*** Without that connection, Plaintiffs cannot plausibly allege that Amazon's failure to disclose those practices rendered its representations misleading.

For example, Plaintiffs allege that Amazon should have disclosed that some fisheries use bottom trawling, dredging, fish aggregating devices, or practices that generate bycatch; that many fishing vessels are not publicly tracked; and that illegal or unreported fishing occurs in portions of the seafood industry. Compl. ¶ 96. But the Complaint does not allege that any of those circumstances applied to seafood Plaintiffs purchased. It identifies no undisclosed catch method, vessel conduct, source-fishery practice, or traceability problem affecting a specific purchase by Rogow or Sorkin. That omission is dispositive. In *Krakauer*, plaintiff likewise alleged that REI failed to disclose harmful PFAS associated with a supposedly sustainable raincoat. 2024 WL 1494489, at *10. The omission theory failed largely because plaintiff had not plausibly alleged that his own raincoat contained the PFAS whose nondisclosure supposedly made the marketing misleading. *Id.*

The same principle applies here. Plaintiffs cannot plausibly allege that Amazon should have disclosed that their seafood was harvested using a particular objectionable method without alleging that their seafood was harvested using that method. Nor can they allege that a representation such as MSC certification, "wild caught," "traceable," or "dolphin safe" was rendered misleading by the omission of industry-wide information that Plaintiffs never connect to their products.

Plaintiffs' MSC allegations illustrate the point. They do not identify an undisclosed fact showing that their products were not MSC-certified or that the supplying fisheries failed MSC's standards. They instead contend Amazon should have disclosed criticisms of what MSC permits

certified fisheries to do. Compl. ¶ 96(k)–(o). But because the product webpages identified MSC as the relevant certification standard, a failure to disclose Plaintiffs' disagreement with that standard does not transform the certification into a half-truth. The omitted fact necessary to Plaintiffs' theory would have to concern the particular seafood they purchased, not merely Plaintiffs' broader view that MSC should impose alternative standards.

***Second, Plaintiffs' theory also fails because they identify no basis requiring Amazon to provide consumers with the broad catalog of industry information listed in paragraph 96 of the Complaint.*** A seller's disclosure obligation is not a freestanding duty to disclose every fact a consumer might consider relevant. Instead, Washington cases recognize a more limited duty in circumstances involving material information known to the seller and not reasonably discoverable by the buyer. *See Cole*, 2021 WL 3111452, at *4; *Steele v. Extendicare Health Servs., Inc.*, 607 F. Supp. 2d 1226, 1233–34 (W.D. Wash. 2009). Here, much of what Plaintiffs say Amazon should have disclosed is not secret information possessed uniquely by Amazon. Plaintiffs themselves derive their allegations from public reports, academic publications, conservation organizations, governmental materials, and other publicly available sources. *See* Compl. ¶ 96 & nn.41–51. The Complaint does not plead facts supporting a duty to disclose in such circumstances.

Again, the FTC Green Guides and Amazon's marketing guidelines, which track the FTC Green Guides and other regulatory guidance, do not create a duty where there is none. The FTC Green Guides are administrative guidance and do not independently impose liability. 16 C.F.R. § 260.1(a). They address what environmental claims may reasonably communicate and require substantiation for claims actually conveyed; they do not require a seller of MSC-certified seafood to disclose every criticism of MSC or every environmental concern about commercial fishing. Plaintiffs therefore cannot use the Green Guides to create the disclosure obligation their CPA theory otherwise lacks.

**3. Plaintiffs Do Not Plead Injury to Business or Property.**

The CPA claim independently fails because Plaintiffs do not plausibly allege injury to "business or property." RCW 19.86.090. They repeatedly frame their alleged economic injury in the same two ways: they paid a "premium" for the seafood, and they would not have purchased it, or would have paid less, had they understood the sustainability representations differently. Compl. ¶¶ 17, 123, 193, 204, 206. The Washington Supreme Court's recent decision in *Montes*, 586 P.3d 999 (Wash. 2026), forecloses treating those allegations as CPA injury.

*Montes* involved allegedly deceptive advertising that induced consumers to make purchases they otherwise might not have made. The Washington Supreme Court held that "disappointment is not a cognizable CPA injury" and rejected the proposition that purchase inducement alone establishes economic harm. *Id.* at 1008. A consumer who "received and retained the [product] she wanted at the price she agreed to pay" does not suffer CPA injury merely because allegedly deceptive marketing influenced the transaction. *Id.* at 1002. The court explained that even a "false and deceptive advertising scheme" does not cause economic injury where it has "no impact on the economic value of the fungible consumer good." *Id.* at 1007. The relevant question is whether "[the product the consumer received was] objectively different from or worth less than the purchase price." *Id.* at 1008.

That rule directly refutes Plaintiffs' principal theory here. They repeatedly allege that they "would not have spent the money" on the seafood had they known what they now allege about MSC and the fishing industry. Compl. ¶¶ 17, 193, 204, 206. But *Montes* holds that buyer's remorse is not itself an injury to business or property without objective economic loss. Here, Plaintiffs do not allege that the seafood they purchased was a different species, spoiled, short-weighted, not MSC-certified, or otherwise objectively different from the products they ordered. And they do not plausibly allege that their own seafood was caught using the practices they contend were inconsistent with the broader environmental meaning they attributed to the product webpages. Their dissatisfaction arises from learning that MSC's standards do not embody Plaintiffs' preferred

conception of sustainable fishing. That is the type of disappointed expectation *Montes* distinguishes from recoverable economic injury.

Plaintiffs' "price premium" allegation does not solve the problem. A price premium theory still requires facts showing that Plaintiffs paid more than the products were objectively worth because of the challenged representation. *See Montes*, 586 P.3d at 1008. Plaintiffs attempt to do that through a chart comparing the prices of the challenged products with purported "Competitor Products." Compl. ¶ 121. But the chart does not isolate a premium. The products differ across obvious price-driving characteristics, including brand, species, product form, package size, preparation, and sourcing. Plaintiffs compare, among other things, different species and forms of seafood and, elsewhere in the challenged product set, seafood products with fish oil supplements. They plead no facts controlling for those differences or otherwise showing that any price differential resulted from the challenged representations.

Indeed, the comparator allegations present an additional problem: several purported alternatives themselves bear sustainability-related representations of the *same kind* Plaintiffs challenge, including "wild caught," "dolphin safe," or MSC certification. That makes the pleaded comparisons incapable of supporting a plausible inference that the allegedly deceptive sustainability representations account for the price difference. Because Plaintiffs do not plausibly allege that the seafood they received was objectively different from or worth less than what they paid, they do not plead injury to business or property under the CPA.

**4. Plaintiffs Do Not Plausibly Allege a Distinct Unfair Practice.**

Plaintiffs also characterize Amazon's alleged conduct as "unfair." Compl. ¶¶ 189, 192–94. That label does not create a separate CPA theory. Washington law permits an unfairness theory distinct from deception, but the plaintiff still must plead facts showing why the challenged conduct is unfair. *See Greenberg v. Amazon.com, Inc.*, 553 P.3d 626, 638 (Wash. 2024) (explaining that "unfair" and "deceptive" are independent concepts the court evaluates under the facts of the case). That distinction matters here because Plaintiffs do not identify conduct separate from the

representations and omissions already addressed. Their CPA count alleges that the same "Sustainability Claims" were "deceptive and unfair" because Amazon allegedly marketed seafood as sustainable while failing to disclose the environmental concerns described elsewhere in the Complaint. Compl. ¶¶ 189, 191–96. Merely adding the word "unfair" to the same factual theory does not explain what independent unfair practice Amazon allegedly committed.

Nor do the pleaded facts otherwise establish unfairness. *Greenberg* recognized the traditional unfairness inquiry, which considers whether the challenged practice causes or is likely to cause substantial consumer injury, whether the injury is reasonably avoidable, and whether it is outweighed by countervailing benefits to consumers or competition. 553 P.3d at 640. Plaintiffs' allegations fail at the threshold because they do not plausibly allege substantial injury from the challenged conduct. As *Montes* now makes clear, purchase inducement and disappointed expectations do not themselves establish economic harm. Plaintiffs do not allege that their seafood lacked MSC certification, that any discrete product attribute was false, or that their own seafood was sourced using the fishing practices they condemn. The Complaint therefore identifies no concrete consumer harm attributable to Amazon's alleged practice beyond the same legally insufficient "would not have purchased" and "would have paid less" allegations underlying their CPA injury theory.

Cases in which plaintiffs have pleaded a viable unfairness theory involve circumstances far different than those alleged here. For example, in *Greenberg*, the Washington Supreme Court examined allegations that Amazon exploited emergency conditions during the COVID-19 pandemic to charge elevated prices for essential consumer goods. 553 P.3d at 631–34, 641–42. Here, by contrast, the allegations challenge seafood sold at disclosed prices based on product webpages that disclosed the MSC certification at the center of their theory (and allowed Plaintiffs to research the certification for themselves). Plaintiffs allege no coercive circumstance or practice that prevented consumers from declining the purchase or choosing another product. Plaintiffs may contend that MSC should adopt different standards, but that policy disagreement with an

independent organization's certification standard does not establish an actionable unfair practice by Amazon.

### D. Plaintiffs Fail to State a Claim for Fraudulent Misrepresentation or Concealment.

#### 1. Plaintiffs Do Not Plausibly Allege a Fraudulent Misrepresentation Claim.

To sustain their fraudulent misrepresentation claim, Plaintiffs must affirmatively plead (1) representation of an existing fact, (2) materiality, (3) falsity, (4) the speaker's knowledge of its falsity, (5) intent of the speaker that it should be acted upon by the plaintiff, (6) Plaintiffs' ignorance of its falsity, (7) Plaintiffs' reliance on the truth of the representation, (8) Plaintiffs' right to rely upon it, and (9) damages suffered by the Plaintiffs. *Stiley v. Block*, 925 P.2d 194, 204 (Wash. 1996); *Westby v. Gorsuch,* 50 P.3d 284, 290–91 (Wash. Ct. App. 2002). Plaintiffs have not met this burden. As shown above, Plaintiffs have not sufficiently pleaded the required elements. Additionally, Plaintiffs do not allege knowledge of falsity or intent to deceive. Plaintiffs allege in conclusory terms that Amazon "knew that the Greenwashed Seafood Products were not sustainable" and "knew or should have known" what consumers expected sustainability representations to mean. Compl. ¶¶ 18, 213. Those allegations simply restate the required mental state; they do not identify facts supporting an inference that Amazon knew any specific representation viewed by Rogow or Sorkin was false when made—and courts have dismissed fraudulent representations where they had "no way to assess" whether defendants knowingly made false statements with an intent to deceive. *Giesecke v. Movement Mortg. LLC*, No. 3:25-cv-05377-TMC, 2026 WL 1223568, at *3 (W.D. Wash. May 5, 2026).

The distinction between knowledge of industry criticism and knowledge of falsity is dispositive. Plaintiffs allege that information existed concerning bycatch, bottom trawling, dredging, vessel tracking, illegal fishing, and criticisms of MSC's certification program. Even if Amazon had knowledge of that information, it would not establish that Amazon knew any particular representation about Plaintiffs' products was false. Plaintiffs do not allege that Amazon

knew an MSC-certified product was not MSC-certified, knew a product represented as "wild caught," "traceable," or "dolphin safe" lacked that attribute, or knew that the seafood Rogow or Sorkin purchased came from a fishery engaged in the practices Plaintiffs condemn. Knowledge of vague environmental concerns is not knowledge that a particular product representation is false.

The same problem defeats Plaintiffs' theory concerning MSC. Plaintiffs' allegations show that MSC is an independent standard setter and that the products they purchased bore MSC certification. Compl. ¶¶ 74–78, 95. Nothing in the Complaint plausibly suggests that Amazon believed those certifications were false, and disagreement over the meaning or adequacy of an independent certification standard does not plausibly support an inference that Amazon knowingly made a false statement. Nor does the allegation that Amazon was in a position to possess sourcing information establish fraudulent intent, because access to information is not itself knowledge that a representation is false, let alone an intent to deceive consumers.

Because the Complaint does not plausibly allege the *Stiley* elements, the fraudulent misrepresentation claim fails.

**2. Plaintiffs Do Not Plausibly Allege a Duty Supporting Fraudulent Concealment.**

To plead a fraudulent concealment claim, Plaintiffs must plead the *Stiley* elements or breach of "an affirmative duty to disclose a material fact." *Rydman v. Champion Petfoods USA, Inc.*, No. C18-1578 RSM, 2020 WL 4347512, at *2 (W.D. Wash. Jul. 29, 2020) (quoting *Crisman v. Crisman,* 931 P.2d 163, 166 (Wash. Ct. App. 1997)). As shown above, Plaintiffs have not pleaded the *Stiley* elements, and Plaintiffs further have not pleaded an "affirmative duty" to disclose a material fact. Washington recognizes such a duty only in limited circumstances, including fiduciary or quasi-fiduciary relationships, special relationships of trust and confidence, reliance on another party's superior specialized knowledge, material facts known to a seller but not readily discoverable by the buyer, or a statutory duty to disclose. *Rydman*, 2020 WL 4347512, at *2 (quoting *Favors v.*

*Matzke*, 770 P.2d 686, 690 (Wash. Ct. App. 1989)). Here, the Complaint does not plausibly allege those circumstances.

Plaintiffs do not allege a fiduciary or quasi-fiduciary relationship with Amazon. They were consumers purchasing seafood through Amazon.com. The Complaint's conclusory assertion that Amazon occupied a "special position of trust upon which customers rely," Compl. ¶ 217, does not transform an ordinary retail transaction into a special relationship of trust and confidence. Courts have routinely held that transactions held at arm's length—between product sellers and purchasers, borrowers and lenders, and homeowners and contractors—do not alone give rise to a fiduciary or quasi-fiduciary relationship. *See Rydman*, 2020 WL 4347512, at *3; *Baker Boyer Nat'l Bank v. Foust*, 436 P.3d 382, 386–88 (Wash. Ct. App. 2018); *Oates v. Taylor*, 199 P.2d 924, 927–28 (Wash. 1948). Nor do Plaintiffs allege facts showing that Amazon acted as their adviser or that they entrusted Amazon with decisions requiring reliance on Amazon's specialized judgment.

Plaintiffs likewise identify no statutory disclosure duty requiring Amazon to provide the information listed in paragraph 96 of their Complaint. The FTC Green Guides do not create such a duty. And Plaintiffs' reliance on alleged superior knowledge fares no better because the asserted omissions concern public information about MSC and the fishing industry drawn from governmental reports, academic publications, conservation organizations, and other sources cited in the Complaint itself. *See* Compl. ¶ 96 & nn.41–51.

More fundamentally, Plaintiffs do not identify a product-specific fact that Amazon knew and concealed. They do not allege, for example, that Amazon knew Rogow's salmon came from a fishery using a particular condemned method and concealed that fact, or that Amazon knew Sorkin's tuna was not traceable or did not satisfy the dolphin-safety representation displayed for it. Absent a duty requiring Amazon to disclose that generalized body of information to seafood purchasers, nondisclosure cannot support common-law fraudulent concealment.

### E. Plaintiffs Cannot Obtain Restitution or Disgorgement Without Pleading that Legal Remedies Are Inadequate.

Plaintiffs also seek restitution and disgorgement. Compl. ¶ 205; Prayer for Relief ¶¶ B–C. In federal court, equitable monetary relief is unavailable unless the plaintiff lacks an adequate remedy at law. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). That requirement applies to state-law claims because federal courts apply traditional federal equitable principles regardless of the source of the underlying cause of action. *Id.*; *see also Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313–14 (9th Cir. 2022).

Plaintiffs do not allege that damages would be inadequate to compensate them for alleged harms. To the contrary, they seek legal damages and equitable monetary relief for the same alleged injury: the supposed price premium and money they claim they would not have spent absent the challenged representations. Compl. ¶¶ 204, 206, 220. They offer no explanation for why damages compensating that alleged economic loss would be incomplete or inadequate. *See Sonner*, 971 F.3d at 844 (affirming dismissal where plaintiff did not explain "how the same amount of money for the exact same harm is inadequate or incomplete"). Accordingly, their requests for restitution and disgorgement should be dismissed.

### F. Plaintiffs Cannot Toll the Statute of Limitations.

Plaintiffs' claims are also time-barred to the extent they rest on purchases made outside the applicable limitations periods. A CPA claim must be commenced within four years after the cause of action accrues, RCW 19.86.120, and Plaintiffs' fraudulent misrepresentation and concealment claims are subject to a three-year limitations period, RCW 4.16.080(4). Plaintiffs filed this action on July 31, 2026, yet they seek to represent a class of purchasers apparently reaching back indefinitely. *See* Compl. ¶ 175 (defining the class as "all persons who purchased a Greenwashed Seafood Product from Defendant in the United States through the time of trial."). This is plainly improper, and to the extent Plaintiffs' class allegations implicate consumers who purchased products outside of the relevant statute of limitations periods, the class allegations are overly broad

and should be dismissed or, in the alternative, stricken under Rule 12(f). *See, e.g., Ramirez v. Baxter Credit Union*, No. 16-cv-03765-SI, 2017 WL 1064991, at *8 (N.D. Cal. Mar. 21, 2017) (explaining that a class period far exceeding the limitations period is "facially invalid" absent tolling allegations); *Enoh v. Hewlett Packard Enter. Co.*, No. 17-cv-04212-BLF, 2018 WL 3377547, at *14–15 (N.D. Cal. July 11, 2018) (dismissing class claims where class definition included individuals whose claims fell outside the statute of limitations).

Plaintiffs unsuccessfully attempt to avoid this result by alleging their claims should be tolled. Specifically, they allege that "Plaintiffs and the Class members had no way of knowing about Amazon's deception with respect to the Sustainability Claims on the Greenwashed Seafood Products' point-of-sale webpages" and Amazon concealed the true nature of the seafood products sold on its platform. Compl. ¶¶ 168–74. Under Washington law, four conditions "must be present" for equitable tolling of the statute of limitations to apply: (1) "when justice requires," (2) "bad faith, deception, or false assurances by the defendant," (3) "the exercise of diligence by the plaintiff," and (4) when tolling is "consistent with both the purpose of the statute providing the cause of action and the purpose of the statute of limitations." *Fowler v. Guerin,* 515 P.3d 502, 503 (Wash. 2022). For equitable estoppel, Plaintiffs must plead that Amazon "*fraudulently* or *inequitably* invited [them] to delay commencing suit until the applicable statute of limitation ha[d] expired." *Del Guzzi Constr. Co. v. Global Nw. Ltd., Inc.*, 719 P.2d 120, 124–25 (Wash. 1986) (emphasis in original).

Plaintiffs do not satisfy either test. Because their tolling theory rests on Amazon's alleged "deception" and concealment, it must satisfy Rule 9(b). A plaintiff relying on fraudulent concealment "must plead with particularity the circumstances surrounding the concealment and state facts showing his due diligence in trying to uncover the facts." *Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 120 (9th Cir. 1980); *see also 389 Orange St. Partners v. Arnold*, 179 F.3d 656, 662 (9th Cir. 1999). Plaintiffs do neither. They assert that consumers "had no way of knowing" about the alleged deception, Compl. ¶¶ 168–74, but they do not identify any act of concealment, when it occurred, or how it allegedly kept putative class members from discovering their claims.

To the contrary, Plaintiffs rely on publicly available evidence and reporting to bolster their claims, undermining any inference that members of the putative class could not have discovered their claims within the relevant statute of limitations periods. Their equitable estoppel theory similarly fails. Plaintiffs do not allege that Amazon said or did anything to induce them to delay filing suit, or that they relied on any such conduct in forgoing a timely claim.

Because Plaintiffs plead no facts supporting tolling under any theory, the Court should dismiss Plaintiffs' claims to the extent they implicate purchases made outside of the statute of limitations periods.

## V. CONCLUSION

The Complaint's defects cannot be remedied. Plaintiffs filed a 93-page Complaint addressing MSC, commercial fishing practices, seafood sourcing, environmental impacts, and dozens of product webpages. Yet they do not once allege that Amazon misstated the MSC certification status of any product they purchased, identify a fishery or vessel supplying their purchases that engaged in the practices at the center of their case, or plead facts showing that "wild caught," "traceable," or "dolphin safe" was false as to their seafood. Their theory depends on replacing what the product webpages actually said with unstated promises. But, "[w]ords don't mean whatever we want them to mean, and a plaintiff cannot sue based on every fanciful idea that springs to mind after reading the label." *Sorkin v. Kroger*, 23 C 14916, 2024 WL 3673719, at *5 (N.D. Ill. Aug. 6, 2024) (cleaned up) (quoting *Matthews v. Polar Corp.*, No. 22-cv-649, 2023 WL 4534543, at *9 (N.D. Ill. Mar. 22, 2023)).

Those same defects recur at every stage of Plaintiffs' claims. They prevent Plaintiffs from plausibly alleging Article III injury, deception or actionable omission under the CPA, injury to business or property under *Montes*, the transaction-specific fraud required by Rule 9(b), and the knowledge, intent, and disclosure duty required for common law fraud. They are not defects that can be cured by adding a date, clarifying a paragraph, or identifying another statement. To cure them, Plaintiffs would need facts changing the premise of the case. Accordingly, Amazon

respectfully requests that the Court dismiss the Complaint with prejudice. *See Carrico v. City & Cnty. of S.F.*, 656 F.3d 1002, 1008 (9th Cir. 2011) (leave to amend may be denied where amendment would be futile).

Dated: October 26, 2026

**MORRISON & FOERSTER LLP**

By: */s/ Eric J. Weiss*

Eric J. Weiss, WSBA No. 44807
**MORRISON & FOERSTER LLP**
925 4th Avenue, Suite 3600
Seattle, WA 98104-1157
Telephone: 206.327.6500
Facsimile: 206.260.8813
EWeiss@mofo.com

William F. Tarantino, *pro hac vice*
Lena Gankin, *pro hac vice*
**MORRISON & FOERSTER LLP**
425 Market Street, Suite 3200
San Francisco, CA 94105-2467
Telephone: 415.268.7000
Facsimile: 415.268.7522
WTarantino@mofo.com
LGankin@mofo.com

Cedar Hobbs, *pro hac vice*
**MORRISON & FOERSTER LLP**
12531 High Bluff Drive, Suite 200
San Diego, CA 92130-3588
Telephone: 858.720.5100
Facsimile: 858.720.5125
CHobbs@mofo.com

*Attorneys for Defendant*
AMAZON.COM, INC.

*I certify that this motion contains 11,149 words, in compliance with LCR 7(e)(6) and the Court's August 26, 2026, Order (Dkt. 21).*